1
2
3
4
5

**KARL RUPP**
California State Bar No. 168930
**KENDALL LAW GROUP, LLP**
3232 McKinney Avenue, Ste. 700
Dallas, Texas 75204
214.744.3000 (Telephone)
214.744.3015 (Telecopier)
Email:krupp@kendalllawgroup.com

6
7
8
9
10
11
12

**Bradley E. Beckworth**
Texas State Bar No. 24001710
**Derek Gilliland**
Texas State Bar No. 24007239
**Nix Patterson & Roach LLP**
205 Linda Drive
Daingerfield, Texas 75638
(903) 645-7333 (Telephone)
(903) 645-5389 (Telecopier)
Email:  bbeckworth@nixlawfirm.com
          dgilliland@nixlawfirm.com
*Admitted Pro Hac Vice*

13
14
15
16
17
18
19
20
21
22
23
24

**Ralph D. McBride**
Texas State Bar No. 13332400
**Stephen B. Crain**
Texas State Bar No. 04994580
**Alan D. Albright**
Texas State Bar No. 00973650
**Bradley J. Benoit**
Texas State Bar No. 24012275
**Heath A. Novosad**
Texas State Bar No. 24037199
**BRACEWELL & GIULIANI LLP**
711 Louisiana, Suite 2300
Houston, Texas   77002
Telephone:  713-223-2300
Facsimile:  713-221-1212
Email:  ralph.mcbride@bgllp.com
          stephen.crain@bgllp.com
          alan.albright@bgllp.com
          brad.benoit@bgllp.com
          heath.novosad@bgllp.com
*Admitted Pro Hac Vice*

25
26

**Attorneys for**
**Plaintiff TROLL BUSTERS©, LLC**

27
28

FIRST AMENDED COMPLAINT
C.A. No. 3:11-cv-00056-IEG -WVG

EXHIBIT 3

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**
**SAN DIEGO DIVISION**

| | | |
|---|---|---|
| **TROLL BUSTERS® LLC,** | ) | |
| | ) | |
| *Plaintiff*, | ) | **C.A. No. 3:11-cv-0056-IEG-WVG** |
| | ) | |
| **v.** | ) | |
| | ) | **FIRST AMENDED COMPLAINT** |
| **ROCHE DIAGNOSTICS GMBH,** | ) | |
| **ROCHE MOLECULAR SYSTEMS** | ) | **JURY TRIAL DEMANDED** |
| **(RMS),  ROCHE DIAGNOSTICS CORP.** | ) | |
| **D/B/A ROCHE APPLIED SCIENCES,** | ) | |
| **EUROGENTEC NORTH AMERICA** | ) | |
| **INC., CLONTECH LABORATORIES** | ) | |
| **INC., INTEGRATED DNA** | ) | |
| **TECHNOLOGIES (IDT), LIFE** | ) | |
| **TECHNOLOGIES CORPORATION,** | ) | |
| **QIAGEN NV., THERMO FISHER** | ) | |
| **SCIENTIFIC, INC., QUANTA** | ) | |
| **BIOSCIENCES, INC., GENE LINK INC.,** | ) | |
| **GENSCRIPT USA INC., EMD** | ) | |
| **CHEMICALS INC., TRILINK** | ) | |
| **BIOTECHNOLOGIES INC., and** | ) | |
| **CEPHEID,** | | |
| | | |
| *Defendants*. | | |

1.      Plaintiff/Relator, Troll Busters® LLC ("**Troll Busters**" or "**Plaintiff**") hereby complains against Defendants Roche Diagnostics GmbH, Roche Molecular Systems, Roche Diagnostic Corp. d/b/a Roche Applied Sciences (collectively, "**Roche**"), Eurogentec North America Inc. ("**Eurogentec**"), Clontech Laboratories Inc. ("**Clontech**"), Integrated DNA Technologies ("**IDT**"), Life Technologies Corporation ("**Life**"), Qiagen NV and its United States subsidiary Qiagen Inc. ("**Qiagen**"), Thermo Fisher Scientific, Inc. ("**Thermo**"), Quanta Biosciences, Inc. ("**Quanta**"), Gene Link, Inc. ("**Gene Link**"), GenScript USA Inc. ("**Genscript**"), EMD BioScience ("**EMD**"), TriLink BioTechnologies, Inc. ("**TriLink**"), and Cephied ("**Cepheid**") (collectively, "**Defendants**"),

and alleges, based on its own knowledge through searching the Internet web sites of the foregoing

Defendants, and based upon information and belief with respect to all other actions, as follows:

## NATURE OF THE CASE

2.      This is a *qui tam* action on behalf of the public for false patent marking under 35

U.S.C. §292.

3.      As set forth below, Defendants have each violated 35 U.S.C. §292(a) by intentionally

marking certain of their products with the purpose of deceiving the public. More specifically,

Defendants have, with the purpose of deceiving the public, marked products with patents that are

expired and, therefore, do not and cannot require licenses for customers of such products.

4.      The false marking statute exists to give the public notice of proper patent rights.

Congress intended the public to rely on marking as a ready means of discerning the status of

intellectual property embodied in an article of manufacture or design. Federal patent policy

recognizes an important public interest by permitting full and free competition in the use of ideas,

inventions and product innovations that are, in reality, a part of the public domain. The false marking

statute, as applied to the health care industry, is further designed to allow for reduced costs and

greater competition in the health care and clinical diagnostic market segments. Unfortunately, in the

case of molecular diagnostics and PCR-based diagnostic testing such as the products and patents that

are the subject of this lawsuit, patent expiration did not result in price reductions or increased

competition; instead, competitors were deceived and unable to decipher what patent rights were real

or illusory, and were thus unable to gain freedom to operate in these specific market segments.

5.      False patent marking, including representing through advertisement and Internet-based

sales channels, that a product is covered by a patent or the use of a product requires a license, when

that patent has expired, is a serious problem. Acts of false marking deter innovation and stifle

competition in the marketplace.   The twenty two (22) expired patents in this Complaint chilled

competition that is unable to determine if freedom to operate was available or not. If an article that is within the public domain is falsely marked, potential competitors may be dissuaded from entering the same market, significantly driving up costs to users or preventing a normal and typical price drop to consumers and health care payors when a patent no longer protects a product segment. False marks may also deter scientific research when an inventor sees a mark and decides to forego continued research to avoid possible infringement, or investors are deterred from investing in new technology because of a cloud of intellectual property uncertainty and uncertain freedom to operate in targeted market segments. False marking can cause unnecessary investment in design-around or costs incurred to analyze the validity or enforceability of a patent whose number has been marked upon a product with which a competitor would like to compete. Furthermore, false marking misleads the public into believing that a patentee (or its licensees) controls the article in question (as well as like articles) as well as all uses of such article, externalizes the risk of error in the determination by placing it on the public rather than the manufacturer or seller of the article, and increases the cost to the public of ascertaining whether a patentee, in fact, controls the intellectual property embodied in an article or its use. In each instance where it is represented that an article is patented, a member of the public desiring to participate in the market for the marked article will likely incur the cost of determining whether the involved patents are valid and enforceable and convince risk-adverse investors that despite the markings of patent numbers, those patents are not enforceable. False markings may also create a misleading impression that the falsely marked product is technologically superior to previously available ones, as articles bearing the term "patent" may be presumed to be novel, useful, and innovative.

       6.     The patent statute grants a patentee a limited monopoly in exchange for disclosure of the invention, which the public is free to use once the patent term expires. Falsely marking goods by continuing to mark a product with a patent number after the patent expires can allow a patentee to

benefit from the patent monopoly long after the law allows.  Thus, the patentee—by continuing to mark an article with an expired patent—fails to abide by its part of the agreed-upon exchange.  The patentee fails to release its invention to the public at the appropriate time and instead and attempts to prevent the public from using the expired patent.  Such conduct results in the deleterious consequences described above, and such conduct is prohibited by 35 U.S.C. § 292.

7.     The false marking statute explicitly permits *qui tam* actions as the only reasonably viable way to utilize the surveillance and expertise available in a particular market segment to enforce the false marking statute. By permitting members of the public to sue on behalf of the government, Congress allows individuals to help control false marking, something particularly important in this era of budget cuts to diminish the federal government's ability to monitor and enforce the false markings statute.

8.     Troll Busters, on its own behalf and on behalf of the United States, seeks an award of monetary damages of not more than $500 for each of the Defendants' violations of 35 U.S.C. §292(a), one-half of which shall be paid to the United States pursuant to 35 U.S.C. § 292(b).

## THE PARTIES

9.     Troll Busters, as to the false marking claims, is a Washington limited liability company that represents the United States and the public, including Defendants' existing and future competitors. Troll Busters provides a freedom to operate service to invalidate patent claims that are likely not valid, and is active in invalidating molecular diagnostic patents that artificially drive up health care costs.

10.     On information and belief, Defendant **Roche Diagnostics GmbH** is a German corporation, with its principal place of business at Freidrich-Ebert Strasse 100, D-68298 Mannheim, Germany and having United States operations at 9115 Hague Road, Indianapolis, Indiana 50457.

Defendant Roche Diagnostics GmbH may be served in Indiana at its offices at 9115 Hague Road, Indianapolis, Indiana 50457.

11.     On information and belief, Defendant Roche Diagnostics GmbH regularly conducts and transacts business in California, throughout the United States, and within the Southern District of California, themselves and/or through one or more subsidiaries, affiliates, business divisions, or business units.  Defendant Roche Diagnostics GmbH has appeared in this action through counsel.

12.     On information and belief, Defendant **Roche Molecular Systems** is a United States corporation, with its principal place of business at 4300 Hacienda Drive, Pleasanton, California 94588. Defendant Roche Molecular Systems may be served in California at its offices at 4300 Hacienda Drive, Pleasanton, California 94588.

13.     On information and belief, Defendant Roche Molecular Systems regularly conducts and transacts business in California, throughout the United States, and within the Southern District of California, themselves and/or through one or more subsidiaries, affiliates, business divisions, or business units.  Defendant Roche Molecular Systems has appeared in this action through counsel.

14.     On information and belief, Defendant **Roche Diagnostics Corp. d/b/a Roche Applied Sciences** is an Indiana corporation with its principal place of business at 9115 Hague Road, Indianapolis, Indiana 50457. Defendant Roche Diagnostics Corp. d/b/a Roche Applied Sciences may be served in Indiana at its offices at 9115 Hague Road, Indianapolis, Indiana 50457.

15.     On information and belief, Defendant Roche Applied Sciences regularly conducts and transacts business in California, throughout the United States, and within the Southern District of California, themselves and/or through one or more subsidiaries, affiliates, business divisions, or business units.  Defendant Roche Applied Sciences has appeared in this action through counsel.

16.     On information and belief, Defendant **Eurogentec S.A.** is a Belgian Corporation, with its principal place of business at LEIGE Science Park, Rue du Bois Saint Jean 5, 4102 Seraing,

Belgium and having United States operations as Eurogentec North America, Inc. at 11111 Flintkote Avenue, San Diego, California 92121-1222. Upon information and belief Defendant Eurogentec North America, Inc. may be served in California at its offices at 11111 Flinkote Avenue, San Diego, California 92121-1222.

17.     Upon information and belief, Defendant Eurogentec North America, Inc. regularly conducts and transacts business in California, throughout the United States, and within the Southern District of California, themselves and/or through one or more subsidiaries, affiliates, business divisions, or business units.  Defendant Eurogentec North America, Inc. has appeared in this action through counsel.

18.     Upon information and belief, Defendant **Clontech Laboratories, Inc**. is a subsidiary of Takara Holdings Inc. and Takara Bio Inc. both Japanese companies, with its principal place of business at Seta 3-4-1, Otsu Shiga, Japan and having United States operations as Clontech Laboratories, Inc. at 1290 Terra Bella Ave., Mountain View, California 94043. Upon information and belief Defendant Clontech Laboratories, Inc. is a Delaware corporation and may be served in California at its offices at 1290 Terra Bella Ave., Mountain View, California 94043.

19.     Upon information and belief, Defendant Clontech Laboratories, Inc. regularly conducts and transacts business in California, throughout the United States, and within the Southern District of California, themselves and/or through one or more subsidiaries, affiliates, business divisions, or business units.   Defendant Clontech Laboratories, Inc. has appeared in this action through counsel.

20.     Upon information and belief, Defendant **Integrated DNA Technologies, Inc.** is an Iowa corporation with its principal place of business at 1710 Commercial Park, Coralville, Iowa 52241. Upon information and belief, Defendant Integrated DNA Technologies, Inc. may be served in Iowa at its offices at 1710 Commercial Park, Coralville, Iowa 52241.

21.     Upon information and belief, Defendant Integrated DNA Technologies, Inc. regularly conducts and transacts business in California, throughout the United States, and within the Southern District of California, themselves and/or through one or more subsidiaries, affiliates, business divisions, or business units. Defendant Integrated DNA Technologies, Inc. has appeared in this action through counsel.

22.     Upon information and belief, Defendant **Life Technologies Corporation** is a Delaware corporation with its principal place of business at 5781 Van Allen Way, Carlsbad, California 92008. Upon information and belief, Defendant Life Technologies Corporation may be served in California at its offices at 5781 Van Allen Way, Carlsbad, California 92008.

23.     Upon information and belief, Defendant Life Technologies Corporation regularly conducts and transacts business in California, throughout the United States, and within the Southern District of California, themselves and/or through one or more subsidiaries, affiliates, business divisions, or business units.  Defendant Life Technologies Corporation has appeared in this action through counsel.

24.     Upon information and belief, Defendant **Qiagen NV** is a Dutch corporation with its principal place of business at Spoorstraat 50, Venlo 5911KJ, the Netherlands, and having a United States operation as Qiagen, Inc., a Delaware corporation, and a principle place of business at 27220 Turnberry Land, Suite 2000, Valencia, Calfornia. Upon information and belief, Defendant Qiagen may be served in California at its offices at 27220 Turnberry Land, Suite 2000, Valencia, Calfornia 91355 or at its registered agent Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

25.     Upon information and belief, Defendant Qiagen regularly conducts and transacts business in California, throughout the United States, and within the Southern District of California,

themselves and/or through one or more subsidiaries, affiliates, business divisions, or business units. Defendant Qiagen has appeared in this action through counsel.

26.     Upon information and belief, Defendant **Thermo Fisher Scientific, Inc.** is a Delaware corporation with its principal place of business at 81 Wyman Street, Waltham, Massachusetts 02454. Upon information and belief, Defendant Thermo may be served in Massachusetts at its offices at 81 Wyman Street, Waltham, Massachusetts 02454.

27.     Upon information and belief, Defendant Thermo regularly conducts and transacts business in California, throughout the United States, and within the Southern District of California, themselves and/or through one or more subsidiaries, affiliates, business divisions, or business units, including its ABgene® brand nucleic acid amplification.  Defendant Thermo has appeared in this action through counsel.

28.     Upon information and belief, Defendant **Quanta Biosciences, Inc.** is a Maryland corporation with its principal place of business at 202 Perry Parkway, Gaithersburg, Maryland 20877. Upon information and belief, Defendant Quanta may be served in Iowa at its offices at 202 Perry Parkway, Suite 1, Gaithersburg, Maryland 20877.

29.     Upon information and belief, Defendant Quanta regularly conducts and transacts business in California, throughout the United States, and within the Southern District of California, themselves and/or through one or more subsidiaries, affiliates, business divisions, or business units. Defendant Quanta has appeared in this action through counsel.

30.     Upon information and belief, Defendant **Gene Link, Inc.** is a New York corporation with its principal place of business at 190 Saw Mill River Road, Hawthorne, New York 10532. Upon information and belief, Defendant Gene Link, Inc. may be served in Westchester County, New York at its offices at 190 Saw Mill River Road, Hawthorne, New York 10532.

31.     Upon information and belief, Defendant Gene Link regularly conducts and transacts business in California, throughout the United States, and within the Southern District of California, themselves and/or through one or more subsidiaries, affiliates, business divisions, or business units. Defendant Gene Link has appeared in this action through counsel.

32.     Upon information and belief, Defendant **GenScript USA, Inc.** is a New Jersey or Delaware corporation with its principal place of business at 860 Centennial Avenue, Piscataway, New Jersey 08854. Upon information and belief, Defendant Genscript may be served in New Jersey at its offices at 860 Centennial Avenue, Piscataway, New Jersey 08854.

33.     Upon information and belief, Defendant Genscript regularly conducts and transacts business in California, throughout the United States, and within the Southern District of California, themselves and/or through one or more subsidiaries, affiliates, business divisions, or business units.

34.     Upon information and belief, Defendant **EMD Bioscience** is a subsidiary of Merck KGaA of Darmstadt, Germany with its principal place of business at 480 S. Democrat Road, Gibbstown, New Jersey 08027. Upon information and belief, Defendant EMD may be served in New Jersey at its offices at 480 S. Democrat Road, Gibbstown, New Jersey 08027.

35.     Upon information and belief, Defendant EMD regularly conducts and transacts business in California, throughout the United States, and within the Southern District of California, themselves and/or through one or more subsidiaries, affiliates, business divisions, or business units. Defendant EMD has appeared in this action through counsel.

36.     Upon information and belief, Defendant **TriLink BioTechnologies, Inc.** is a California corporation with its principal place of business at 9955 Mesa Rim Road, San Diego, California 92121. Upon information and belief, Defendant TriLink may be served in California at its offices at 9955 Mesa Rim Road, San Diego, California 92121.

37.     Upon information and belief, Defendant TriLink regularly conducts and transacts business in California, throughout the United States, and within the Southern District of California, themselves and/or through one or more subsidiaries, affiliates, business divisions, or business units. Defendant TriLink has appeared in this action through counsel.

38.     Upon information and belief, Defendant **Cepheid** is a California corporation with its principal place of business at 904 Caribbean Drive, Sunnyvale, California 94094. Upon information and belief, Defendant Cepheid may be served in California at its offices at 904 Caribbean Drive, Sunnyvale, California 94094.

39.     Upon information and belief, Defendant Cepheid regularly conducts and transacts business in California, throughout the United States, and within the Southern District of California, themselves and/or through one or more subsidiaries, affiliates, business divisions, or business units. Defendant Cepheid has appeared in this action through counsel.

## JURISDICTION AND VENUE

40.     Subject matter jurisdiction for this federal claim is conferred upon this Court by 28 U.S.C. §1338(a).

41.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 (b)-(c) and 1395(a), because: (i) Defendants' products or services that are the subject matter of this cause of action are advertised, marked, offered for sale, and/or sold in various retail stores and/or on the Internet in this District; (ii) a substantial part of the events or omissions giving rise to the claim occurred in this District; and (iii) Defendants are subject to personal jurisdiction in this District, as described above.

42.     Plaintiff brings this action under 35 U.S.C. § 292, which provides that any person may sue for civil monetary penalties for false patent marking.

## **BACKGROUND**

43.     This is an action for false patent marking under Title 35, Section 292, of the United States Code related to Defendants' products described herein.  Defendants' websites and product literature indicate that customers need a license to use the products sold on the website, such as *Taq* products and probes to practice polymerase chain reaction (**"PCR"**) and real time PCR.   Such websites are branded and hosted by Defendants or by licensees whom Defendants require to notify customers of the need to obtain a license under such now-expired patents.   Such conduct consititutes false marking under 35 U.S.C. § 292.   These websites and product literature have been effectively discouraging competitors from entering the relevant market segments as evidenced by the fact that the prices of such clinical diagnostic kits and products have not fallen despite the expiration of the key foundational, Nobel Prize-winning patents.

44.     The  purpose  of  this  lawsuit  is  to  act  in  the  public  interest  to  enforce  the  policy underlying the false marking statute, 35 U.S.C. § 292.

45.     Each of the 15 Defendants has and continues (and/or have and continue to require others) to mark upon, affix to, and/or use expired patents in advertising, sales and promotion through online sales channels and in providing their products through the Internet web sites. There are 22 expired U.S. Patents that are used to mark various products, thus violating 35 U.S.C. § 292(a) by marking  upon  unpatented  articles  with  the  purpose  of  deceiving  the  public. More  specifically, Defendants, with the purpose of deceiving the public, (a) make, sell, and/or advertise products they allege are protected by one or more of the twenty two expired patents; (b) have made, sold, and/or advertised products they allege are protected by one or more of the twenty two expired patents; and/or (c) have required either suppliers and/or consumers to obtain licenses for one or more of the 22 expired patents.

46.     Through the use of their websites and product literature, each of the Defendants has marked or has required licensees to mark at least the products identified herein with one or more the following expired patents: (1) United States Patent 5,210,015 (the "**'015 Patent**");[1] (2) United States Patent 5,487,972 (the "**'972 Patent**");[2] (3) United States Patent 5,079,352 (the "**'352 Patent**");[3] (4) United States Patent 5,035,996 (the "**'996 Patent**");[4] (5) United States Patent 5,945,313 (the "**'313 Patent**");[5] (6) United States Patent 4,683,202 (the "**'202 Patent**");[6] (7) United States Patent 4,683,195 (the "**'195 Patent**");[7] and (8) United States Patent 4,965,188 (the "**'188 Patent**");[8] (9) United States Patent 5,001,050 (the "**'050 Patent**");[9] (10) United States Patent 5,198,543 (the "**'543 Patent**");[10] (11) United States Patent 4,877,830 (the "**'830 Patent**");[11] (12) United States Patent 5,047,513 (the "**'513 Patent**");[12] (13) United States Patent 5,173,418 (the "**'418 Patent**");[13] (14) United States Patent 5,219,727 (the "**'727 Patent**");[14] (15) United States Patent 5,476,774 (the "**'774**

---

[1] A true and correct copy of the '015 Patent is attached hereto as **Exhibit A** and is incorporated by reference as if fully set forth herein.

[2] A true and correct copy of the '972 Patent is attached hereto as **Exhibit B** and is incorporated by reference as if fully set forth herein.

[3] A true and correct copy of the '352 Patent is attached hereto as **Exhibit C** and is incorporated by reference as if fully set forth herein.

[4] A true and correct copy of the '996 Patent is attached hereto as **Exhibit D** and is incorporated by reference as if fully set forth herein.

[5] A true and correct copy of the '313 Patent is attached hereto as **Exhibit E** and is incorporated by reference as if fully set forth herein.

[6] A true and correct copy of the '202 Patent is attached hereto as **Exhibit F** and is incorporated by reference as if fully set forth herein.

[7] A true and correct copy of the '195 Patent is attached hereto as **Exhibit G** and is incorporated by reference as if fully set forth herein.

[8] A true and correct copy of the '188 Patent is attached hereto as **Exhibit H** and is incorporated by reference as if fully set forth herein.

[9] A true and correct copy of the '050 Patent is attached hereto as **Exhibit I** and is incorporated by reference as if fully set forth herein.

[10] A true and correct copy of the '543 Patent is attached hereto as **Exhibit J** and is incorporated by reference as if fully set forth herein.

[11] A true and correct copy of the '830 Patent is attached hereto as **Exhibit K** and is incorporated by reference as if fully set forth herein.

[12] A true and correct copy of the '513 Patent is attached hereto as **Exhibit L** and is incorporated by reference as if fully set forth herein.

[13] A true and correct copy of the '418 Patent is attached hereto as **Exhibit M** and is incorporated by reference as if fully set forth herein.

[14] A true and correct copy of the '727 Patent is attached hereto as **Exhibit N** and is incorporated by reference as if

(Footnote Continued on Next Page.)

Patent");[15] (16) United States Patent 5,066,584 (the "**584 Patent**");[16] (17) United States Patent 4,889,818 (the "**818 Patent**");[17] (18) United States Patent 4,952,496 (the "**496 Patent**");[18] (19) United States Patent 5,869,320 (the "**320 Patent**");[19] (20) United States Patent 5,075,216 (the "**216 Patent**");[20] (21) United States Patent 5,035,936 (the "**936 Patent**");[21] and (22) United States Patent 5,168,062 (the "**062 Patent**")[22] (collectively, the "**Expired Patents**").

47.    The '015 Patent, titled "Homogeneous assay system using the nuclease activity of a nucleic acid polymerase," was issued by the United States Patent and Trademark Office on 11 May 1993, and expired on **06 August 2010**. Because all monopoly rights in the '015 Patent have terminated, Defendants cannot have any reasonable belief that the products are patented or covered by this patent or are protected.

48.    The '972 Patent, titled "Nucleic acid detection by the 5'-3'exonuclease activity of polymerases acting on adjacently hybridized oligonucleotides," was issued by the United States Patent and Trademark Office on 30 January 1996, and expired on **06 August 2010** due to a terminal disclaimer. Because all monopoly rights in the '972 Patent have terminated, Defendants cannot have any reasonable belief that the products are patented or covered by this patent or are protected.

---

(Footnote Continued from Previous Page.)

fully set forth herein.
    [15] A true and correct copy of the '774 Patent is attached hereto as **Exhibit O** and is incorporated by reference as if fully set forth herein.
    [16] A true and correct copy of the '584 Patent is attached hereto as **Exhibit P** and is incorporated by reference as if fully set forth herein.
    [17] A true and correct copy of the '818 Patent is attached hereto as **Exhibit Q** and is incorporated by reference as if fully set forth herein.
    [18] A true and correct copy of the '496 Patent is attached hereto as **Exhibit R** and is incorporated by reference as if fully set forth herein.
    [19] A true and correct copy of the '320 Patent is attached hereto as **Exhibit S** and is incorporated by reference as if fully set forth herein.
    [20] A true and correct copy of the '216 Patent is attached hereto as **Exhibit T** and is incorporated by reference as if fully set forth herein.
    [21] A true and correct copy of the '936 Patent is attached hereto as **Exhibit U** and is incorporated by reference as if fully set forth herein.
    [22] A true and correct copy of the '062 Patent is attached hereto as **Exhibit V** and is incorporated by reference as if fully set forth herein.

49.     The '352 Patent, titled "Purified thermostable enzyme," was issued by the United States Patent and Trademark Office on 07 January 1992, and expired on **07 January 2009**. Because all monopoly rights in the '352 Patent have terminated, Defendants cannot have any reasonable belief that the products are patented or covered by this patent or are protected.

50.     The '996 Patent, titled "Process for controlling contamination of nucleic acid amplification reactions," was issued by the United States Patent and Trademark Office on 30 July 1991, and expired on **01 June 2009**. Because all monopoly rights in the '996 Patent have terminated, Defendants cannot have any reasonable belief that the products are patented or covered by this patent or are protected.

51.     The '313 Patent, titled "Process for controlling contamination of nucleic acid amplification reactions," was issued by the United States Patent and Trademark Office on 31 August 1999, and expired on **01 June 2009**. Because all monopoly rights in the '313 Patent have terminated, Defendants cannot have any reasonable belief that the products are patented or covered by this patent or are protected.

52.     The '202 Patent, titled "Process for amplifying nucleic acid sequences," was issued by the United States Patent and Trademark Office on 28 July 1987, and expired on **28 March 2005**. Because all monopoly rights in the '202 Patent have terminated, Defendants cannot have any reasonable belief that the products are patented or covered by this patent or are protected.

53.     The '195 Patent, titled "Process for amplifying, detecting, and/or-cloning nucleic acid sequences," was issued by the United States Patent and Trademark Office on 28 July 1987, and expired on **28 July 2004** due to a terminal disclaimer. Because all monopoly rights in the '195 Patent have terminated, Defendants cannot have any reasonable belief that the products are patented or covered by this patent or are protected.

54.     The '188 Patent, titled "Process for amplifying, detecting, and/or cloning nucleic acid sequences using a thermostable enzyme," was issued by the United States Patent and Trademark Office on 23 October 1990, and expired on **28 March 2005**. Because all monopoly rights in the '188 Patent have terminated, Defendants cannot have any reasonable belief that the products are patented or covered by this patent or are protected.

55.     The '050 Patent, titled "PHΦ29 DNA polymerase," was issued by the United States Patent and Trademark Office on 19 March 1991, and expired on **24 March 2009**. Because all monopoly rights in the '050 Patent have terminated, Defendants cannot have any reasonable belief that the products are patented or covered by this patent or are protected.

56.     The '543 Patent, titled "PHI29 DNA polymerase," was issued by the United States Patent and Trademark Office on 30 March 1993, and expired on **30 March 2010**. Because all monopoly rights in the '543 Patent have terminated, Defendants cannot have any reasonable belief that the products are patented or covered by this patent or are protected.

57.     The '830 Patent, titled "Metal chelate resins," was issued by the United States Patent and Trademark Office on 31 October 1989, and expired on **13 July 2007**. Because all monopoly rights in the '830 Patent have terminated, Defendants cannot have any reasonable belief that the products are patented or covered by this patent or are protected.

58.     The '513 Patent, titled "Metal chelate resins," was issued by the United States Patent and Trademark Office on 10 September 1991, and expired on **10 September 2008**. Because all monopoly rights in the '513 Patent have terminated, Defendants cannot have any reasonable belief that the products are patented or covered by this patent or are protected.

59.     The '418 Patent, titled "Production in Escherichia coli of extracellular Serratia spp. hydrolases," was issued by the United States Patent and Trademark Office on 22 December 1992, and expired on **22 December 2009**. Because all monopoly rights in the '418 Patent have terminated,

Defendants cannot have any reasonable belief that the products are patented or covered by this patent or are protected.

60. The '727 Patent, titled "Quantitation of nucleic acids using the polymerase chain reaction," was issued by the United States Patent and Trademark Office on 15 June 1993, and expired on **15 June 2010**. Because all monopoly rights in the '727 Patent have terminated, Defendants cannot have any reasonable belief that the products are patented or covered by this patent or are protected.

61. The '774 Patent, titled "Quantitation of nucleic acids using the polymerase chain reaction," was issued by the United States Patent and Trademark Office on 19 December 1995, and expired on **15 June 2010** due to a terminal disclaimer. Because all monopoly rights in the '774 Patent have terminated, Defendants cannot have any reasonable belief that the products are patented or covered by this patent or are protected.

62. The '584 Patent, titled "Methods for generating single stranded DNA by the polymerase chain reaction," was issued by the United States Patent and Trademark Office on 19 November 1991, and expired on **19 November 2008**. Because all monopoly rights in the '584 Patent have terminated, Defendants cannot have any reasonable belief that the products are patented or covered by this patent or are protected.

63. The '818 Patent, titled "Purified thermostable enzyme," was issued by the United States Patent and Trademark Office on 26 December 1989, and expired on **26 December 2006**. Because all monopoly rights in the '818 Patent have terminated, Defendants cannot have any reasonable belief that the products are patented or covered by this patent or are protected.

64. The '496 Patent, titled "Cloning and expression of the gene for bacteriophage T7 RNA polymerase," was issued by the United States Patent and Trademark Office on 28 August 1990, and expired on **28 August 2007**. Because all monopoly rights in the '496 Patent have terminated,

Defendants cannot have any reasonable belief that the products are patented or covered by this patent or are protected.

65.     The '320 Patent, titled "Cloning and expression of the gene for bacteriophage T7 RNA polymerase," was issued by the United States Patent and Trademark Office on 09 February 1999, and expired on **30 March 2004**. Because all monopoly rights in the '320 Patent have terminated, Defendants cannot have any reasonable belief that the products are patented or covered by this patent or are protected.

66.     The '216 Patent, titled "Methods for DNA sequencing with thermus aquaticus DNA polymerase," was issued by the United States Patent and Trademark Office on 24 December 1991, and expired on **24 December 2008**. Because all monopoly rights in the '216 Patent have terminated, Defendants cannot have any reasonable belief that the products are patented or covered by this patent or are protected.

67.     The '936 Patent, titled "Loose fill insulation product comprising mineral wool nodules," was issued by the United States Patent and Trademark Office on 30 July 1991, and expired on **8 February 2009**. Because all monopoly rights in the '216 Patent have terminated, Defendants cannot have any reasonable belief that the products are patented or covered by this patent or are protected.  Moreover, upon information and belief, Defendant Eurogentec has improperly marked products with the '936 Patent that it intended to mark with the '996 Patent, which, as discussed above, expired on **01 June 2009**.

68.     The '062 Patent, titled "Transfer vectors and microorganisms containing human cytomegalovirus immediate-early promoter-regulatory DNA sequence," was issued by the United States Patent and Trademark Office on 1 December 1992, and expired on **1 December 2009**. Because all monopoly rights in the '062 Patent have terminated, Defendants cannot have any reasonable belief that the products are patented or covered by this patent or are protected.

69.    Upon information and belief the following table summarizes the expired patent number, name of patent, Exhibit where the expired patent is provided and the date the expired patent expired:

| U.S. Patent Number | 'XXX Patent | Exhibit | Expiration Date |
|---|---|---|---|
| 5,210,015 | '015 | A | 06 August 2010 |
| 5,487,972 | '972 | B | 06 August 2010 |
| 5,079,352 | '352 | C | 07 January 2009 |
| 5,035,996 | '996 | D | 01 June 2009 |
| 5,945,313 | '313 | E | 01 June 2009 |
| 4,683,202 | '202 | F | 28 March 2005 |
| 4,683,195 | '195 | G | 28 July 2004 |
| 4,965,188 | '188 | H | 28 March 2005 |
| 5,001,050 | '050 | I | 24 March 2009 |
| 5,198,543 | '543 | J | 30 March 2010 |
| 4,877,830 | '830 | K | 13 July 2007 |
| 5,047,513 | '513 | L | 10 September 2008 |
| 5,173,418 | '418 | M | 22 December 2009 |
| 5,219,727 | '727 | N | 15 June 2010 |
| 5,476,774 | '774 | O | 15 June 2010 |
| 5,066,584 | '584 | P | 19 November 2008 |
| 4,889,818 | '818 | Q | 26 December 2006 |
| 4,952,496 | '496 | R | 28 August 2007 |
| 5,869,320 | '320 | S | 30 March 2004 |
| 5,075,216 | '216 | T | 24 December 2008 |
| 5,035,936 | '936 | U | 8 February 2009 |
| 5,168,062 | '062 | V | 1 December 2009 |

70.    Defendants' respective Internet catalogs contain statements or other patent marking language that indicate that (a) certain products are marked with one or more of the Expired Patents and/or (b) product categories are either allegedly protected by an Expired Patent or require the customer to obtain a license to practice the invention of an Expired Patent from one or more of the defendants.

71.     Upon information and belief, Defendant Roche has advertised on its online catalog at least the following groups of products and either marked these products with, or required that the customers obtain licenses for, the following Expired Patents:

| Product Name | '015 Patent | '972 Patent | '352 Patent | '202 Patent | '195 Patent | '188 Patent | '727 Patent | '774 Patent |
|---|---|---|---|---|---|---|---|---|
| Tth DNA Polymerase | X | X | X | | | | | |
| Transcriptor One-Step RT-PCR Kit | X | X | X | | | | | |
| Titan One Tube RT-PCR System | X | X | X | | | | | |
| Titan One Tube RT-PCR Kit | X | X | X | | | | | |
| PCR Core Kit | X | X | X | | | | | |
| PCR Core KitPLUS | X | X | X | | | | | |
| FastStart PCR Master | X | X | X | | | | | |
| High Fidelity PCR Master | X | X | X | | | | | |
| Pwo Master | X | X | X | | | | | |
| PCR Master | X | X | X | | | | | |
| Taq DNA Polymerase, 5 U/μl | X | X | X | | | | | |
| Pwo SuperYield DNA Polymerase, dNTPack | X | X | X | | | | | |
| Pwo DNA Polymerase | X | X | X | | | | | |
| Taq DNA Polymerase, 1 U/μl | X | X | X | | | | | |
| Expand High Fidelity PCR System | X | X | X | | | | | |
| Expand 20 kbPLUS PCR System | X | X | X | | | | | |
| GC-RICH PCR System | X | X | X | | | | | |
| FastStart Taq DNA Polymerase, 5 U/μl | X | X | X | | | | | |
| Tgo DNA Polymerase | X | X | X | X | X | X | | |
| Expand High FidelityPLUS PCR System | X | X | X | | | | | |
| FastStart High Fidelity PCR System | X | X | X | | | | | |
| Taq DNA Polymerase, GMP Grade 5 U/μl | X | X | X | | | | | |
| Pwo SuperYield DNA Polymerase | X | X | X | | | | | |
| Taq DNA Polymerase, dNTPack 5 U/μl | X | X | X | | | | | |
| Taq DNA Polymerase (1 U/μl), dNTPack | X | X | X | | | | | |

| Product Name | '015 Patent | '972 Patent | '352 Patent | '202 Patent | '195 Patent | '188 Patent | '727 Patent | '774 Patent |
|---|---|---|---|---|---|---|---|---|
| FastStart Taq DNA Polymerase, dNTPack 5 U/µl | X | X | X | | | | | |
| FastStart High Fidelity PCR System, dNTPack | X | X | X | | | | | |
| Expand High FidelityPLUS PCR System, dNTPack | X | X | X | | | | | |
| Expand High Fidelity PCR System, dNTPack | X | X | X | | | | | |
| Expand Long Range dNTPack | X | X | X | | | | | |
| Expand 20 kbPLUS PCR System, dNTPack | X | X | X | | | | | |
| GC-RICH PCR System, dNTPack | X | X | X | | | | | |
| Expand Long Template PCR System | X | X | X | | | | | |
| FastStart TaqMan® Probe Master | X | X | X | | | | | |
| FastStart SYBR Green Master | | | X | | | | | |
| FastStart Universal SYBR Green Master (Rox) | | | X | | | | | |
| FastStart Universal Probe Master (Rox) | X | X | X | | | | | |
| FastStart TaqMan® Probe Master (Rox) | X | X | X | | | | | |
| RealTime ready RNA Virus Master | X | X | X | | | | | |
| RealTime ready DNA Probes Master | X | X | X | | | | | |
| Universal ProbeLibrary Probes | X | X | | | | | | |
| Universal ProbeLibrary Rat ACTB Gene Assay | X | X | | | | | | |
| Universal ProbeLibrary Mouse GAPD Gene Assay | X | X | | | | | | |
| Universal ProbeLibrary Mouse ACTB Gene Assay | X | X | | | | | | |
| Universal ProbeLibrary Human PGK1 Gene | X | X | | | | | | |
| Universal ProbeLibrary Human ACTB Gene Assay | X | X | | | | | | |
| Universal ProbeLibrary Human HPRT Gene Assay | X | X | | | | | | |

| Product Name | '015 Patent | '972 Patent | '352 Patent | '202 Patent | '195 Patent | '188 Patent | '727 Patent | '774 Patent |
|---|---|---|---|---|---|---|---|---|
| Universal ProbeLibrary Human PBGD Gene Assay | X | X | | | | | | |
| Universal ProbeLibrary Human GUSB Gene Assay | X | X | | | | | | |
| Universal ProbeLibrary Human PPIA Gene Assay | X | X | | | | | | |
| Universal ProbeLibrary Human TBP Gene Assay | X | X | | | | | | |
| Universal ProbeLibrary Human β2M Gene Assay | X | X | | | | | | |
| Universal ProbeLibrary Human GAPD Gene Assay | X | X | | | | | | |
| Universal ProbeLibrary Rat GAPD Gene Assay | X | X | | | | | | |
| Universal ProbeLibrary Set, Rat | X | X | | | | | | |
| Universal ProbeLibrary Set, Mouse | X | X | | | | | | |
| Universal ProbeLibrary Set, Human Reference Gene Assays | X | X | | | | | | |
| Universal ProbeLibrary Set, Human | X | X | | | | | | |
| Universal ProbeLibrary Extension Set, Probes #91 to #165 | X | X | | | | | | |
| RealTime ready Custom Panels | X | X | | | | | | |
| RealTime ready Custom Panel 96 - 96 | X | X | | | | | | |
| RealTime ready Custom Panel 96 - 96+ | X | X | | | | | | |
| RealTime ready Human Apoptosis Panel, 384 | X | X | | | | | | |
| RealTime ready Human Cell Cycle Regulation Panel | X | X | | | | | | |
| RealTime ready Human Reference Gene Panel | X | X | | | | | | |
| RealTime ready Human Apoptosis Panel, 96 | X | X | | | | | | |
| RealTime ready Human ABC Transporter Panel | X | X | | | | | | |
| RealTime ready Human GPCR Panel | X | X | | | | | | |
| RealTime ready Human Nuclear Receptor Panel | X | X | | | | | | |
| RealTime ready Catalog Assays | X | X | | | | | | |

| Product Name | '015 Patent | '972 Patent | '352 Patent | '202 Patent | '195 Patent | '188 Patent | '727 Patent | '774 Patent |
|---|---|---|---|---|---|---|---|---|
| RealTime ready Designer Assays | X | X | | | | | | |
| RealTime ready Single Assays Brochure | X | X | | | | | | |
| LightCycler® Capillaries (20 µl) | X | X | | | | | | |
| LightCycler® Capillaries (100 µl) | X | X | | | | | | |
| LightCycler® Topas Capillaries Starter Set II | X | X | | | | | | |
| LightCycler® Topas Capillaries Starter Set I | X | X | | | | | | |
| LightCycler® Topas Capillaries (20 µl) | X | X | | | | | | |
| LightCycler® RNA Amplification Kit SYBR Green I | X | X | X | | | | | |
| LightCycler® RNA Amplification Kit HybProbe | X | X | X | | | | | |
| LightCycler® RNA Master HybProbe | X | X | X | | | | | |
| LightCycler® RNA Master SYBR Green I | X | X | X | | | | | |
| LightCycler® DNA Master SYBR Green I | | | X | | | | | |
| LightCycler® FastStart DNA Master SYBR Green I | | | X | | | | X | X |
| LightCycler® TaqMan® Master | X | X | X | | | | X | X |
| LightCycler® FastStart DNA MasterPLUS SYBR Green I | | | X | | | | X | X |
| LightCycler® FastStart DNA MasterPLUS HybProbe | | | X | | | | X | X |
| LightCycler® Multiplex DNA Master HybProbe | | | X | | | | | |
| LightCycler® FastStart DNA Master HybProbe | | | X | | | | X | X |
| LightCycler® 480 SYBR Green I Master | | | X | | | | X | X |
| LightCycler® 480 Probes Master | | | X | | | | | |
| LightCycler® 480 Control Kit | X | X | | | | | | |
| LightCycler® 480 RNA Master Hydrolysis Probes | | | X | | | | | |
| LightCycler® 480 Multiwell Plate 96, white | X | X | | | | | | |

| Product Name | '015 Patent | '972 Patent | '352 Patent | '202 Patent | '195 Patent | '188 Patent | '727 Patent | '774 Patent |
|---|---|---|---|---|---|---|---|---|
| LightCycler® 480 Multiwell Plate 384, white | X | X | | | | | | |
| LightCycler® 480 Multiwell Plate 384, clear | X | X | | | | | | |
| LightCycler® 480 Multiwell Plate 96, clear | X | X | | | | | | |
| LightCycler® 480 Sealing Foil | X | X | | | | | | |

72.     Upon information and belief, Defendant Roche has not changed its website since being served with the Original Complaint, indicating a continuing intent to deceive the public and chill competition from potential competitor companies.

73.     Upon information and belief, Defendant Eurogentec has advertised on its online catalog at least the following groups of products and either marked these products with, or required that the customers obtain licenses for, the following Expired Patents:

| Product Name | '015 Patent | '972 Patent | '352 Patent | '313 Patent | '996 Patent | '936 Patent[23] | '202 Patent | '195 Patent | '188 Patent |
|---|---|---|---|---|---|---|---|---|---|
| Custom Oligonucleotides | X | X | X | | | | | | |
| GoldStar DNA polymerase | X | X | X | | | | | | |
| RedGoldStar DNA polymerase | X | X | X | | | | | | |
| HotGoldStar DNA polymerase | X | X | X | | | | | | |
| AccuStar™ DNA polymerase | X | X | X | | | | | | |
| SilverStar DNA polymerase | X | X | X | | | | | | |
| Dap GoldStar DNA polymerase | X | X | X | | | | | | |
| Diamond Taq® | X | X | X | | | | | | |

[23] Upon information and belief, Defendant Eurogentec has improperly marked products with the '936 Patent that it intended to mark with the '996 Patent.  As described above, both the '936 Patent and '996 Patent have expired.

| Product Name | '015 Patent | '972 Patent | '352 Patent | '313 Patent | '996 Patent | '936 Patent | '202 Patent | '195 Patent | '188 Patent |
|---|---|---|---|---|---|---|---|---|---|
| GoldStar Mix | X | X | X | | | | | | |
| Red'y'Gold Mix | X | X | X | | | | | | |
| HotGoldStar Mix | X | X | X | | | | | | |
| Red'y'Star Mix | X | X | X | | | | | | |
| Uracyl-N-glycosylase | | | | X | X | | | | |
| FAST BLUE qPCR MasterMix Plus dTTP, 7.5 ml | | | | X | X | | X | X | X | X |
| FAST BLUE qPCR MasterMix Plus Low ROX, 7.5 ml | | | | X | X | | X | X | X | X |
| FAST BLUE qPCR MasterMix Plus No ROX, 7.5 ml | | | | X | X | | X | X | X | X |
| FAST BLUE qPCR MasterMix Plus, 7.5 ml | | | | X | X | | X | X | X | X |
| FAST qPCR MasterMix Plus dTTP, 7.5 ml | | | | X | X | | X | X | X | X |
| FAST qPCR MasterMix Plus Low ROX, 7.5 ml | | | | X | X | | X | X | X | X |
| FAST qPCR MasterMix Plus No ROX, 7.5 ml | | | | X | X | | X | X | X | X |
| FAST qPCR MasterMix Plus, 7.5 ml | | | | X | X | | X | X | X | X |
| MESA BLUE qPCR MasterMix Plus for SYBR® Assay Low ROX, 7.5 ml | | | | X | X | | X | | | |
| MESA BLUE qPCR MasterMix Plus for SYBR® Assay No ROX, 7.5 ml | | | | X | X | | X | | | |

| Product Name | '015 Patent | '972 Patent | '352 Patent | '313 Patent | '996 Patent | '936 Patent | '202 Patent | '195 Patent | '188 Patent |
|---|---|---|---|---|---|---|---|---|---|
| MESA BLUE qPCR MasterMix Plus for SYBR® Assay w/fluorescein, 7.5 ml | | | X | X | | X | | | |
| MESA BLUE qPCR MasterMix Plus for SYBR® Assay, 7.5 ml | | | X | X | | X | | | |
| MESA FAST qPCR MasterMix Plus for SYBR® Assay Low ROX, 7,5 ml | | | X | X | | X | | | |
| MESA FAST qPCR MasterMix Plus for SYBR® Assay No ROX, 7.5 ml | | | X | X | | X | | | |
| MESA FAST qPCR MasterMix Plus for SYBR® Assay, 7.5 ml | | | X | X | | X | | | |
| MESA GREEN qPCR MasterMix Plus for SYBR® Assay dTTP, 7.5 ml | X | X | X | | | | X | X | X |
| MESA GREEN qPCR MasterMix Plus for SYBR® Assay Low ROX, 15 ml | X | X | X | | | | X | X | X |
| MESA GREEN qPCR MasterMix Plus for SYBR® Assay Low ROX, 50 ml | X | X | X | | | | X | X | X |

| Product Name | '015 Patent | '972 Patent | '352 Patent | '313 Patent | '996 Patent | '936 Patent | '202 Patent | '195 Patent | '188 Patent |
|---|---|---|---|---|---|---|---|---|---|
| MESA GREEN qPCR MasterMix Plus for SYBR® Assay Low ROX, 7.5 ml | X | X | X | | | | X | X | X |
| MESA GREEN qPCR MasterMix Plus for SYBR® Assay No ROX, 15 ml | | | X | X | | X | | | |
| MESA GREEN qPCR MasterMix Plus for SYBR® Assay No ROX, 50 ml | | | X | X | | X | | | |
| MESA GREEN qPCR MasterMix Plus for SYBR® Assay No ROX, 7.5 ml | | | X | X | | X | | | |
| MESA Green qPCR MasterMix Plus for SYBR® Assay w/ fluorescein, 15 ml | | | X | | | | | | |
| MESA Green qPCR MasterMix Plus for SYBR® Assay w/ fluorescein, 50 ml | | | X | | | | | | |
| MESA Green qPCR MasterMix Plus for SYBR® Assay w/ fluorescein, 7.5 ml | | | X | | | | | | |
| MESA GREEN qPCR MasterMix Plus for SYBR® Assay, 15 ml | | | X | X | | X | | | |

| Product Name | '015 Patent | '972 Patent | '352 Patent | '313 Patent | '996 Patent | '936 Patent | '202 Patent | '195 Patent | '188 Patent |
|---|---|---|---|---|---|---|---|---|---|
| MESA GREEN qPCR MasterMix Plus for SYBR® Assay, 50 ml | | | X | X | | X | | | |
| MESA GREEN qPCR MasterMix Plus for SYBR® Assay, 7.5 ml | | | X | X | | X | | | |
| One step MESA GREEN qRT-PCR MasterMix for SYBR Assay No ROX, 7.5 ml | | | X | X | | X | X | X | X |
| One step MESA GREEN qRT-PCR MasterMix for SYBR® Assay, 7.5 ml | | | X | X | | X | X | X | X |
| One step qRT-PCR MasterMix for SYBR® Green I, 7.5 ml | X | X | | | | | X | X | X |
| One step qRT-PCR MasterMix Low ROX, 7.5 ml | X | X | | | | | X | X | X |
| One step qRT-PCR MasterMix No ROX, 7.5 ml | X | X | | | | | X | X | X |
| One step qRT-PCR MasterMix, 7.5 ml | X | X | | | | | X | X | X |
| qPCR Core kit | X | X | X | X | X | | X | X | X |
| qPCR Core kit dTTP | | | X | X | X | | | | |
| qPCR Core kit for SYBR Green I | | | X | X | | X | | | |
| qPCR Core kit for SYBR Green I No ROX | | | X | X | | X | X | X | X |
| qPCR Core kit for SYBR SYBR® Green I dTTP | X | X | X | X | | X | X | X | X |
| qPCR Core kit No ROX | X | X | | X | X | | X | X | X |

| Product Name | '015 Patent | '972 Patent | '352 Patent | '313 Patent | '996 Patent | '936 Patent | '202 Patent | '195 Patent | '188 Patent |
|---|---|---|---|---|---|---|---|---|---|
| qPCR Core kit only dUTP | X | X | | X | X | | X | X | X |
| qPCR MasterMix for SYBR® Green I (5 x 1.5 ml) | | | X | X | | X | | | |
| qPCR MasterMix Plus 15 ml for SYBR® Green I | | | | X | | X | X | X | X |
| qPCR MasterMix Plus 50 ml for SYBR® Green I | | | | X | | X | X | X | X |
| qPCR MasterMix Plus 7,5ml for SYBR® Green I | | | | X | | X | X | X | X |
| qPCR MasterMix Plus dTTP, 7.5 ml | X | X | | X | X | | X | X | X |
| qPCR MasterMix Plus for SYBR® Green I dTTP, 7.5 ml | | | X | X | X | | X | X | X |
| qPCR MasterMix Plus for SYBR® Green I Low ROX, 7.5 ml | | | X | X | X | | X | X | X |
| qPCR MasterMix Plus for SYBR® Green I No ROX, 7.5 ml | | | X | X | X | | | | |
| qPCR MasterMix Plus for SYBR® Green I w/o UNG, 7.5 ml | | | X | X | X | X | | | |
| qPCR MasterMix Plus for SYBR® Green I with fluorescein, 7.5 ml | | | | X | X | | X | X | X |
| qPCR MasterMix Plus Low ROX, 7.5 ml | X | X | | X | X | | X | X | X |

| Product Name | '015 Patent | '972 Patent | '352 Patent | '313 Patent | '996 Patent | '936 Patent | '202 Patent | '195 Patent | '188 Patent |
|---|---|---|---|---|---|---|---|---|---|
| qPCR MasterMix Plus No ROX, 7.5 ml | X | X | X | X | X | | X | X | X |
| qPCR MasterMix Plus w/o UNG, 7.5 ml | X | X | | X | X | | X | X | X |
| qPCR MasterMix Plus, 15 ml | | | X | X | X | | X | X | X |
| qPCR MasterMix Plus, 50 ml | | | X | X | X | | X | X | X |
| qPCR MasterMix Plus, 7.5 ml | | | X | X | X | | X | X | X |
| qPCR MasterMix Plus, 7.5ml QGS | X | X | | X | X | | X | X | X |
| qPCR MasterMix, 5 x 15 ml | | | X | X | X | | | | |
| Two step qRT-PCR Core kit | X | X | | X | X | | X | X | X |
| Two step qRT-PCR Core kit for SYBR Green I | | | X | X | | X | | | |
| Two step qRT-PCR Core kit for SYBR® Green I No ROX | | | X | X | | X | | | |
| Two step qRT-PCR Core kit No ROX | X | X | | X | X | | X | X | X |
| Two step qRT-PCR MasterMix | X | X | X | X | | X | X | X | X |
| Two step qRT-PCR MasterMix for SYBR® Green I | | | X | X | X | X | X | X | X |
| Two step qRT-PCR MasterMix for SYBR® Green I No Rox | | | X | X | X | X | X | X | X |
| Two step qRT-PCR MasterMix No ROX | X | X | | X | X | | X | X | X |
| 28S rRNA Control kit | X | X | | X | X | | X | X | X |
| GAPDH Control kit | X | X | | X | X | | X | X | X |

| Product Name | '015 Patent | '972 Patent | '352 Patent | '313 Patent | '996 Patent | '936 Patent | '202 Patent | '195 Patent | '188 Patent |
|---|---|---|---|---|---|---|---|---|---|
| 18S rRNA Control kit (2 PRODUCTS) | X | X | | X | X | | X | X | X |
| ß-actin Control kit | X | X | | X | X | | X | X | X |
| Ubiquitin C Control kit | X | X | | X | X | | X | X | X |
| ß-2 microglobulin Control kit | X | X | | X | X | | X | X | X |
| Phospholipase A2 Control kit | X | X | | X | X | | X | X | X |
| Hydroxymethyl-bilane synthase Control kit | X | X | | X | X | | X | X | X |
| Ribosomal protein L13a Control kit | X | X | | X | X | | X | X | X |
| Succinate deshydrogenase complex Control kit | X | X | | X | X | | X | X | X |
| Hypoxanthine phosphoribosyl transferase Control kit | X | X | | X | X | | X | X | X |
| TATA box binding protein Control kit | X | X | | X | X | | X | X | X |
| Universal RT Kit for PCR | | | X | X | | X | | | |
| Two step qRT-PCR MasterMix QGS (sensitive detection) | X | X | X | X | X | | X | X | X |

74.     Upon information and belief, Defendant Eurogentec has not changed its website since being served with the Original Complaint, indicating a continuing intent to deceive the public and chill competition from potential competitor companies.

75.     Upon information and belief, Defendant Clontech has advertised on its online catalog at least the following groups of products and either marked these products with, or required that the customers obtain licenses for, the following Expired Patents:

| Product Name | '015 Patent | '972 Patent | '352 Patent | '202 Patent | '195 Patent | '188 Patent | '418 Patent | '062 Patent |
|---|---|---|---|---|---|---|---|---|
| Terra PCR Direct Polymerase Mix | X | X | X | | | | | |
| Terra PCR Direct FFPE Kit | X | X | X | | | | | |
| Terra PCR Direct Genotyping Kit | X | X | X | | | | | |
| Terra PCR Direct Red Dye Premix | X | X | X | | | | | |
| Terra PCR Direct Card Kit | X | X | X | | | | | |
| Terra qPCR Direct SYBR Premix | X | X | X | | | | | |
| TITANIUM Taq DNA Polymerase | X | X | X | X | X | X | | |
| TITANIUM Taq DNA Polymerase | X | X | X | X | X | X | | |
| TITANIUM Taq PCR Kit | X | X | X | X | X | X | | |
| TITANIUM Taq PCR Kit | X | X | X | X | X | X | | |
| TITANIUM Taq DNA Polymerase | X | X | X | X | X | X | | |
| Advantage 2 Polymerase Mix | X | X | X | | | | | |
| Advantage 2 Polymerase Mix | X | X | X | | | | | |
| Advantage 2 PCR Kit | X | X | X | | | | | |
| Advantage 2 PCR Kit | X | X | X | | | | | |
| Advantage HD Polymerase Mix | X | X | X | | | | | |
| Advantage-HF 2 PCR Kit | X | X | X | | | | | |
| Advantage-HF 2 PCR Kit | X | X | X | | | | | |
| Advantage-GC 2 Polymerase Mix 639114 | X | X | X | | | | | |
| Advantage-GC 2 PCR Kit | X | X | X | | | | | |
| Advantage-GC 2 PCR Kit | X | X | X | | | | | |
| Advantage Genomic LA Polymerase Mix | X | X | X | | | | | |
| Advantage GC Genomic LA Polymerase Mix | X | X | X | | | | | |
| TITANIUM DNA Amplification Kit | X | X | X | | | | | |
| TITANIUM DNA Amplification Kit | X | X | X | | | | | |
| SYBR® Advantage® GC qPCR Premix | X | X | X | | | | | |
| SYBR Advantage qPCR Premix | X | X | X | | | | | |
| QTaq DNA Polymerase Mix | X | X | X | | | | | |

| Product Name | '015 Patent | '972 Patent | '352 Patent | '202 Patent | '195 Patent | '188 Patent | '418 Patent | '062 Patent |
|---|---|---|---|---|---|---|---|---|
| QTaq™ One-Step qRT-PCR SYBR® Kit | X | X | X | | | | | |
| QTaq™ One-Step qRT-PCR Kit | X | X | X | | | | | |
| High Yield PCR EcoDry Premix | X | X | X | | | | | |
| High Fidelity PCR EcoDry Premix | X | X | X | | | | | |
| Diversify® PCR Random Mutagenesis Kit | X | X | X | | | | | |
| RT-PCR Amplimers | | | | X | X | X | | |
| Titanium Taq 384 Plate | X | X | X | | | | | |
| Titanium Taq 96 Plate | X | X | X | | | | | |
| TITANIUM One-Step RT-PCR Kit | X | X | X | | | | | |
| Advantage RT-PCR Kit | | | | X | X | X | | |
| Advantage 2 PCR Kit | | | | X | X | X | | |
| Advantage cDNA PCR Kit & Polymerase Mix | X | X | X | | | | | |
| Advantage Genomic PCR Kit | | | | X | X | X | | |
| Advantage Genomic PCR Mix | | | | X | X | X | | |
| Advantage® 2 PCR Enzyme System | X | X | X | | | | | |
| Advantage®-GC Genomic PCR Kit | | | | X | X | X | | |
| Advantage® -GC Genomic Polymerase Mix | | | | X | X | X | | |
| Advantage-HF PCR Kit | X | X | | | | | | |
| Adeno-X qPCR Titration Kit | X | X | X | | | | | |
| Adeno-X PCR Screening Primer Set | X | X | X | | | | | |
| Adeno-X Mega Purification Kit | | | | | | | X | |
| Adeno-X™ Virus Purification Mega Kit | | | | | | | X | |
| Qtaq ROX-Free DNA Polymerase Mix | X | X | X | | | | | |
| Quant-X™ One-Step qRT-PCR SYBR® Kit | | | X | | | | | |
| Diversify PCR Random Mutagenesis Kit | X | X | X | | | | | |
| Mir-X™ miRNA First-Strand Synthesis and SYBR® qRT-PCR | X | X | X | | | | | |
| Retro-X™ qRT-PCR Titration Kit | | | X | | | | | |

| Product Name | '015 Patent | '972 Patent | '352 Patent | '202 Patent | '195 Patent | '188 Patent | '418 Patent | '062 Patent |
|---|---|---|---|---|---|---|---|---|
| Sprint Advantage PCR Products | | | | X | X | X | | |
| Sprint TITANIUM Taq 384 Plate | X | X | X | | | | | |
| Sprint TITANIUM 96 Plate | X | X | X | | | | | |
| Taq Full and Taq Full Hot Start DNA Polymerase Mixes | | | | X | X | X | | |
| Taq Full DNA Polymerase | | | | X | X | X | | |
| TaqStart Antibody | | | | X | X | X | | |
| Atlas Arrays RT-PCR | X | X | X | | | | | |
| Atlas Select Human Oncogene Array | X | X | | | | | | |
| Atlas Select Human Tumor Array | X | X | | | | | | |
| qPCR Human Matched Pair Total RNA Panel | X | X | X | | | | | |
| qPCR Human Reference Total RNA | X | X | X | | | | | |
| Marathon cDNA Amplification Kit | X | X | X | | | | | |
| Marathon-Ready cDNA | | | | X | X | X | | |
| Matched cDNA Pairs | X | X | X | | | | | |
| Matchmaker™ Insert Check PCR Mix | X | X | X | | | | | |
| RNA/cDNA Quality Assay | X | X | X | | | | | |
| ApoAlert Annexin V Protocol | | | | | | | | x |
| Retro-X™ Tet-Off® Advanced Expression System | | | | | | | | x |

76.    Upon information and belief, Defendant Clontech has not changed its website since being served with the Original Complaint, indicating a continuing intent to deceive the public and chill competition from potential competitor companies.

77.    Upon information and belief, Defendant IDT has advertised on its online catalog at least the following groups of products and either marked these products with, or required that the customers obtain licenses for, the following Expired Patents:

| Product Name | '015 Patent | '972 Patent |
|---|:---:|:---:|
| H1N1 Family | X | X |
| InfA Forward - 10 nm | X | X |
| InfA Reverse - 10 nm | X | X |
| 5' 6-FAM™ / 3' IB®FQ 100 nm PrimeTime™ DLP | X | X |
| 5' 6-FAM™ / 3' IB®FQ 250 nm PrimeTime™ DLP | X | X |
| 5' 6-FAM™ / 3' IB®FQ 1 μm PrimeTime™ DLP | X | X |
| SW InfA Forward - 10 nm | X | X |
| SW InfA Reverse - 10 nm | X | X |
| 5' 6-FAM™ / Int IB®FQ 100 nm PrimeTime™ DLP | X | X |
| 5' 6-FAM™ / Int IB®FQ 250 nm PrimeTime™ DLP | X | X |
| 5' 6-FAM™ / Int IB®FQ 1 μm PrimeTime™ DLP | X | X |
| SW H1 Forward - 10 nm | X | X |
| SW H1 Reverse - 10 nm | X | X |
| 5' 6-FAM™ / Int IB®FQ 100 nm PrimeTime™ DLP | X | X |
| 5' 6-FAM™ / Int IB®FQ 250 nm PrimeTime™ DLP | X | X |
| 5' 6-FAM™ / Int IB®FQ 1 μm PrimeTime™ DLP | X | X |
| RNase P Forward - 10 nm | X | X |
| RNase P Reverse - 10 nm | X | X |
| 5' 6-FAM™ / 3' IB®FQ 100 nm PrimeTime™ DLP | X | X |
| 5' 6-FAM™ / 3' IB®FQ 250 nm PrimeTime™ DLP | X | X |
| 5' 6-FAM™ / 3' IB®FQ 1 μm PrimeTime™ DLP | X | X |
| InfA Ultramer™ Positive Control - 100 pmoles | X | X |
| SW InfA Ultramer™ Positive Control - 100 pmoles | X | X |
| SW H1 Ultramer™ Positive Control - 100 pmoles | X | X |
| RNase P Ultramer™ Positive Control - 100 pmoles | X | X |
| H1N1 Universal Positive Control Plasmid - 100ng | X | X |
| PrimeTime qPCR Assays | X | X |
| PrimeTime qPCR Probes | X | X |
| Mini qPCR Probes | X | X |
| Express qPCR Probes | X | X |
| Dual Label Probes | X | X |
| Molecular Beacons | X | X |

78.    Upon information and belief, Defendant IDT has not changed its website since being served with the Original Complaint, indicating a continuing intent to deceive the public and chill competition from potential competitor companies.

79.   Upon information and belief, Defendant Qiagen has advertised on its online catalog at least the following groups of products and either marked these products with, or required that the customers obtain licenses for, the following Expired Patents:

| Product Name | '015 | '972 | '313 | '996 | '050 | '543 | '830 | '513 | '418 | '727 | '774 | '202 | '195 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| EpiTect MethyLight PCR Kits | X | X | | | | | | | | X | X | | |
| FastLane Cell Multiplex Kits | X | X | X | X | | | | | | X | X | | |
| FastLane Cell Multiplex NR Kit | X | X | X | X | | | | | | X | X | | |
| FastLane Cell Probe Kit | X | X | X | X | | | | | | X | X | | |
| FastLane Cell SYBR Green Kit | X | X | X | X | | | | | | X | X | | |
| miScript PCR System | | | X | X | | | | | | | | | |
| New! QuantiFast Probe RT-PCR Plus Kit | X | X | | | | | | | | X | X | | |
| QuantiFast Multiplex PCR Kits | X | X | | | | | | | | X | X | | |
| QuantiFast Multiplex RT-PCR Kits | X | X | | | | | | | | X | X | | |
| QuantiFast Probe Assays | X | X | | | | | | | | X | X | | |
| QuantiFast Probe PCR Kits | X | X | | | | | | | | X | X | | |
| QuantiFast Probe RT-PCR Kits | X | X | | | | | | | | X | X | | |
| QuantiFast Probe RT-PCR Plus Kit | X | X | | | | | | | | X | X | | |
| QuantiFast SYBR Green PCR Kit | | | X | X | | | | | | | | | |
| QuantiTect Multiplex PCR Kits | X | X | X | X | | | | | | X | X | | |
| QuantiTect Multiplex RT-PCR Kits | X | X | X | X | | | | | | X | X | | |
| QuantiTect Primer Assays | | | X | X | | | | | | | | | |
| QuantiTect Probe PCR Kits | X | X | X | X | | | | | | X | X | X | X |
| QuantiTect Probe RT-PCR Kit | X | X | X | X | | | | | | X | X | X | X |
| QuantiTect SYBR Green PCR Kits | | | X | X | | | | | | | | | |
| QuantiTect SYBR Green RT-PCR Kit | | | X | X | | | | | | | | | |
| QuantiTect Virus Kits | X | X | | | | | | | | X | X | | |

| Product Name | Patents | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | '015 | '972 | '313 | '996 | '050 | '543 | '830 | '513 | '418 | '727 | '774 | '202 | '195 |
| QuantiTect Whole Transcriptome Kit | | | | | X | X | | | | | | | |
| REPLI-g FFPE Kit | | | | | X | X | | | | | | | |
| REPLI-g Kit | | | | | X | X | | | | | | | |
| REPLI-g Mini and Midi Kits | | | | | X | X | | | | | | | |
| REPLI-g Mitochondrial DNA Kit | X | | | | X | X | | | | | | | |
| REPLI-g Screening Kit | | | | | X | X | | | | | | | |
| REPLI-g UltraFast Mini Kit | | | | | X | X | | | | | | | |
| Rotor-Gene Multiplex PCR Kit | X | X | | | | | | | | X | X | | |
| Rotor-Gene Multiplex RT-PCR Kit | X | X | | | | | | | | X | X | | |
| Rotor-Gene Probe PCR Kit | X | X | | | | | | | | X | X | | |
| Rotor-Gene Probe RT-PCR Kit | X | X | | | | | | | | X | X | | |
| Type-it Fast SNP Probe PCR Kit | X | X | | | | | | | | X | X | | |
| Qproteome Cell Compartment Kit | | | | | | | | | X | | | | |
| Qproteome Nuclear Protein Kit | | | | | | | | | X | | | | |
| Qproteome Mammalian Protein Prep Kit | | | | | | | | | X | | | | |
| Qproteome Bacterial Protein Prep Kit | | | | | | | | | X | | | | |
| 289 additonal Benzonase products | | | | | | | | | X | | | | |
| Ni-NTA Resin | | | | | | | X | X | | | | | |
| 756 additonal Ni-NTA Resin products | | | | | | | X | X | | | | | |
| 5x QuantiFast Pathogen Master Mix | X | X | | | | | | | | X | X | | |
| QuantiFast Pathogen RT Mix | X | X | | | | | | | | X | X | | |
| QuantiFast Pathogen RT-PCR +IC Kit | X | X | | | | | | | | X | X | | |
| QuantiFast Pathogen PCR +IC Kit | X | X | | | | | | | | X | X | | |
| Uracil-N-glycosylase | | | X | X | | | | | | | | | |
| EpiTect™ MethyLight Assay: | | | | | | | | | | | | X | X |
| QuantiTect Virus Kit | X | X | | | | | | | | X | X | | |

| Product Name | Patents | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | '015 | '972 | '313 | '996 | '050 | '543 | '830 | '513 | '418 | '727 | '774 | '202 | '195 |
| QuantiTect Virus +ROX Vial Kit | X | X | | | | | | | | X | X | | |
| QuantiTect Whole Transcriptome Kit | | | | | X | X | | | | | | | |
| Taq DNA Polymerase | | | | | | | | | | | | X | X |
| HotStarTaq DNA Polymerase | | | | | | | | | | | | X | X |
| ProofStart DNA Polymerase | | | | | | | | | | | | X | X |
| Omniscript RT Kit | | | | | | | | | | | | X | X |
| Sensiscript® RT Kit | | | | | | | | | | | | X | X |
| QuantiTect Custom Assays | X | X | X | X | | | | | | X | X | | |
| QuantiTect Virus +ROX Vial Kit | X | X | | | | | | | | X | X | | |

80.    Upon information and belief, Defendant Qiagen has not changed its website since being served with the Original Complaint, indicating a continuing intent to deceive the public and chill competition from potential competitor companies.

81.    Upon information and belief, Defendant Life acted as agent for Defendant Roche and required licensees to mark products with specific lists of patents according to required language. The required language included Expired Patents, and there were no provisions to require licensees to either remove patents that had expired, or to remove language referring to corresponding foreign equivalents of expired U.S. patents even when the corresponding foreign patents had also expired. The following table lists those patents with which Defendant Life, on information and belief, required its licensees to falsely mark licensed products based on expired U.S. patent rights:

| Licensed Product Category | '015 Patent | '972 Patent | '352 Patent | '584 Patent | '818 Patent |
|---|---|---|---|---|---|
| Polymerase enzymes used for PCR | | | X | | |
| 5' nuclease reaction, methods and kits | X | | | | |
| 5' nuclease reaction, methods and kits | | X | | | |
| Asymmetric PCR | | | | X | |
| 5' Nuclease research kits, corresponding foreign only | | | | | X |

82.   Upon information and belief, Defendant Life has advertised on its online catalog at least the following groups of products and either marked these products with, or required that the customers obtain licenses for, the following Expired Patents:

| Product Name | '996 Patent |
|---|---|
| AmpErase® Uracil N-glycosylase (UNG) | X |
| TaqMan® Universal PCR master Mix | X |
| TaqMan® Universal Master Mix II | X |
| TaqMan® PCR Reagent Kit with Controls | X |
| TaqMan® Ribosomal RNA Control Reagents | X |
| SYBR® Green PCR Master Mix and RT-PCR Reagents | X |
| SYBR® Green PCR and RT-PCR Reagents | X |
| 37 Products Referencing UNG | X |
| 3 Assay Types Referencing UNG | X |

83.   Upon information and belief, Defendant Life has not successfully changed its website since being served with the Original Complaint, indicating a continuing intent to deceive the public and chill competition from potential competitor companies. Instead, Defendant Life apparently attempted to disable some links within its website, but the falsely marked expired patents still appear.

84.   Upon information and belief, Defendant Thermo has advertised on its online catalog at least the following groups of products and either marked these products with, or required that the customers obtain licenses for, the following Expired Patents:

| Product Name | '015 Patent | '972 Patent | '352 Patent |
|---|---|---|---|
| 1.1x ReddyMix PCR Master Mix | X | X | X |
| 1.1x Thermo-Start PCR Master Mix | X | X | X |
| 1.1x Thermo-Start ReddyMix PCR Mster Mix | X | X | X |
| 2X ReddyMix PCR Master Mix (1.5mM MgCl2) | X | X | X |
| 2X Thermo-Start  PCR Master Mix | X | X | X |
| 2x Thermo-Start High Performance PCR Master Mix | X | X | X |
| 2x Thermo-Start High Performance ReddyMix PCR Master Mix 100 | X | X | X |
| 2x Thermo-Start High Performance PCR Master Mix | X | X | X |
| 2x Thermo-Start High Performance ReddyMix PCR Master Mix 1000 | X | X | X |

| Product Name | '015 Patent | '972 Patent | '352 Patent |
|---|---|---|---|
| 2X Thermo-Start ReddyMix PCR Master Mix | X | X | X |
| Absolute Blue QPCR Low ROX Mix | X | X | X |
| ABsolute Blue QPCR Mix Plus ROX Vial | X | X | X |
| ABsolute Blue QPCR ROX Mix | X | X | X |
| ABsolute Blue QPCR SYBR Green Fluorescein Mix | X | X | X |
| ABsolute Blue QPCR SYBR Green Low ROX Mix | X | X | X |
| ABsolute Blue QPCR SYBR Green Mix Plus ROX Vial | X | X | X |
| ABsolute Blue QPCR SYBR Green ROX Mix | X | X | X |
| Absolute Fast QPCR Low Rox Mix | X | X | X |
| ABsolute Fast QPCR Mix Plus ROX Vial | X | X | X |
| ABsolute Fast QPCR ROX Mix 2 | X | X | X |
| ABsolute Fast QPCR ROX Mix | X | X | X |
| Extensor Hi-Fidelity PCR Master Mix | X | X | X |
| Extensor Hi-Fidelity PCR Enzyme Mix | X | X | X |
| Extensor Hi-Fidelity PCR Enzyme Mix 2 | X | X | X |
| Taq PCR Kit | X | X | X |
| Taq PCR Kit 2 | X | X | X |
| Taq DNA Polymerase | X | X | X |
| Taq DNA Polymerase with KCL Buffer | X | X | X |
| Taq DNA Polymerase 2 | X | X | X |
| Thermo-Start Taq DNA Polymerase | X | X | X |
| Thermo-Start Taq DNA Polymerase with High Performance Buffer | X | X | X |
| Thermo-Start Taq DNA Polymerase 2 | X | X | X |
| Thermo-Start PCR Kit | X | X | X |
| Thermo-Start PCR Kit with High Performance Buffer | X | X | X |
| ThermoPrime Taq DNA Polymerase | X | X | X |
| ThermoPrime Taq DNA Polymerase with 10X ReddyMix | X | X | X |
| Thermoprime Plus DNA Polymerase | X | X | X |
| ThermoPrime PCR Kit | X | X | X |
| Verso 1-Step RT-qPCR Low Rox Kits | X | X | X |
| Verso 1-Step RT-qPCR Rox Kit | X | X | X |
| Verso SYBR GREEN  1-Step RT-qPCR Flourescein Kit | | | X |
| Verso SYBR GREEN  1-Step RT-qPCR Vial Kit | | | X |
| Verso SYBR GREEN  1-Step RT-qPCR Low ROX Kit | | | X |
| Verso SYBR GREEN  1-Step RT-qPCR ROX Kit | | | X |
| Verso* 1-Step RT-PCR Hot Start Kit | X | X | X |
| Verso* 1-Step RT-PCR Kit | X | X | X |
| Verso* 1-Step RT-PCR ReddyMix* Kit | X | X | X |
| Verso SYBR GREEN  2-Step RT-qPCR ROX Vial Kit | X | X | X |

| Product Name | '015 Patent | '972 Patent | '352 Patent |
|---|---|---|---|
| Verso* 2-Step QRT-PCR Kit Plus ROX Vial | X | X | X |
| Verso* 2-Step QRT-PCR Low ROX Kit | X | X | X |
| Verso* 2-Step QRT-PCR ROX Kit | X | X | X |
| Verso* SYBR* Green 2-Step Fluorescein Kit | | | X |
| Verso* SYBR* Green 2-Step QRT-PCR Low ROX Kit | | | X |
| Verso* SYBR* Green 2-Step QRT-PCR ROX Kit | | | X |

85.    Upon information and belief, Defendant Thermo has not changed its website since being served with the Original Complaint, indicating a continuing intent to deceive the public and chill competition from potential competitor companies.

86.    Upon information and belief, Defendant Quanta has advertised on its online catalog at least the following groups of products and either marked these products with, or required that the customers obtain licenses for, the following Expired Patents:

| Product Name | '015 Patent | '972 Patent | '352 Patent | '996 Patent | '313 Patent |
|---|---|---|---|---|---|
| PerfeCTa™ qPCR SuperMix | X | X | X | | |
| PerfeCTa™ qPCR SuperMix, ROX | X | X | X | | |
| PerfeCTa™ qPCR SuperMix, Low ROX | X | X | X | | |
| PerfeCTa™ MultiPlex qPCR SuperMix | X | X | X | | |
| PerfeCTa™ qPCR SuperMix, UNG | X | X | X | X | X |
| PerfeCTa™ qPCR SuperMix, UNG, ROX | X | X | X | X | X |
| PerfeCTa™ qPCR SuperMix, UNG, Low ROX | X | X | X | X | X |
| PerfeCTa™ qPCR FastMix™ | X | X | X | | |
| PerfeCTa™ qPCR FastMix, ROX™ | X | X | X | | |
| PerfeCTa™ qPCR FastMix™, Low ROX | X | X | X | | |
| PerfeCTa™ SYBR® Green SuperMix for iQ™ | X | | | | |
| PerfeCTa™ SYBR® Green SuperMix | X | | | | |
| PerfeCTa™ SYBR® Green SuperMix, ROX | X | | | | |
| PerfeCTa™ SYBR® Green SuperMix, Low ROX | X | | | | |
| PerfeCTa™ SYBR® Green SuperMix, UNG, for iQ™ | X | | | X | X |
| PerfeCTa™ SYBR® Green SuperMix, UNG | X | | | X | X |
| PerfeCTa™ SYBR® Green SuperMix, UNG, ROX | X | | | X | X |
| PerfeCTa™ SYBR® Green SuperMix, UNG, Low ROX | X | | | X | X |
| PerfeCTa™ SYBR® Green FastMix™ for iQ™ | X | | | | |

| Product Name | '015 Patent | '972 Patent | '352 Patent | '996 Patent | '313 Patent |
|---|---|---|---|---|---|
| PerfeCTa™ SYBR® Green FastMix™ | X | | | | |
| PerfeCTa™ SYBR® Green FastMix™, ROX | X | | | | |
| PerfeCTa™ SYBR® Green FastMix™, Low ROX | X | | | | |
| qScript™ One-Step qRT-PCR Kit | X | X | X | | |
| qScript™ One-Step qRT-PCR Kit, ROX | X | X | X | | |
| qScript™ One-Step qRT-PCR Kit, Low ROX | X | X | X | | |
| qScript™ One-Step Fast qRT-PCR Kit | X | X | X | | |
| qScript One-Step Fast qRT-PCR Kit, ROX | X | X | X | | |
| qScript™ One-Step Fast qRT-PCR Kit, Low ROX | X | X | X | | |
| qScript™ One-Step Fast MGB qRT-PCR Kit | X | X | X | | |
| qScript™ One-Step Fast MGB qRT-PCR Kit, ROX | X | X | X | | |
| qScript™ One-Step Fast MGB qRT-PCR Kit, Low ROX | X | X | X | | |
| qScript One-Step SYBR® Green qRT-PCR Kit | X | X | X | | |
| qScript One-Step SYBR® Green qRT-PCR Kit for iQ | X | X | X | | |
| qScript One-Step SYBR® Green qRT-PCR Kit, ROX | X | X | X | | |
| qScript One-Step SYBR® Green qRT-PCR Kit, Low ROX | X | X | X | | |
| AccuStart™ PCR SuperMix | X | X | X | | |
| AccuStart™ Taq DNA Polymerase | X | X | X | | |
| AccuStart™ Taq DNA Polymerase HiFi | X | X | X | | |

87.     Upon information and belief, Defendant Quanta has not changed its website since being served with the Original Complaint, indicating a continuing intent to deceive the public and chill competition from potential competitor companies.

88.     Upon information and belief, Defendant Gene Link has advertised on its online catalog at least the following groups of products and either marked these products with, or required that the customers obtain licenses for, the following Expired Patents:

| Product Name | '015 Patent | '972 Patent | '202 Patent | '195 Patent | '188 Patent | '216 Patent |
|---|---|---|---|---|---|---|
| Genelink Taqman | X | X | X | X | X | X |
| Taqman SNP Assay | X | X | X | X | X | X |
| Taq DNA Polymerase and PCR Kits | X | X | X | X | X | X |
| PCR Master Mix | X | X | X | X | X | X |
| Gene Expression Assays | X | X | X | X | X | X |

| Product Name | '015 Patent | '972 Patent | '202 Patent | '195 Patent | '188 Patent | '216 Patent |
|---|---|---|---|---|---|---|
| Catalog or Custom Assay | X | X | X | X | X | X |
| Taqman and Molecular Beacon Probes | X | X | X | X | X | X |
| Other Fluorescent Molecular Probes | X | X | X | X | X | X |
| Gscan Gene Detection Kits | X | X | X | X | X | X |
| GL RAPD Decamer Sets | | | X | X | X | X |
| Huntington Disease PCRProber Kit | | | X | X | X | X |
| Huntington Disease GLHD14 GeneProber unlabeled probe | | | X | X | X | X |
| Human beta actin RT-PCRmer | | | X | X | X | X |
| Friedreich's Ataxia GLFRDA GScan Kits | | | X | X | X | X |
| GAPDH RT-PCRmer | | | X | X | X | X |
| Infectious Disease Genemer Kits | | | X | X | X | X |
| Fragile X GeneProber GLFX1 | | | X | X | X | X |
| Fragile X GeneProber GLFXDig1 | | | X | X | X | X |
| Fragile X GLFX PCRProber Kit | | | X | X | X | X |
| Fragile X GLFX PCRProber | | | X | X | X | X |
| Sickle Cell Genemer | | | X | X | X | X |
| Fragile X Genemer | | | X | X | X | X |
| Sickle Cell Genemer Control DNA | | | X | X | X | X |
| RhD & RhCcEe Genemer | | | X | X | X | X |
| Fragile X Genemer Control DNA | | | X | X | X | X |
| SRY, X & Y Genemer | | | X | X | X | X |
| Friedreich Ataxia Genemer Control DNA | | | X | X | X | X |
| Friedreich's Ataxia Genemer Kit | | | X | X | X | X |
| Friedreich's Ataxia Genemer | | | X | X | X | X |
| Myotonic Dystrophy GLDM PCRProber | | | X | X | X | X |
| Myotonic Dystrophy GLDM PCRProber Kit | | | X | X | X | X |
| Myotonic Dystrophy GLDM GScan Kits | | | X | X | X | X |
| Huntington Disease Genemer Control DNA | | | X | X | X | X |
| Huntington Disease CAG Repeat Genotyping | | | X | X | X | X |
| Myotonic Dystrophy Genemer Control DNA | | | X | X | X | X |
| Myotonic Dystrophy CTG Repeat Genotyping | | | X | X | X | X |
| Factor V Leiden (G1691A; R506Q) Genemer | | | X | X | X | X |
| Factor VIII (F8, Hemophilia A) | | | X | X | X | X |
| Fragile X GLFX 35S Genemer Kit | | | X | X | X | X |
| Human-Cox I Genemer | | | X | X | X | X |
| Mouse-Cox I Genemer | | | X | X | X | X |
| Rat-Cox I Genemer | | | X | X | X | X |

| Product Name | '015 Patent | '972 Patent | '202 Patent | '195 Patent | '188 Patent | '216 Patent |
|---|---|---|---|---|---|---|
| Ch.Hamster-Cox I Genemer | | | X | X | X | X |
| Afr. Green Monkey-Cox I Genemer | | | X | X | X | X |
| Dog-Cox I Genemer | | | X | X | X | X |
| Cat-coxl-For1 | | | X | X | X | X |
| Rabbit-Cox I Genemer | | | X | X | X | X |
| Horse-Cox I Genemer | | | X | X | X | X |
| RT-PCRmer Rat B Actin | | | X | X | X | X |
| RT-PCRmer Mouse ß-actin | | | X | X | X | X |
| RT-PCRmer Human ß2 microglobulin | | | X | X | X | X |
| RT-PCRmer Human & Rat ß-actin Control PCR Mix | | | X | X | X | X |

89.     Upon information and belief, Defendant GenScript has advertised on its online catalog at least the following groups of products and either marked these products with, or required that the customers obtain licenses for, the following Expired Patents:

| Product Name | '202 Patent | '195 Patent |
|---|---|---|
| GenScript Taq DNA Polymerase | X | X |
| Taq DNA Polymerase concentrated | X | X |
| Taq DNA Polymerase without Mg2+ | X | X |
| 2X Taq Master Mix tech manual | X | X |
| Green Taq DNA Polymerase | X | X |
| TissueDirectTM Multiplex PCR System | X | X |
| BloodReadyTM Multiplex PCR System | X | X |
| PlantDirectTM Multiplex PCR System | X | X |
| BacReadyTM Multiplex PCR System | X | X |

90.     Upon information and belief, Defendant EMD has advertised on its online catalog at least the following groups of products and either marked these products with, or required that the customers obtain licenses for, the following Expired Patents:

| Product Name | '015 Patent | '972 Patent | '352 Patent | '188 Patent | '496 Patent | '320 Patent | '216 Patent |
|---|---|---|---|---|---|---|---|
| NovaTaq™ DNA Polymerase | X | X | X | X | | | X |
| NovaTaq PCR Kit | X | X | X | X | | | X |
| NovaTaq PCR Kit PLUS | X | X | X | X | | | X |
| NovaTaq PCR Master Mix | X | X | X | X | | | X |
| KOD Hot Start DNA Polymerase | X | X | X | X | | | X |

| Product Name | '015 Patent | '972 Patent | '352 Patent | '188 Patent | '496 Patent | '320 Patent | '216 Patent |
|---|---|---|---|---|---|---|---|
| NovaTaq Hot Start Master Mix Kit | X | X | X | X | | | X |
| KOD DNA Polymerase | X | X | X | X | | | X |
| KOD XL DNA Polymerase | X | X | X | X | | | X |
| KOD Hot Start DNA Polymerase | X | X | X | X | | | X |
| KOD Hot Start Master Mix | X | X | X | X | | | X |
| KOD Xtreme Hot Start DNA Polymerase | X | X | X | | | | |
| KOD XL DNA Polymerase | X | X | X | X | | | X |
| pETBlue-1 Perfectly Blunt Cloning Kit | | | | | X | X | |
| pETBlue-2 Perfectly Blunt Cloning Kit | | | | | X | X | |
| Introductory pETBlue-1 Perfectly Blunt Cloning Kit | | | | | X | X | |
| Introductory pETBlue-2 Perfectly Blunt Cloning Kit | | | | | X | X | |
| pETBlue-1 Acceptor Vector Kit | | | | | X | X | |
| pETBlue™-1 System | | | | | X | X | |
| pETBlue™-2 System | | | | | X | X | |

91.   Upon information and belief, Defendant EMD has not changed its website since being served with the Original Complaint, indicating a continuing intent to deceive the public and chill competition from potential competitor companies.

92.   Upon information and belief, Defendant TriLink has advertised on its online catalog at least the following groups of products and either marked these products with, or required that the customers obtain licenses for, the following Expired Patents:

| Product Name | '015 Patent | '972 Patent |
|---|---|---|
| Custom Synthesis - Dual Label Probes | X | X |
| Molecular Beacons | X | X |
| CleanAmp™ dNTPs | X | X |
| CleanAmp™ 7-deaza-dGTP | X | X |
| CleanAmp™ Primers.pdf | X | X |
| TriLink   CleanAmp™ Amidities | X | X |

93.     Upon information and belief, Defendant Cepheid has advertised on its online catalog at least the following groups of products and either marked these products with, or required that the customers obtain licenses for, the following Expired Patents:

| Product Name | '015 Patent | '972 Patent | '352 Patent | '202 Patent | '195 Patent | '188 Patent | '216 Patent |
|---|---|---|---|---|---|---|---|
| Omnimix | | | | X | X | X | X |
| 3-Agent Biothreat Assay | X | X | X | | | | |

94.     The false marking statute explicitly permits *qui tam* actions. By permitting members of the public to sue on behalf of the government, Congress allowed individuals to help control false marking.

95.     Troll Busters, LLC, on its own behalf and on behalf of the United States, seeks an award of monetary damages of not more than $500 for each of Defendants' violations of 35U.S.C. §292(a), one-half of which shall be paid to the United States pursuant to 35 U.S.C. §292(b).

96.     Defendants did not have, and could not have had, a reasonable belief that their products were properly marked, particularly in light of Defendants **Roche** and **Life** requiring its licensees to mark its products or requiring its licensees to advise its customers of the need for each customer to obtain a license to an expired patent from either or both of **Roche** and **Life**.

97.     Defendants are large, sophisticated companies, particularly Defendants **Roche**, **Qiagen**, **Thermo, EMD, Cepheid** and **Life**.

98.     Defendants have, or regularly retain, legal counsel who are experienced in patent matters.

99.     Defendants have experience applying for patents, obtaining patents, licensing patents and/or litigating in patent-related lawsuits. Upon information and belief, Defendant Life is currently a plaintiff or a defendant in at least six patent-related lawsuits with the opposing parties being Illumina, Genmark, Operon-MWG, and Biosearch.

100.   Defendants know that a patent expires and that an expired patent cannot protect any product. Moreover, other licensee companies to the 22 expired patents listed here did comply with the marking requirements and removed expired patents from their websites, such as the large, sophisticated company, Sigma.

101.   Defendants are licensors and/or licensees of the Expired Patents.   As licensors, defendants collect royalty revenue based on patents.  When the patents expire, defendants should stop receiving royalty revnue for the expired patents.  Similarly, as licensees, defendants pay royalties to the licensors and the royalty payments should stop when the patents expire.  As both licensees and licensors, defendants were acutely aware of when the patents expired as that would stop the payment of royalties.

102.   On information and belief, licensor defendants would notify licensees—sometimes in writing—when patents would expire so that licensees could adjust their royalty payments accordingly, and the licensor defendants could not be accused of improperly seeking royalties on expired patents.  On information and belief, despite such notices and such adjustments of royalty payments, defendants continued to mark their products with the expired patents.  On information and belief, licensors even required licensees to continue marking products with the expired patents despite full knowledge of the patents' expiration.  Thus, the licensor defendants were attempting to straddle the line on use of their patents by forgoing royalty payments (to avoid accusations of patent misuse) while continuing to publicly claim (via their websites and other advertising) that the products were subject to patent protection (to stifle competition in the marketplace).  Further, in response to demands of the licesnors, licensees continued to mark products with expired patents despite knowledge that such patents had expired.  Even though licensees had ceased making royalty payments on such patents, they continued to mark the expired patents in an attempt to prevent or diminish competition.

103.    Further on information and belief some defendants have modified the marking on their websites after expiration of the patents at issue.   Despite the expiration of the patents and the modification of the marking language, defendants continued to mark the expired patents on their websites in connection with the products as described above.   Such conduct further demonostrates defendants' intent to deceive the public.

104.    Defendants' intent is further demonstrated by their post-suit conduct.   Despite being sued in the present action and being unequivocally informed of the expiration of the patents at issue, defendants have continued to mark the expired patents as described above.   This is additional evidence of defendants' intent to deceive the public.

105.    Articles and discussions in industry publications described the expiration of at least the '202 Patent, '195 Patent and '188 Patent in 2005 and 2006.   Such publications made it common knowledge in the industry that these patents had expired.   On information and belief, defendants, as businesses in the industry, were aware of and reviewed some or all of these articles by which they became aware of these patents' expiration.   Despite this knowledge, defendants continued to mark products with these patents, further demonstrating their intent to deceive.

106.    Each false marking on the products identified in this Complaint is likely to, or at least has the potential to, discourage or deter persons and companies from commercializing competing products. Given the cloud of uncertainty created over the ability of small and start up companies to obtain the needed capital to grow and be able to obtain market access to this lucrative PCR and molecular diagnostics market, the false markings by the dominating companies, particularly Roche, Life and Cepheid, has chilled investors to providing needed capital due to the intellectual property uncertainty and potential patent infringement each new company will have to address.

107.    Defendants' false marking of the products has wrongfully quelled competition and avoided any price reduction in the relevant PCR and molecular diagnostics market segments with

respect to such products thereby causing harm to Plaintiff, the United States, and the public due to reduced competition and higher health care costs.

108.   Defendants have wrongfully and illegally advertised patent monopolies which they do not possess and, as a result, have benefited by maintaining a substantial market share with respect to the products referenced in this Complaint.

109.   Any product or method once covered by the claims of the Expired Patents are no longer protected by the patent laws of the United States. When the patent expired, its formerly protected property entered the public domain. When a patent expires, all monopoly rights in the patent terminate irrevocably and, therefore, a product marked with an expired patent is not "patented" by such expired patent.

110.   Defendants knew that the '015 Patent (**Exhibit A**) expired on 06 August 2010, that the '972 Patent (**Exhibit B**) expired on 06 August 2010, that the '352 Patent (**Exhibit C**) expired on 07 January 2009, that the '996 Patent (**Exhibit D**) expired on 01 June 2009, that the '313 Patent (**Exhibit E**) expired on 01 June 2009, that the '202 Patent (**Exhibit F**) expired on 28 March 2005, that the '195 Patent (**Exhibit G**) expired on 28 July 2004, that the '188 Patent (**Exhibit H**) expired on 28 March 2005, that the '050 Patent (**Exhibit I**) expired on 24 March 2009, that the '543 Patent (**Exhibit J**) expired on 30 March 2010, that the '830 Patent (**Exhibit K**) expired on 13 July 2007, that the '513 Patent (**Exhibit L**) expired on 10 September 2008, that the '418 Patent (**Exhibit M**) expired on 22 December 2009, that the '727 Patent (**Exhibit N**) expired on 15 June 2010, that the '774 Patent (**Exhibit O**) expired on 15 June 2010, that the '584 Patent (**Exhibit P**) expired on 19 November 2008, that the '818 Patent (**Exhibit Q**) expired on 26 December 2006, that the '496 Patent (**Exhibit R**) expired on 28 August 2007, that the '320 Patent (**Exhibit S**) expired on 30 March 2004, that the '216 Patent (**Exhibit T**) expired on 24 December 2008, that the '936 Patent (**Exhibit U**) expired on 8 February 2009, and that the '062 Patent (**Exhibit V**) expired on 1 December 2009.

111.     Defendants have wrongfully and illegally advertised and listed patent monopolies in their online catalogs that they do not possess and, as a result, have benefited by maintaining a substantial market share with respect to the products referenced in this Complaint. Moreover, upon information and belief Defendants **Roche** and **Life** have required the licensees of the patent they own or control to display patent markings of Expired Patents.

112.     Despite the fact that the claims of the Expired Patents are no longer afforded patent protection, Defendants marked, affixed to, and/or used in advertising and on-line sales catalogs the listed Expired Patents following each of its expiration dates.

113.     Because all monopoly rights in the Expired Patents have terminated, Defendants cannot have any reasonable belief that the products are patented or covered by these patents are protected or are required to be marked as protected.

114.     Plaintiff contends that Defendants intended to deceive the public by marking, affixing to, and/or using in advertising and online catalogs or required their licensees to mark their the products with the one or more of the Expired Patents.  This false patent marking carries the implication that the Defendants' products are somehow special or better than their competitors', and is intended to deceive the general public and make the general public believe that the Defendants' products are protected by U.S. patent laws in ways they are not and are somehow unique or superior to competing products. Moreover, Defendants' false marking misleads the general public to believe that Defendants are able to offer licensed products for life science research or clinical diagnostics to their users or licensees, while their competitors may not be able to do so. Despite the easily modifiable digital format of the Defendants' websites, Defendants have nevertheless knowingly and repeatedly used and continue to use the Expired Patents in marking, offering for sale and/or advertising their products, with intent to deceive the public.

115.   Therefore, Defendants intentionally deceived the public by labeling and/or using in advertising the products with one or more of the aforementioned Expired Patents.

## COUNT I
### (False Marking with Expired Patents against Roche Defendants)

116.   Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

117.   Defendant Roche falsely marked, affixed to, used on its online catalog, and/or used in advertising certain products with one or more of the Expired Patents, and/or required its licensees to so falsely mark, affix to, use in the licensee on-line catalog with one or more of the Expired Patents, and/or required licensees to advertise the requirement that the ultimate customer obtain a license from Roche according to language in its license agreements with one or more of the Expired Patents at least as shown in the chart in paragraph 71 above.

118.   Defendant Roche knew or reasonably should have known that marking, affixing to, and/or using in advertising the products with the said patent(s) was in violation of 35 U.S.C. § 292, which only authorizes marking on articles that practice the claims of valid patents. As licensor, Defendant Roche knew of the expirations of the '015 and '972 Patents. Further, Defendant Roche did not change its websites to remove the expired patents after being served with the Original Complaint in this matter.

119.   Defendant Roche intended to deceive the public by marking the products or forcing its licensees to mark its licensed products with one or a more of the Expired Patents and/or using said Expired Patents in advertising materials available to the general public.

## COUNT II
### (False Marking with Expired Patents against Eurogentec)

120.   Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

121.   Defendant Eurogentec falsely marked, affixed to, used on its online catalog, and/or used in advertising certain products with one or more of the Expired Patents, and/or required its

licensees to so falsely mark, affix to, use in the licensee on-line catalog with one or more of the Expired Patents, and/or required licensees to advertise the requirement that the ultimate customer obtain a license from Eurogentec according to language in its license agreements with one or more of the Expired Patents at least as shown in the chart in paragraph 73 above.

122.   Defendant Eurogentec knew or reasonably should have known that marking, affixing to, and/or using in advertising the products with the said patent(s) was in violation of 35 U.S.C. § 292, which only authorizes marking on articles that practice the claims of valid patents.  Defendant Eurogentec knew of the expirations of the '015 and '972 Patents.  Further, Defendant Eurogentec did not change its websites to remove the expired patents after being served with the Original Complaint in this matter.

123.   Defendant Eurogentec intended to deceive the public by marking the products or forcing its licensees to mark its licensed products with one or a more of the Expired Patents and/or using said Expired Patents in advertising materials available to the general public.

### COUNT III
### (False Marking with Expired Patents against Clontech)

124.   Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

125.   Defendant Clontech falsely marked, affixed to, used on its online catalog, and/or used in advertising certain products with one or more of the Expired Patents, and/or required its licensees to so falsely mark, affix to, use in the licensee on-line catalog with one or more of the Expired Patents, and/or required licensees to advertise the requirement that the ultimate customer obtain a license from Clontech according to language in its license agreements with one or more of the Expired Patents at least as shown in the chart in paragraph 75 above.

126.   Defendant Clontech knew or reasonably should have known that marking, affixing to, and/or using in advertising the products with the said patent(s) was in violation of 35 U.S.C. § 292, which only authorizes marking on articles that practice the claims of valid patents. Defendant

Clontech knew of the expirations of the '015 and '972 Patents.  Further, Defendant Clontech did not change its websites to remove the expired patents after being served with the Original Complaint in this matter.

127.   Defendant Clontech intended to deceive the public by marking the products or forcing its licensees to mark its licensed products with one or a more of the Expired Patents and/or using said Expired Patents in advertising materials available to the general public.

**COUNT IV**
**(False Marking with Expired Patents against IDT)**

128.   Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

129.   Defendant IDT falsely marked, affixed to, used on its online catalog, and/or used in advertising certain products with one or more of the Expired Patents, and/or required its licensees to so falsely mark, affix to, use in the licensee on-line catalog with one or more of the Expired Patents, and/or required licensees to advertise the requirement that the ultimate customer obtain a license from IDT according to language in its license agreements with one or more of the Expired Patents at least as shown in the chart in paragraph 77 above.

130.   Defendant IDT knew or reasonably should have known that marking, affixing to, and/or using in advertising the products with the said patent(s) was in violation of 35 U.S.C. § 292, which only authorizes marking on articles that practice the claims of valid patents. Defendant IDT knew of the expirations of the '015 and '972 Patents.  Further, Defendant IDT did not change its websites to remove the expired patents after being served with the Original Complaint in this matter.

131.   Defendant IDT intended to deceive the public by marking the products or forcing its licensees to mark its licensed products with one or a more of the Expired Patents and/or using said Expired Patents in advertising materials available to the general public.

FIRST AMENDED COMPLAINT
C.A. No. 3:11-cv-00056-IEG -WVG

1
2

**COUNT V**
**(False Marking with Expired Patents against Life)**

3

132.    Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

4

133.    Defendant Life falsely marked, affixed to, used on its online catalog, and/or used in

5

advertising certain products with one or more of the Expired Patents, and/or required its licensees to

6

so falsely mark, affix to, use in the licensee on-line catalog with one or more of the Expired Patents,

7

and/or required licensees to advertise the requirement that the ultimate customer obtain a license from

8
9

Life according to language in its license agreements with one or more of the Expired Patents at least

10

as shown in the charts in paragraphs 81-82 above.

11

134.    Defendant Life knew or reasonably should have known that marking, affixing to,

12

and/or using in advertising the products with the said patent(s) was in violation of 35 U.S.C. § 292,

13

which only authorizes marking on articles that practice the claims of valid patents.    Further,

14

Defendant Life did not require its licensees to so remove expired language in order to comply with

15

the license agreements. Defendant Life knew of the expirations of the '015 and '972 Patents. Further,

16
17

Defendant Life did not change its websites to remove the expired patents after being served with the

18

Original Complaint in this matter.

19

135.    Defendant Life intended to deceive the public by marking the products or forcing its

20

licensees to mark its licensed products with one or a more of the Expired Patents and/or using said

21

Expired Patents in advertising materials available to the general public.

22
23

**COUNT VI**
**(False Marking with Expired Patents against Qiagen)**

24

136.    Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

25

137.    Defendant Qiagen falsely marked, affixed to, used on its online catalog, and/or used in

26

advertising certain products with one or more of the Expired Patents, and/or required its licensees to

27
28

so falsely mark, affix to, use in the licensee on-line catalog with one or more of the Expired Patents,

and/or required licensees to advertise the requirement that the ultimate customer obtain a license from Qiagen according to language in its license agreements with one or more of the Expired Patents at least as shown in the chart in paragraph 79 above.

138.    Defendant Qiagen knew or reasonably should have known that marking, affixing to, and/or using in advertising the products with the said patent(s) was in violation of 35 U.S.C. § 292, which only authorizes marking on articles that practice the claims of valid patents. Defendant Qiagen knew of the expirations of the '015 and '972 Patents.  Further, Defendant Qiagen did not change its websites to remove the expired patents after being served with the Original Complaint in this matter.

139.    Defendant Qiagen intended to deceive the public by marking the products or forcing its licensees to mark its licensed products with one or a more of the Expired Patents and/or using said Expired Patents in advertising materials available to the general public.

### COUNT VII
### (False Marking with Expired Patents against Thermo)

140.    Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

141.    Defendant Thermo falsely marked, affixed to, used on its online catalog, and/or used in advertising certain products with one or more of the Expired Patents, and/or required its licensees to so falsely mark, affix to, use in the licensee on-line catalog with one or more of the Expired Patents, and/or required licensees to advertise the requirement that the ultimate customer obtain a license from Thermo according to language in its license agreements with one or more of the Expired Patents at least as shown in the chart in paragraph 84 above.

142.    Defendant Thermo knew or reasonably should have known that marking, affixing to, and/or using in advertising the products with the said patent(s) was in violation of 35 U.S.C. § 292, which only authorizes marking on articles that practice the claims of valid patents. Defendant Thermo knew of the expirations of the '015 and '972 Patents.  Further, Defendant Thermo did not change its websites to remove the expired patents after being served with the Original Complaint in this matter.

143.    Defendant Thermo intended to deceive the public by marking the products or forcing its licensees to mark its licensed products with one or a more of the Expired Patents and/or using said Expired Patents in advertising materials available to the general public.

## COUNT VIII
### (False Marking with Expired Patents against Quanta)

144.    Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

145.    Defendant Quanta falsely marked, affixed to, used on its online catalog, and/or used in advertising certain products with one or more of the Expired Patents, and/or required its licensees to so falsely mark, affix to, use in the licensee on-line catalog with one or more of the Expired Patents, and/or required licensees to advertise the requirement that the ultimate customer obtain a license from Quanta according to language in its license agreements with one or more of the Expired Patents at least as shown in the chart in paragraph 86 above.

146.    Defendant Quanta knew or reasonably should have known that marking, affixing to, and/or using in advertising the products with the said patent(s) was in violation of 35 U.S.C. § 292, which only authorizes marking on articles that practice the claims of valid patents. Defendant Quanta knew of the expirations of the '015 and '972 Patents.  Further, Defendant Quanta did not change its websites to remove the expired patents after being served with the Original Complaint in this matter.

147.    Defendant Quanta intended to deceive the public by marking the products or forcing its licensees to mark its licensed products with one or a more of the Expired Patents and/or using said Expired Patents in advertising materials available to the general public.

## COUNT IX
### (False Marking with Expired Patents against Gene Link)

148.    Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

149.    Defendant Gene Link falsely marked, affixed to, used on its online catalog, and/or used in advertising certain products with one or more of the Expired Patents, and/or required its

licensees to so falsely mark, affix to, use in the licensee on-line catalog with one or more of the Expired Patents, and/or required licensees to advertise the requirement that the ultimate customer obtain a license from Gene Link according to language in its license agreements with one or more of the Expired Patents at least as shown in the chart in paragraph 88 above.

150.    Defendant Gene Link knew or reasonably should have known that marking, affixing to, and/or using in advertising the products with the said patent(s) was in violation of 35 U.S.C. § 292, which only authorizes marking on articles that practice the claims of valid patents.

151.    Defendant Gene Link intended to deceive the public by marking the products or forcing its licensees to mark its licensed products with one or a more of the Expired Patents and/or using said Expired Patents in advertising materials available to the general public.

**COUNT X**
**(False Marking with Expired Patents against GenScript)**

152.    Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

153.    Defendant GenScript falsely marked, affixed to, used on its online catalog, and/or used in advertising certain products with one or more of the Expired Patents, and/or required its licensees to so falsely mark, affix to, use in the licensee on-line catalog with one or more of the Expired Patents, and/or required licensees to advertise the requirement that the ultimate customer obtain a license from GenScript according to language in its license agreements with one or more of the Expired Patents at least as shown in the chart in paragraph 89 above.

154.    Defendant GenScript knew or reasonably should have known that marking, affixing to, and/or using in advertising the products with the said patent(s) was in violation of 35 U.S.C. § 292, which only authorizes marking on articles that practice the claims of valid patents.

155.    Defendant GenScript intended to deceive the public by marking the products or forcing its licensees to mark its licensed products with one or a more of the Expired Patents and/or using said Expired Patents in advertising materials available to the general public.

1

2

### COUNT XI
### (False Marking with Expired Patents against EMD)

3      156.    Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

4      157.    Defendant EMD falsely marked, affixed to, used on its online catalog, and/or used in

5  advertising certain products with one or more of the Expired Patents, and/or required its licensees to

6  so falsely mark, affix to, use in the licensee on-line catalog with one or more of the Expired Patents,

7  and/or required licensees to advertise the requirement that the ultimate customer obtain a license from

8  EMD according to language in its license agreements with one or more of the Expired Patents at least

9  as shown in the chart in paragraph 90 above.

10

11      158.    Defendant EMD knew or reasonably should have known that marking, affixing to,

12  and/or using in advertising the products with the said patent(s) was in violation of 35 U.S.C. § 292,

13  which only authorizes marking on articles that practice the claims of valid patents. Defendant EMD

14  knew of the expirations of the '015 and '972 Patents.  Further, Defendant EMD did not change its

15  websites to remove the expired patents after being served with the Original Complaint in this matter.

16

17      159.    Defendant EMD intended to deceive the public by marking the products or forcing its

18  licensees to mark its licensed products with one or a more of the Expired Patents and/or using said

19  Expired Patents in advertising materials available to the general public.

20

### COUNT XII
### (False Marking with Expired Patents against TriLink)

21

22      160.    Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

23      161.    Defendant TriLink falsely marked, affixed to, used on its online catalog, and/or used

24  in advertising certain products with one or more of the Expired Patents, and/or required its licensees

25  to so falsely mark, affix to, use in the licensee on-line catalog with one or more of the Expired

26  Patents, and/or required licensees to advertise the requirement that the ultimate customer obtain a

27

28

---

FIRST AMENDED COMPLAINT
C.A. No. 3:11-cv-00056-IEG -WVG

license from TriLink according to language in its license agreements with one or more of the Expired Patents at least as shown in the chart in paragraph 92 above.

162.   Defendant TriLink knew or reasonably should have known that marking, affixing to, and/or using in advertising the products with the said patent(s) was in violation of 35 U.S.C. § 292, which only authorizes marking on articles that practice the claims of valid patents. Defendant TriLink knew of the expirations of the '015 and '972 Patents.

163.   Defendant TriLink intended to deceive the public by marking the products or forcing its licensees to mark its licensed products with one or a more of the Expired Patents and/or using said Expired Patents in advertising materials available to the general public.

## COUNT XIII
### (False Marking with Expired Patents against Cepheid)

164.   Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

165.   Defendant Cepheid falsely marked, affixed to, used on its online catalog, and/or used in advertising certain products with one or more of the Expired Patents, and/or required its licensees to so falsely mark, affix to, use in the licensee on-line catalog with one or more of the Expired Patents, and/or required licensees to advertise the requirement that the ultimate customer obtain a license from Cepheid according to language in its license agreements with one or more of the Expired Patents at least as shown in the chart in paragraph 93 above.

166.   Defendant Cepheid knew or reasonably should have known that marking, affixing to, and/or using in advertising the products with the said patent(s) was in violation of 35 U.S.C. § 292, which only authorizes marking on articles that practice the claims of valid patents. Defendant Cepheid knew of the expirations of the '015, '972, '202, '195 and '188 Patents.

167.   Defendant Cepheid intended to deceive the public by marking the products or forcing its licensees to mark its licensed products with one or a more of the Expired Patents and/or using said Expired Patents in advertising materials available to the general public.

## DAMAGES

168.    Troll Busters, LLC, on its own behalf and on behalf of the United States, seeks an award of monetary damages of not more than $500 for each of Defendants' violations of 35 U.S.C. §292(a), one-half of which shall be paid to the United States pursuant to 35 U.S.C. § 292(b).

## JURY DEMAND

169.    Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

170.    Plaintiff requests that the Court, pursuant to 35 U.S.C. § 292:

    a.    Enter judgment against Defendants and in favor of Plaintiff for the violations alleged in this Complaint;

    b.    Order Defendants to pay a civil monetary fine of $500 per false marking "offense," one-half of which shall be paid to the United States and one-half of which shall be paid to Plaintiff;

    c.    Enter a judgment and order requiring Defendants to pay Plaintiff's prejudgment and post-judgment interest on the damages awarded;

    d.    Order Defendants to pay Plaintiff's costs and attorney fees; and

    e.    Grant Plaintiff such other and further relief as it may deem just and equitable.

DATED: April 5, 2011

                Respectfully submitted,


                By: */s/ Karl Rupp*
                  KARL RUPP
                  California State Bar No. 168930
                  KENDALL LAW GROUP, LLP
                  3232 McKinney Avenue, Ste. 700
                  Dallas, Texas 75204
                  214.744.3000 (Telephone)
                  214.744.3015 (Telecopier)

                  ATTORNEY FOR PLAINTIFF TROLL BUSTERS® LLC

1  OF COUNSEL:

2  Bradley E. Beckworth
3  Texas State Bar No. 24001710
   Derek Gilliland
4  Texas State Bar No. 24007239
   **Nix Patterson & Roach LLP**
5  205 Linda Drive
   Daingerfield, Texas 75638
6  (903) 645-7333 (Telephone)
7  (903) 645-5389 (Telecopier)

8  Ralph D. McBride
   Texas State Bar No. 13332400
9  Stephen B. Crain
   Texas State Bar No. 04994580
10 Alan D. Albright
   Texas State Bar No. 00973650
11 Bradley J. Benoit
12 Texas State Bar No. 24012275
   Heath A. Novosad
13 Texas State Bar No. 24037199
   **BRACEWELL & GIULIANI LLP**
14 711 Louisiana, Suite 2300
   Houston, Texas 77002
15 Telephone: 713-223-2300
   Facsimile: 713-221-1212
16
17 **ATTORNEYS FOR PLAINTIFF TROLL BUSTERS® LLC**

18             **CERTIFICATE OF SERVICE**

19 I hereby certify that I electronically filed the above *First Amended Complaint* in the United States
20 District Court for the Southern District of California, and that service will be automatically
   accomplished through the Notice of Electronic Filing.

21
22             */s/ Karl Rupp*_____
                 Karl Rupp
23
24
25
26
27
28