1   Scott R. Miller (SBN 112656)
    Email:  smiller@cblh.com
2   Manuel Nelson (SBN 229590)
    Email:  mnelson@cblh.com
3   CONNOLLY BOVE LODGE & HUTZ LLP
    333 South Grand Avenue, Suite 2300
4   Los Angeles, CA 90071
    Telephone:  (213) 787-2500
5   Facsimile:  (213) 687-0498

6   Attorneys for
    EMD CHEMICALS INC.
7

8                   UNITED STATES DISTRICT COURT

9                 SOUTHERN DISTRICT OF CALIFORNIA

10

11  TROLL BUSTERS© LLC,                    C.A. No. 3:11-cv-00056-IEG -WVG

12            Plaintiff,                   **MEMORANDUM OF POINTS AND**
                                           **AUTHORITIES IN SUPPORT OF EMD**
13       v.                                **CHEMICALS INC.'S JOINDER AND**
                                           **MOTION TO DISMISS**
14  ROCHE DIAGNOSTICS GMBH, et al.,
                                           Date:   June 13, 2011
15            Defendants.                  Time:   10:30 a.m.
                                           Ctrm:  1, Fourth Floor
16                                         Judge Hon. Irma E. Gonzalez

17                                         Complaint Filed:  January 10, 2011

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. iii

I.  INTRODUCTION AND SUMMARY OF ARGUMENT ............................................... 1

II.  STATEMENT OF FACTS ............................................................................................... 2

III.  ARGUMENT ..................................................................................................................... 3

    A.  Troll Busters' Complaint Is Insufficient Under Fed. R. Civ. P. 9(b) .................... 3

    B.  The Court Lacks Subject Matter Jurisdiction Under Rule 12(b)(1) as the False
       Marking Statute is Unconstitutional Because it Violates the Take Care Clause
       of Article II ................................................................................................................ 4

    C.  The Court Should Dismiss Troll Busters' Complaint Based on an Earlier-
       Filed and Already Settled Case ................................................................................ 4

          1.  The Filing of a First *Qui Tam* Action Precludes the Filing of
              Subsequent *Qui Tam* Actions Based on the Same Conduct ...................... 4

          2.  Troll Busters' Claims Against EMD Are Duplicative Of Claims
              Already Raised In The *Tex Pat Qui Tam* Action, And Should Be
              Dismissed Under The "First-to-File Rule" .................................................. 9

              a.  The *Tex Pat Qui Tam* Action (E.D. Texas) Was Filed Before
                  Troll Busters *Qui Tam* Complaint Was Filed .............................. 9

              b.  *The Tex Pat Qui Tam* Action Was Filed on Behalf of the Same
                  Entity—the United States ............................................................ 10

          3.  Troll Busters' Claims Against EMD Are Further Barred Due To
              Release Of The Claims ................................................................................ 11

               a.  The Settlement Agreement Between EMD and the Original
                  *Qui Tam* Relator (on Behalf of the United States) Released
                  EMD's Liability ............................................................................ 13

          4.  Troll Busters' Claims Against EMD BioScience (or EMD Chemicals)
              Should Also Be Dismissed Under the Doctrine of Res Judicata .............. 13

              a.  The Issues and Real Parties in Interest in the *Tex Pat* Action
                  and the Instant Litigation are Identical ........................................ 14

               b.  There Was a Final Judgment on the Merits in the *Tex Pat*
                  Action ........................................................................................... 14

    D.  Troll Busters' Complaint Should be Dismissed for Lack of Personal
       Jurisdiction and Failure to State a Claim Because EMD BioScience, the
       Entity Against Whom the Allegations Are Made, Is Not an Entity .................... 15

1.      Troll Busters' Complaint Fails to Allege Any Accusations or Facts
Against EMD Chemicals ........................................................................15

IV.      CONCLUSION..............................................................................................16

# TABLE OF AUTHORITIES

## Cases

*Am. Bus Ass'n v. Slater,*
    231 F.3d 1 (D.C. Cir. 2000)..................................................................... 8

*Anderson v. Jensen Racing, Inc.,*
    324 Or. 570 (1997) ................................................................................. 8

*Ashcraft v. Iqbal,*
    129 S. Ct. 1937 (2009).......................................................................... 16

*Beadleston v. Sprague,*
    6 Johns. 101 (N.Y. 1810)........................................................................ 6

*Broadway v. adidas America, Inc.,*
    2008 WL 2705566, (E.D. Ark. July 10, 2008) ...................................... 17

*Bronson v. Green Tree Servicing, LLC,*
    No. 2:03-cv-1611 JAM RRB, 2009 WL 546159 (E.D. Cal. March 4, 2009 ...... 14

*Davis & Cox v. Summa Corp.,*
    751 F.2d 1507 (9th Cir. 1985) ............................................................... 14

*Dept. of Revenue of Montana v. Kurth Ranch,*
    511 U.S. 767 (1994)................................................................................ 9

*Federated Dep't Stores, Inc. v. Moitie,*
    452 U.S. 394 (1981).............................................................................. 14

*Forest Group, Inc. v. Bon Tool Co.,*
    590 F. 3d 1295 (Fed. Cir. 2009) ............................................................ 12

*Green v. Ancora-Citronelle Corp.,*
    577 F.2d 1380 (9th Cir. 1978) ............................................................... 15

*Hussein v. Miller,*
    232 F. Supp. 2d 653 (E.D. Va. 2002) .................................................... 17

*In re BP Lubricants USA Inc.,*
    No. 960, 2011 WL 873147 (Fed. Cir. Mar. 15, 2011)............................. 3

*In re Dominelli,*
    820 F.2d 313 (9th Cir. 1987) ................................................................. 15

*In re Natural Gas Royalties Qui Tam Litig. (CO2 Appeals),*
    566 F.3d 956 (10th Cir. 2009) ................................................................ 5

*In re Stone,*
    107 F.3d 17 (Table) (9th Cir. 1997) ...................................................... 15

*Ivy Dry, Inc. v. Zanfel Labs., Inc.,*
    No. 08-4942 (WHW), 2009 WL 1851028 (D.N.J. June 24, 2009) ......... 11

*Jacobs v. Venali, Inc.,*
   596 F. Supp. 2d 906 (D. Md. 2009) ....................................................................... 14

*Moss v. U.S. Secret Serv.,*
   572 F.3d 962 (9th Cir. 2009) .............................................................................. 16

*Navarro v. Block,*
   250 F.3d 729 (9th Cir. 2001) .............................................................................. 16

*Pequignot v. Solo Cup Co.,*
   608 F.3d 1356 (Fed. Cir. 2010) ............................................................................ 8

*Pub. Interest Bounty Hunters v. Bd. of Governors of Fed. Reserve Sys.,*
   548 F. Supp. 157 (N.D. Ga. 1982) ........................................................................ 7

*Rein v. Providian Fin. Corp.,*
   270 F.3d 895 (9th Cir. 2001) .............................................................................. 15

*Robertson v. Dean Witter Reynolds, Inc.,*
   749 F.2d 530 (9th Cir. 1984) .............................................................................. 16

*Ross v. Int'l Bhd. of Elec. Workers,*
   634 F.2d 453 (9th Cir. 1980) .............................................................................. 15

*S.E.C. v. KPMG LLP,*
   412 F. Supp. 2d 349 (S.D.N.Y. 2006) .................................................................... 8

*San Francisco Tech., Inc. v. Glad Prods. Co.,*
   No. 10-966, 2010 WL 2943537 (N.D. Cal. July 26, 2010) ..................................... 5, 7

*Schwarzenegger v. Fred Martin Motor Co.,*
   374 F.3d 797 (9th Cir. 2004) .............................................................................. 17

*Sexton v. Chino Valley Indep. Fire Dist.,*
   7 Fed. Appx. 660 (Fed. Cir. 2001) ...................................................................... 15

*Shizzle Pop, LLC v. Wham-O, Inc.,*
   No. CV 10-3491 PA (FFMx), 2010 WL 3063066 (C.D. Cal. Aug. 2, 2010) ................ 12

*Simonian v. Irwin Industrial Tool Co.,*
   No. 10-1260, WL 147717 (N.D. Ill. Jan. 18, 2011) .......................................... 11, 13

*Simonian v. Quigley Corp.,*
   No. 10 C 1259, 2010 WL 2837180 (N.D. Ill. July 19, 2010) ......................... 4, 5, 7, 12

*SKF USA, Inc. v. U.S. Customs and Border Prot.,*
   556 F.3d 1337 (Fed. Cir. 2009) .......................................................................... 12

*St. Martin Evangelical Lutheran Church v. South Dakota,*
   451 U.S. 772 (1981) ........................................................................................... 9

*Stauffer v. Brooks Bros.,*
   619 F.3d 1321 (Fed. Cir. 2010) .......................................................................... 13

MEMORANDUM OF POINTS AND AUTHORITIES  IN SUPPORT OF EMD CHEMICALS INC.'S MOTION TO DISMISS
Case No. 3:11-cv-00056 IEG-WVG

iv

*Stewart v. U.S. Bancorp,*
  297 F.3d 953 (9th Cir. 2002) ................................................................................... 14

*Straker v. Metropolitan Transit Auth.,*
  33 F. Supp. 2d 91 (E.D.N.Y. 2004) .......................................................................... 17

*U.S. ex rel. Benjamin v. Hendrick,*
  52 F. Supp. 60 (S.D.N.Y. 1943) ................................................................................. 6

*U.S. ex rel. Hall v. Tribal Dev. Corp.,*
  49 F. 3d 1208 (7th Cir. 1995) .................................................................................. 12

*U.S. v. B.F. Goodrich Co.,*
  41 F. Supp. 574 (S.D.N.Y. 1941) ............................................................................ 6, 7

*U.S. v. Griswold,*
  26 F. Cas. 42 (D. Or. 1877) ....................................................................................... 6

*U.S. v. Ritchie,*
  342 F.3d 903 (9th Cir. 2003) ................................................................................... 16

*United States ex rel. Lujan v. Hughes Aircraft Co.,*
  243 F.3d 1181 (9th Cir. 2001) ................................................................................... 5

*United States v. Anaconda Wire & Cable Co.,*
  52 F. Supp. 824 (E.D. Pa. 1943) ............................................................................ 6, 7

*Willis Corroon Corp. of Utah, Inc. v. United Capitol Ins. Co.,*
  No. 97-2208 MHP, 1998 WL 30069 (N.D. Cal. Jan. 5, 1998) ................................ 13

*Wisconsin v. Amgen, Inc.,*
  516 F.3d 530 (7th Cir. 2008) ..................................................................................... 5

**Statutes**

31 U.S.C. § 232 ............................................................................................................. 6

31 U.S.C. § 234 ............................................................................................................. 6

31 U.S.C. § 3730(b)(5) ................................................................................................. 5

35 U.S.C. § 292 ..................................................................................................... passim

Other **Authorities**

1952 U.S.C.C.A.N. 2394, 2403 .................................................................................... 8

H.R. Comm. Report (May 12, 1952) at 31 ................................................................... 7

S. Rep. No. 1979, 82 Cong., 2d. Sess. (1952) ............................................................. 8

**Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................................................. 3

Fed. R. Civ. P. 12(b)(2) ................................................................................................. 2

Fed. R. Civ. P. 9(b) ..................................................................................................... 1, 3

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

The Amended Complaint filed by relator Troll Busters LLC ("Troll Busters") lists in its caption more than a dozen companies, including EMD Chemicals, Inc. ("EMD Chemicals"). The body of the Amended Complaint, which contains no allegations against EMD Chemicals (but instead references a non-existing entity, EMD BioScience), purports to be a complaint for false patent marking under 35 U.S.C. § 292.  As set forth below, Troll Busters' Amended Complaint lacks a number of required factual allegations, is duplicative of an earlier-filed action against EMD Chemicals that has since been settled, and does not state a claim against EMD Chemicals, and the Court lacks personal jurisdiction over the non-existent entity EMD BioScience.  Further, the false marking statute is unconstitutional.  As a result, the complaint should be dismissed. Specifically:

*Troll Busters has failed to sufficiently plead its false marking allegations.*  As the Federal Circuit recently determined, false marking claims under 35 U.S.C. § 292 sound in fraud, as they include a requirement to prove "intent to deceive the public," and therefore are subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b).  Troll Busters' allegations fall short of alleging the factual basis required by Rule 9(b) as applied by the Federal Circuit, and thus the complaint against EMD should be dismissed.  **For this case-dispositive issue, EMD Chemicals joins in defendant Roche Molecular Systems' ("Roche") Motion to Dismiss, and incorporates herein the arguments set forth in Roche's opening brief (dkt. 91 at 1-14), as the allegations made against "EMD Bioscience" are substantially identical to those made against Roche.**

*The false marking statute is unconstitutional.*  The false marking statute, 35 U.S.C. § 292, is unconstitutional.  It violates the Take Care Clause of Article II, as the United States does not have sufficient control in litigations brought pursuant to it.  As a result, Troll Busters' complaint should be dismissed.  Further, this issue is presently before the Federal Circuit in *FLFMC v. Wham-O*.  Therefore, in the event the Court does not grant dismissal, it should stay the proceedings pending the Federal Circuit's decision in that case.  **For this case-dispositive issue, EMD Chemicals joins in defendant Roche's Motion to Declare the False Marking Statute**

1  **Unconstitutional, and incorporates herein the arguments set forth in Roche's opening brief**

2  **(dkt. 91 at 14-22).**

3  *The allegations (if any) made against EMD Chemicals and EMD Bioscience were already*

4  *settled in an earlier filed case*.  Even if the complaint contained sufficient allegations against

5  EMD Chemicals, it would be a duplicative, second-filed action against EMD Chemicals for false

6  patent marking under 35 U.S.C. § 292.  Because this is a second-filed action brought by a plaintiff

7  as a *qui tam* "relator" on behalf of the United States for the same subject matter as an earlier *qui*

8  *tam* suit filed on behalf of the United States, the false marking claims must be dismissed.

9  Dismissal is further compelled because the first-filed suit has been finally resolved and dismissed

10  with prejudice, and the resolution has been approved by the real party in interest, the United

11  States, thereby precluding a second suit covering the alleged false marking.  **As this issue is**

12  **unique to EMD Chemicals, the reasoning in support of this argument is set forth below.**

13  *Troll Busters fails to state any claim against EMD Chemicals*.  While EMD Chemicals is

14  listed in the caption of the Amended Complaint, it is not named anywhere in the body of the

15  complaint.  The only name provided, EMD BioScience, belongs to an entity that no longer exists.

16  As a result, Troll Busters fails to state a claim against EMD and its complaint should be dismissed

17  under Fed. R. Civ. P. 12(b)(6), and EMD BioScience should be dismissed under Fed. R. Civ. P.

18  12(b)(2) because it is a non-existing entity.  **As this issue is unique to EMD Chemicals, the**

19  **reasoning supporting its argument is set forth below.**

20  **II.  STATEMENT OF FACTS**

21  On January 9, 2011, plaintiff Tex Pat LLC ("Tex Pat") filed suit against EMD Chemicals,

22  Merck GmbH, and others for alleged violation of the false marking statute, 35 U.S.C. § 292.  *See*

23  Declaration of Geoffrey A. Zelley ("Zelley Decl.") at Ex. A.  In its Complaint, Tex Pat alleged

24  that EMD Chemicals marked products (as well as packaging, catalogs, and advertisements) with

25  expired patent numbers.  *Id*. at Ex. A, ¶ 10 *et seq*.  Tex Pat's original Complaint sought redress for

26  all of EMD Chemicals' alleged false marking, and listed a number of patents and products, "by

27  example only," that detailed the alleged false marking.  *Id*. at Ex. A, ¶ 10.  Tex Pat subsequently

28  filed an Amended Complaint, which expanded the list of "by example only" products and patents

1  to include additional products and patents, including those products and patents named in the Troll

2  Busters complaint. *Id.* at Ex. B. EMD Chemicals and Tex Pat entered into a settlement agreement

3  that resolved the *Tex Pat* litigation; that agreement settled the allegations set forth in Tex Pat's

4  Amended Complaint, which included false patent marking activities with regard to the patents and

5  products that are included in Troll Busters' complaint. *See* Zelley Decl. at ¶ 5 and Ex. C.

6  Pursuant to that settlement agreement, EMD paid a fine, half of which went to the United States

7  while the other half went to Tex Pat. *Id.*. The settlement agreement was sent to the United States

8  for review, and the United States accepted the settlement payment. Zelley Decl. at *Id.*. On March

9  15, 2011, the Tex Pat litigation was dismissed with prejudice in light of the settlement. Zelley

10  Decl. at Ex. D.

11      On January 10, 2011, Troll Busters filed its original complaint in the instant case. (Dkt.

12  No. 1.) The caption of that original Complaint listed EMD Chemicals, although none of the

13  allegations contained in the complaint are directed toward EMD Chemicals. Instead, certain

14  factual allegations referred to "EMD BioScience," and asserted that EMD BioScience falsely

15  marked product with expired patent numbers in violation of 35 U.S.C. § 292. On April 8, 2011,

16  after seeking leave from the Court, Troll Busters filed its First Amended Complaint (Dkt. 84).

17  The First Amended Complaint still only listed EMD Chemicals in the caption, while making

18  largely the same allegations against EMD BioScience in the body of the complaint. EMD

19  BioScience is not the name of an existing entity. Declaration of Stephen J. Kunst.

20  **III.    ARGUMENT**

21      **A.    Troll Busters' Complaint Is Insufficient Under Fed. R. Civ. P. 9(b)**

22          Troll Busters' complaint fails to meet the requirements of Fed. R. Civ. P. 9(b) and

23  12(b)(6), as it does not sufficiently allege false marking, and further does not allege specific facts

24  from which one could infer an intent to deceive the public, as required by the Federal Circuit in *In*

25  *re BP Lubricants USA Inc.*, No. 960, 2011 WL 873147 (Fed. Cir. Mar. 15, 2011). Because the

26  allegations made against EMD Bioscience (or any other EMD entity) are substantially identical to

27  those made against Roche, rather than reiterate the points adequately and convincingly made by

28  Roche in its memorandum of points and authorities in support of its motion to dismiss (dkt. 91 at

1-14), EMD Chemicals instead joins in Roche's motion and incorporates Roche's motion and

memorandum of points and authorities by reference as if fully set forth herein.

**B.    The Court Lacks Subject Matter Jurisdiction Under Rule 12(b)(1) as the False Marking Statute is Unconstitutional Because it Violates the Take Care Clause of Article II**

The false marking statute is unconstitutional, as it lacks sufficient government controls to

conform with the requirements of the Take Care Clause of Article II.  Rather than reiterate the

points adequately and convincingly made by Roche in its memorandum of points and authorities

in support of its motion to dismiss (dkt. 91 at 14-22), EMD Chemicals instead joins in Roche's

motion and incorporates Roche's motion and memorandum of points and authorities by reference

as if fully set forth herein.

**C.    The Court Should Dismiss Troll Busters' Complaint Based on an Earlier-Filed and Already Settled Case**

**1.    The Filing of a First *Qui Tam* Action Precludes the Filing of Subsequent *Qui Tam* Actions Based on the Same Conduct**

In *qui tam* actions, because the relator brings its case on behalf of the United States, a first-

filed suit precludes the subsequent filing of a second-filed suit on the same subject matter.  This

first-to-file rule applies to false patent marking law suits as well as all other *qui tam* suits.  As one

recent false marking case held:

> [T]he false marking statute . . . contemplates only a single action brought by a private individual on behalf of the United States.  Just as the United States could not bring multiple identical actions against a defendant under the false marking statute, multiple private plaintiffs cannot do so on the government's behalf.

*Simonian v. Quigley Corp.*, No. 10 C 1259, 2010 WL 2837180, at *2 (N.D. Ill. July 19, 2010).  The

court in *Quigley* dismissed a second-filed false marking complaint in view of a similar complaint

that was filed by a different relator several hours earlier.  The court concluded: "Since Simonian's

action here is identical to an earlier-filed action against the same defendant, the Court concludes

that Simonian lacks standing.  Defendant's motion to dismiss is granted." *Id.*

In another recent case, Judge Fogel of the Northern District of California similarly

dismissed a second-filed false patent marking claim in view of an earlier-filed action on the same

subject matter.  The court held:

MEMORANDUM OF POINTS AND AUTHORITIES  IN SUPPORT OF EMD CHEMICALS INC.'S MOTION TO DISMISS
Case No. 3:11-cv-00056 IEG-WVG

4

> Having examined both complaints, the Court concludes the claims asserted by Plaintiff against Exergen are within the scope of those alleged by Brinkmeier in her earlier-filed action.   For this reason, it appears that even assuming standing generally, the claims of the United States government previously were assigned to Brinkmeier depriving Plaintiff of standing to assert them here.

*San Francisco Tech., Inc. v. Glad Prods. Co.*, No. 10-966, 2010 WL 2943537, at *4 (N.D. Cal. July 26, 2010).

Courts universally hold that a first-to-file bar accompanies *qui tam* statutes, thereby negating any potential standing of a second-filed relator.  As one court explained: "The first-to-file bar . . . functions both to eliminate parasitic plaintiffs who piggyback off the claims of a prior relator, and to encourage legitimate relators to file quickly by protecting the spoils of the first to bring a claim." *In re Natural Gas Royalties Qui Tam Litig. (CO2 Appeals)*, 566 F.3d 956, 961 (10th Cir. 2009).  In *Wisconsin v. Amgen, Inc.*, 516 F.3d 530 (7th Cir. 2008), the court stated: "Those are *qui tam* actions, in which the plaintiff (called a 'relator') is seeking a reward for obtaining a money judgment in the government's favor.  Congress didn't want these bounty hunters piling into the first-filed suit and fighting over the division of the spoils, or, to the same end, bringing separate such suits." *Amgen*, 516 F.3d at 532.  Allowing multiple *qui tam* actions for the same false marking would be inconsistent with Congress's intent in authorizing a *qui tam* action because the incentive to police against false marking would be diminished, as the Ninth Circuit noted in the context of the False Claims Act (a *qui tam* statute):  "[M]ultiple relators would expect a recovery for the same conduct, thereby decreasing the total amount each relator would potentially receive and incentives to bring the suit." *United States ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1189 (9th Cir. 2001).

*Qui tam* suits under the Federal Claims Act are directly analogous to *qui tam* suits under the false patent marking statute.  While the current version of the False Claims Act (amended in 1986) sets forth an explicit first-to-file bar (31 U.S.C. § 3730(b)(5)), the earlier version of the statute did not, yet the earlier, silent version was consistently construed as having a first-to-file bar. *Quigley*, 2010 WL 2837180, at *2.  Indeed, the earlier version of the False Claims Act had language that was very similar to the language of the false patent marking statute:

MEMORANDUM OF POINTS AND AUTHORITIES  IN SUPPORT OF EMD CHEMICALS INC.'S MOTION TO DISMISS
Case No. 3:11-cv-00056 IEG-WVG

5

| Pre-1943 False Claims Act (Informers Act) | False Patent Marking Statute |
| --- | --- |
| "[An action] may be brought and carried on by any person, as well for himself as for the United States; the same shall be at the sole cost and charge of such person . . . . The person bringing the suit and prosecuting it to final judgment shall be entitled to receive one-half the amount of such forfeiture, as well as of damages recovered and collected, and the other one-half shall belong to and be paid over to the United States . . . ." | "Any person may sue for the penalty, in which event one-half shall go to the person suing and the other to the use of the United States."<br><br>35 U.S.C. § 292(b). |
| 31 U.S.C. §§ 232, 234; cited in *U.S. v. B.F. Goodrich Co.*, 41 F. Supp. 574, 575 (S.D.N.Y. 1941). | |

This statutory *qui tam* language was held to embody a first-to-file bar. In *B.F. Goodrich*, the court was confronted with multiple similar actions brought against the same defendant under the earlier version of the False Claims Act. *B.F. Goodrich*, 41 F. Supp. at 575. The court found that "[o]bviously, under the general rule well known and so long adhered to, one plaintiff should not be permitted to bring and maintain at the same time more than one action for the same relief." *Id.* The court found that statute provided for "but one action and one division" of any proceeds, and that "[t]he first plaintiff has sole control of the action" and "second or subsequent attempts by others can have no standing." *Id.* Other courts similarly held, under the old version of the False Claims Act, that a second action was precluded due to the *qui tam* nature of the action. *See Beadleston v. Sprague*, 6 Johns. 101 (N.Y. 1810) ("The person who first commences a *qui tam*, or *popular* action, attaches a right in himself, which no other common informer, by a subsequent suit, can devest; and he may demur to a plea of a recovery in such subsequent suit."); *United States v. Anaconda Wire & Cable Co.*, 52 F. Supp. 824, 826 (E.D. Pa. 1943) ("Assuming the identity of the actions, it is not open to question, that the Government having first commenced an action to recover for the alleged wrongs, another action at the instance of an informer will not lie.") (quoting III Blackstone's Commentaries, at 162, and citing *B.F. Goodrich* with approval); *U.S. ex rel. Benjamin v. Hendrick*, 52 F. Supp. 60, 61 (S.D.N.Y. 1943) (same); *U.S. v. Griswold*, 26 F. Cas. 42, 44 (D. Or. 1877) ("whichever—the informer or the district attorney—first commences an

1  action for a particular violation of the statute, thereby excludes the other from so doing."); *Pub.*

2  *Interest Bounty Hunters v. Bd. of Governors of Fed. Reserve Sys.*, 548 F. Supp. 157, 162 (N.D.

3  Ga. 1982) ("[F]or any one claim based on any one set of facts, only one *qui tam* action can be

4  brought by a private informer 'in the name of the United States.'") (citing *B.F. Goodrich*, 41 F.

5  Supp. at 575).

6       The *Quigley* and *San Francisco Technology* courts agreed with the reasoning of these

7  cases, and held that the false patent marking statute has an implicit first-to-file bar. *See Quigley*,

8  2010 WL 2837180, at *2 ("[T]his Court agrees with the reasoning in [*B.F. Goodrich*]. As in the

9  False Claims Act, the false marking statute contains no provision allowing for multiple private

10  plaintiffs to share in a recovery. Rather, it contemplates only a single action brought by a private

11  individual on behalf of the United States. Just as the United States could not bring multiple

12  identical actions against a defendant under the false marking statute, multiple private plaintiffs

13  cannot do so on the government's behalf.").

14       The language and the legislative history of the false patent marking statute further indicate

15  that the statute was meant to embody a first-to-file bar. The legislative history of 35 U.S.C. § 292

16  refers to the statute as "an informer action." *See* H.R. Comm. Report (May 12, 1952) at 31 ("The

17  informer action is included as additional to an ordinary criminal action"). As indicated above,

18  "informer actions" (i.e., *qui tam* actions) have always embodied a first-to-file bar. *See, e.g.,*

19  *Anaconda Wire*, 52 F. Supp. at 826 ("another action at the instance of an informer will not lie").

20  Thus, in enacting the current version of the false marking statute in 1952, Congress meant the

21  statute to be an "informer action," which always embodies a first-to-file bar.

22       The statute's express language further indicates that only a single (first-filed) action may

23  lie. The plain language of 35 U.S.C. § 292 provides for a single *qui tam* recovery by a single

24  plaintiff on behalf of the government: "Any person may sue for *the* penalty, in which event one-

25  half shall go to *the* person suing and the other to the use of the United States." 35 U.S.C. § 292(b)

26  (emphasis added). The statute plainly provides for one penalty—"the penalty"—not multiple and

27  repeated penalties. Section 292(b) uses the definite article "the" instead of the indefinite article

28  "a" in referring to the penalty, indicating that there is to be a single recovery. Courts interpret the

1  definite article "the" to be limiting and singular in number.  *See, e.g., Am. Bus Ass'n v. Slater*, 231

2  F.3d 1, 4-5 (D.C. Cir. 2000) ("[I]t is a rule of law well established that the definite article 'the'

3  particularizes the subject which it precedes.  It is a word of limitation as opposed to the indefinite

4  or generalizing force of 'a' or 'an.'"); *S.E.C. v. KPMG LLP*, 412 F. Supp. 2d 349, 387-88

5  (S.D.N.Y. 2006) ("A statutory provision's use of the definite article 'the,' as opposed to the

6  indefinite 'a,' 'an,' or 'any,' indicates that Congress intended the term modified to have a singular

7  referent.").  Therefore, in using the definite article "the," Congress intended for a *qui tam* plaintiff

8  bringing a false marking claim under 35 U.S.C. § 292 to be limited to *one* award, i.e., "*the*

9  penalty," in *one* qui tam action, not repeated penalties or actions for the same mismarking.

10  Similarly, the definite article "the" also precedes the word "person" in Section 292(b), again

11  indicating Congress's intent to authorize a single *qui tam* relator on behalf of the government for a

12  single act of false marking.  *See* 35 U.S.C. § 292(b); *see also Anderson v. Jensen Racing, Inc.*, 324

13  Or. 570, 578-79 (1997) (noting the definite article "the" functions as an adjective that denotes a

14  particular and specified thing).  Because Congress used the limiting and singular definite article

15  "the" instead of an open-ended indefinite article, Congress intended for a single recovery by a

16  single *qui tam* plaintiff.

17        Finally, construing the false marking statute to allow multiple suits for the same conduct

18  would violate the Double Jeopardy Clause of the United States Constitution.  Section 292 is a

19  criminal statute.  *Pequignot v. Solo Cup Co.*, 608 F.3d 1356, 1363 (Fed. Cir. 2010) ("the false

20  marking statute is a criminal one").[1]  The Fifth Amendment to the Constitution prohibits the

21  imposition of criminal liability twice upon a person; specifically, Double Jeopardy precludes

22  multiple punishments, including monetary penalties, for the same criminal offense.  *Dept. of*

23

24  [1]  In addition, the legislative history, in two locations, unequivocally identifies § 292 as being a
25  "criminal" statute:
      1) "Section 292 is a criminal statute relating to falsely marking an article as being patented
26        when it was not …. [T]his section … makes it an ordinary criminal action as well as an
      informer action as in the present statute." S. Rep. No. 1979, 82 Cong., 2d. Sess. (1952),
27        reprinted in, 1952 U.S.C.C.A.N. 2394, 2403; and
      2) "This is a criminal provision. … The informer action is included as additional to an
28        ordinary criminal action." *Id.* at 2424.

1   *Revenue of Montana v. Kurth Ranch*, 511 U.S. 767, 769 n.1 (1994) ("The Double Jeopardy Clause

2   protects against a second prosecution for the same offense after acquittal, a second prosecution for

3   the same offense after conviction, and multiple punishments for the same offense.  Although its

4   text mentions only harms to 'life or limb,' it is well settled that the Amendment covers

5   imprisonment and monetary penalties.").  Because statutes should be construed to preserve their

6   constitutionality, *St. Martin Evangelical Lutheran Church v. South Dakota*, 451 U.S. 772, 780

7   (1981), the false marking statute should be construed to preclude subsequent criminal liability for

8   the same subject matter.

9        Accordingly, the false marking statute, like all *qui tam* statutes, carries with it a prohibition

10   against second-filed suits on the same subject matter.

       **2.**      **Troll Busters' Claims Against EMD Are Duplicative Of Claims Already**
11               **Raised In The *Tex Pat Qui Tam* Action, And Should Be Dismissed Under**
12               **The "First-to-File Rule"**

           **a.**      **The *Tex Pat Qui Tam* Action (E.D. Texas) Was Filed Before Troll**
13                 **Busters *Qui Tam* Complaint Was Filed**
14

15        Tex Pat sued EMD Chemicals (and "EMD BioSciences, Inc.") in the Eastern District of

16   Texas for false marking prior to the filing of Troll Busters' instant lawsuit.  Tex Pat's original

17   complaint was filed on January 9, 2011, and its amended complaint was filed on March 7, 2011.

18   *See* Zelley Decl. Exs. A and B.   The first-filed *Tex Pat* complaint alleged that EMD Chemicals

19   falsely marked products with expired patent numbers, much as Troll Busters' complaint does.

20   Zelley Decl. Ex. A at ¶¶ 10-69.  The complaint further broadly alleged additional markings not

21   identified by product or patent names or numbers, specifically alleging the following:

22        EMD [Chemicals] has and/or continues . . . to mark upon, affix to, and/or use
    in advertising patents, including, by way of example only, U.S. Patent Nos. [listing
23    patents] . . . in connection with Defendant's products and/or related product
    packaging and advertisements, including, by way of example only, various of its
24    chemical products, as illustrated in Exhibit Q.

25   *Id.* at Ex. A, at ¶ 10.

26        The amended complaint filed in *Tex Pat* similarly included a broad allegation against all of

27   EMD's alleged false patent markings (Zelley Decl. Ex. B at ¶¶ 10 *et. seq.*), and further specifically

28   listed the specific patents and products that were accused in Troll Busters' complaint (*id.*)

1    Troll Busters may try to argue that the fact that Tex Pat's amended complaint was filed

2    after Troll Busters' original complaint justifies departing from the first-to-file rule.  This argument

3    fails.  The date for purposes of the first-to-file rule is the date when the case is filed, not when an

4    amended complaint is filed.  *See Ivy Dry, Inc. v. Zanfel Labs., Inc.*, No. 08-4942 (WHW), 2009

5    WL 1851028, at *5 (D.N.J. June 24, 2009) (transferring to Michigan a case that was filed two

6    months after the first-filed case but eight months before the amended complaint was filed, noting

7    that "[t]here is no question that the Michigan Action was filed first.").  The *Tex Pat* case was filed

8    on January 9, 2011, and that complaint broadly alleged that "EMD has and/or continues…to mark

9    upon, affix to, and/or use in advertising, including, by way of example only, [Listed Patents]…in

10   connection with Defendant's products and/or related product packaging and advertisements,

11   including, by way of example only, various of its [Product Category]…."  Zelley Decl. Ex. A at ¶

12   10.  This type of broad language, which on its face does not limit the complaint to particular

13   products or patents, has been held to encompass product-specific claims of false patent marking in

14   a second filed complaint.  In *Simonian v. Irwin Industrial Tool Co.*, No. 10-1260, 2011 WL

15   147717 (N.D. Ill. Jan. 18, 2011), the court rejected the second-filed relator's argument that the

16   first-filed complaint "did not call out that specific product."  *Id.* at *5 ("Mr. Simonian takes too

17   cramped a view of the [first-filed] complaint, which identified the Edger as an 'example' of the

18   products that NOC improperly marked with the '148 patent—not as the only product

19   challenged.").  Thus, even though Tex Pat's amended complaint was filed after Troll Busters'

20   original complaint, it is the date the complaint was originally filed that should control, and Tex Pat

21   filed first.  Moreover, *both* the *original* and *amended* complaint in *Tex Pat* were filed before the

22   Amended Complaint filed in this case by Troll Busters; thus, both were filed prior to the time that

23   Troll Busters' concededly deficient original complaint was replaced by its Amended Complaint

24   (which is also faulty, although Troll Busters has not conceded this).

25          **b.    *The Tex Pat Qui Tam* Action Was Filed on Behalf of the Same
                    Entity—the United States**
26

27          It is worth emphasizing that Tex Pat, and then Troll Busters, filed their false marking cases

28   (as they had to) on behalf of the same entity—the United States.  "*[Q]ui tam* actions reward

1   private parties for successfully bringing suit on behalf of the government." *SKF USA, Inc. v. U.S.*

2   *Customs and Border Prot.*, 556 F.3d 1337, 1356 (Fed. Cir. 2009).  The *qui tam* laws permit

3   private citizens to file enforcement actions on behalf of the government, in return for a bounty.

4   *Quigley*, 2010 WL 2837180, at *1 (*citing U.S. ex rel. Hall v. Tribal Dev. Corp.*, 49 F. 3d 1208,

5   1212 (7th Cir. 1995)).  "By permitting members of the public to sue on behalf of the government

6   [under 35 U.S.C. § 292], Congress allowed individuals to help control false marking." *Forest*

7   *Group, Inc. v. Bon Tool Co.*, 590 F. 3d 1295, 1303-04 (Fed. Cir. 2009).  Although a private citizen

8   can sue on behalf of the government, it is the government's claim to bring.  *See Shizzle Pop, LLC*

9   *v. Wham-O, Inc.*, No. CV 10-3491 PA (FFMx), 2010 WL 3063066, at *1 (C.D. Cal. Aug. 2, 2010)

10  (recognizing that the real party in interest in both cases is the United States, but refusing to apply

11  first-to-file rule because different patents were alleged in the different actions).

12       Like Troll Busters' claims against EMD BioScience, the *qui tam* false marking action in

13  the Eastern District of Texas was brought by a private citizen on behalf of the U.S. government.

14  Because the real party in interest in the *qui tam* action in the Eastern District of Texas is identical

15  to the real party in interest in the instant litigation, there can be no complaint by Troll Busters that

16  the conduct that it alleged is not being redressed by the *Tex Pat* case.

17       Accordingly, dismissal of Troll Busters' claims against EMD BioScience (or EMD

18  Chemicals, if the Amended Complaint can be construed to state a claim against it)—sounding in

19  false patent marking but following Tex Pat's complaint on the same subject matter—is compelled.

20  Troll Busters, as the filer of a second *qui tam* suit on the same subject matter as the first *qui tam*

21  suit, lacks standing to sue.

22          **3.**    **Troll Busters' Claims Against "EMD Bioscience" Are Further Barred**
               **Due To Release Of The Claims**

23

24       When a party resolves its liability to the United States through a settlement agreement

25  made with a *qui tam* relator acting on the United States' behalf, a subsequent *qui tam* relator acting

26  on the United States' behalf cannot seek additional remedies against that party.  In a very recent

27  false patent marking case, a court examined a similar situation and held that a settlement

28

agreement, containing a release, precluded a second-filing party from maintaining its false

marking lawsuit:

> Having received money from [defendant] Newell in exchange for broad releases of any claims of improper marking by [related defendant] NOC or of NOC products with the '148 Patent, the United States has relinquished any right to damages from NOC in another lawsuit alleging improper marking with the same expired patent. Since [second-filed relator] Mr. Simonian sues under Section 292 as the assignee of the United States, *Stauffer v. Brooks Bros.*, 619 F.3d 1321, 1325 (Fed. Cir. 2010), Mr. Simonian has no greater rights than would the United States to pursue an improper marking claim.

*Simonian v. Irwin Indus. Tool Co.*, No. 10-1260, 2011 WL 147717, at *4 (N.D. Ill. Jan. 18, 2011).

The court concluded that the release provisions in the settlement agreements with the original *qui*

*tam* relators "extinguish any Section 292 claims against [defendant] NOC for products marked

with the '148 patent." *Id.* at *6.  Further, at least one court has recently held that a settlement

reached with a *second-filed* false marking plaintiff acts to preclude the progression of a first-filed

complaint for false marking. *San Francisco Tech., Inc. v. Aero Prods. Int'l,Inc.*, Case No. 5:10-

cv-02994-JF (N.D. Cal. Mar. 14, 2011).  That court reasoned that "the United States has

relinquished its right to seek damages from [Defendant] for alleged false markings with the

patents-in-suit." *Id.* at 2.

Thus, not only does a second-filing relator lack standing to sue a party (*see* Section III.C.1

& 2, *supra*), but when that party has resolved its liability with the first-filing relator, the settlement

and release additionally protects the party from claims by a second-filing relator.  Even where it is

the second filed suit that is subject to settlement, that settlement precludes the first filed relator

from putting forth a claim for false marking.  The settlement operates as a release.[2]  A court may

dismiss a cause of action pursuant to Federal Rule of Civil Procedure 12(b)(6) where a contractual

---

[2]  It is appropriate for the Court to address the release provisions of a settlement agreement in the context of a motion to dismiss. *See Willis Corroon Corp. of Utah, Inc. v. United Capitol Ins. Co.*, No. 97-2208 MHP, 1998 WL 30069, at *3 (N.D. Cal. Jan. 5, 1998) ("[W]hile the interim settlement agreement may not be 'central' to the substantive issues in Corroon's complaint, it clearly is central to Corroon's ability to bring this action since the agreement is a binding contract which allegedly limits the parties' right to sue.  The agreement is therefore centrally relevant—and potentially dispositive—in the same way that facts indicating the existence of a statute of limitations or res judicata defense would be.").

1    release precludes the defendant's liability. *See, e.g., Jacobs v. Venali, Inc.*, 596 F. Supp. 2d 906

2    (D. Md. 2009) (dismissing complaint due to both a release and res judicata). In this case, EMD

3    and the U.S. government—the real party in interest—have released the U.S. government's false

4    marking claims.

<b>a.    The Settlement Agreement Between EMD Chemicals and the<br>Original *Qui Tam* Relator (on Behalf of the United States)<br>Released EMD's Liability</b>

7        The settlement entered into between EMD Chemicals and relator Tex Pat (acting on behalf

8    of the U.S. government) resolved a bona fide dispute filed by Tex Pat. *See* Zelley Decl. ¶¶ 3, 4

9    and Exs. A, B (Tex Pat complaint; Tex Pat amended complaint).   EMD Chemicals timely made

10   its payments pursuant to the settlement agreement. *Id.* at ¶ 5 and Ex. C. The United States, when

11   given the chance, did not challenge the settlement agreement entered on its behalf.  And, as a

12   result, the court granted dismissal with prejudice of Tex Pat's second complaint, which contained

13   all of the patents and products named in Troll Busters' complaint.  Therefore, EMD Chemicals'

14   liability for those patents and products has been released.

<b>4.    Troll Busters' Claims Against EMD BioScience (or EMD Chemicals)<br>Should Also Be Dismissed Under the Doctrine of Res Judicata</b>

17       Res judicata, also known as claim preclusion, "precludes the parties from relitigating

18   issues that were or could have been raised in [a prior] action." *Bronson v. Green Tree Servicing,*

19   *LLC*, No. 2:03-cv-1611 JAM RRB, 2009 WL 546159, at *4 (E.D. Cal. March 4, 2009), *citing*

20   *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981).  Res judicata can serve as the

21   basis for the grant of a motion to dismiss. *Id.* (*citing Stewart v. U.S. Bancorp*, 297 F.3d 953, 956

22   (9th Cir. 2002)).  "The judgment prevents litigation of all grounds and defenses that were or could

23   have been raised in the action." *Id.* (*citing Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1518

24   (9th Cir. 1985)).  Res judicata prohibits future lawsuits when there is "(1) an identity of claims;

25   (2) a final judgment on the merits, and (3) identity or privity between parties." *Id.*

26       The *Tex Pat* false marking action in the Eastern District of Texas, brought on behalf of the

27   U.S. government by Tex Pat as a *qui tam* plaintiff, bars Troll Busters' Complaint against EMD

28   BioScience (or EMD Chemicals) under the doctrine of res judicata.

1

          **a.**      **The Issues and Real Parties in Interest in the *Tex Pat* Action and**
                **the Instant Litigation are Identical**

2

3

       As explained above, the real plaintiff in interest in the *Tex Pat* false marking action is the

4

U.S. government. *See* § III.C.2.b., *supra*. The *Tex Pat* false marking action was brought by a

5

private citizen on behalf of the U.S. government, as were Troll Busters' claims against EMD

6

BioScience (or EMD Chemicals). In addition, as explained above, the issues in both the first-filed

7

*Tex Pat* case and the instant case are identical. *See* § III.C.2.a, *supra*. Thus, the "identity" factors

8

of the claim preclusion test are satisfied.

9

                **b.**      **There Was a Final Judgment on the Merits in the *Tex Pat* Action**

10

       The doctrine of res judicata bars "all grounds for recovery which could have been asserted,

11

whether they were or not, in a prior suit between the same parties . . . on the same cause of action,

12

if the prior suit concluded in a final judgment on the merits." *Sexton v. Chino Valley Indep. Fire*

13

*Dist.*, 7 Fed. Appx. 660, 662-63 (Fed. Cir. 2001) ("By his settlement of all claims in his first

14

lawsuit, which was entered as a judgment in that case, Sexton is precluded from asserting claims

15

that he alleged or could have alleged in his prior lawsuit.") (*citing Ross v. Int'l Bhd. of Elec.*

16

*Workers*, 634 F.2d 453, 457 (9th Cir. 1980)). A resolution based on a settlement is considered a

17

final judgment on the merits. *See Rein v. Providian Fin. Corp.*, 270 F.3d 895, 903 (9th Cir. 2001)

18

(holding that the settlement and dismissal of the trustee's usury claim against lienholder operates

19

as res judicata to bar appellant from raising an usury claim on behalf of the estate against the same

20

lienholder (*citing In re Dominelli*, 820 F.2d 313, 316-17 (9th Cir. 1987)); *In re Stone*, 107 F.3d 17

21

(Table) (9th Cir. 1997) ("Generally, '[f]or res judicata purposes, an agreed or stipulated judgment

22

is a judgment on the merits.'") (citation omitted); *Green v. Ancora-Citronelle Corp.*, 577 F.2d

23

1380, 1383-84 (9th Cir. 1978) (holding stipulation of settlement by parties in state court

24

constituted final judgment on the merits for collateral estoppel purposes).

25

       EMD Chemicals and the U.S. government (by way of the private party suing on its behalf)

26

have already finally resolved the *Tex Pat* Eastern District of Texas *qui tam* action (Zelley Decl.

27

Ex. D), and the complaint has been dismissed with prejudice (*id.*) Consequently, there has been a

28

final judgment on the merits.

1      For the foregoing reasons, the resolution and dismissal of the *Tex Pat* false marking action

2  bars Troll Busters' claims against EMD BioScience (and EMC Chemicals, if such a claim has

3  been made) under the doctrine of res judicata.

**D.  Troll Busters' Complaint Should be Dismissed for Lack of Personal Jurisdiction and Failure to State a Claim Because EMD BioScience, the Entity Against Whom the Allegations Are Made, Is Not an Entity**

6      While EMD Chemicals is listed in the caption of the complaint, its name appears nowhere

7  in the body of the complaint.  As a result, there is no claim actually made against EMD Chemicals,

8  and no allegations (general or specific) are made against EMD Chemicals.  The person against

9  whom the allegations are made is "EMD BioScience," but such a name does not exist as a legally

10  recognized entity.  Therefore, the claims against EMD BioScience should be dismissed under Fed.

11  R. Civ. P. 12(b)(6) for failure to state a claim, and to the extent EMC Chemicals can be considered

12  a defendant (which is cannot; the only mention of EMD Chemicals is in the caption), it should be

13  dismissed for utterly failing to state a claim—no allegations whatsoever are made against it.

**1.  Troll Busters' Complaint Fails to Allege Any Accusations or Facts Against EMD Chemicals**

16      Fed. R. Civ. P. 12(b)(6) allows for dismissal where a complaint fails "to state a claim upon

17  which relief can be granted." Fed. R. Civ. P. 12(b)(6).  A motion to dismiss under Rule 12(b)(6)

18  tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  A

19  complaint may be dismissed as a matter of law if it lacks a cognizable legal theory or states

20  insufficient facts under a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749

21  F.2d 530, 534 (9th Cir. 1984).  In determining the propriety of a Rule 12(b)(6) dismissal, a court

22  may not look beyond the complaint for additional facts. *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th

23  Cir. 2003).  When considering a motion to dismiss, a court must accept as true all "well-pleaded

24  factual allegations." *Ashcraft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).  "In sum, for a complaint to

25  survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from

26  that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S.*

27  *Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

28

MEMORANDUM OF POINTS AND AUTHORITIES  IN SUPPORT OF EMD CHEMICALS INC.'S MOTION TO DISMISS
Case No. 3:11-cv-00056 IEG-WVG

15

1        A defendant listed in the caption of Troll Busters' complaint is EMD Chemicals.

2    However, the body of the complaint contains *no* factual allegations that pertain to EMD

3    Chemicals.  As a result, even if all of the facts are accepted as true, there are no factual allegations

4    that are tied to conduct of EMD Chemicals, and any claim made against EMD Chemicals should

5    be dismissed for failure to state a claim.

6              **2.**      **EMD BioScience is Not an Entity Capable of Being Sued**

7        The body of the Amended Complaint refers to EMD BioScience, and it is EMD

8    BioScience against whom Troll Busters makes its allegations.  *See* Amended Complaint ¶¶ 1, 34-

9    35, 90-91, 156-159.  However, EMD BioScience is not a legally recognized entity capable of

10   being sued.  While a company that went by that name used to exist, it has since been dissolved.

11   Declaration of Stephen J. Kunst at ¶ 2.  Thus, EMD BioScience not being a legal entity, it is not

12   capable of being sued and should be dismissed.  *See, e.g., Hussein v. Miller*, 232 F. Supp. 2d 653,

13   656 (E.D. Va. 2002) (dismissing all claims against non-existent entity); *Broadway v. adidas*

14   *America, Inc.*, 2008 WL 2705566, *5 (E.D. Ark. July 10, 2008) ("Accordingly, there being no

15   such entity as adidas, Inc., plaintiffs' amended complaint against adidas, Inc. must be

16   dismissed."); *Straker v. Metropolitan Transit Auth.*, 333 F. Supp. 2d 91, 94 (E.D.N.Y. 2004)

17   (dismissing "Metropolitan Transit Authority" because no such entity existed).

18       The dismissal of EMD BioScience due to its non-entity status is a matter of lack of

19   personal jurisdiction, among other things.  When a defendant moves to dismiss for lack of

20   personal jurisdiction under Rule 12(b)(2), "the plaintiff bears the burden of demonstrating that

21   jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th

22   Cir. 2004).  Thus, the lack of the Court's personal jurisdiction over EMD BioScience now having

23   been established, Troll Busters must now come forward and demonstrate otherwise.

24  **IV.**    **CONCLUSION**

25       For the reasons stated above, Troll Busters' Complaint against should be dismissed as to

26   EMD Chemicals and EMD BioScience, without leave to file an amended complaint.

27

28

1

2                                         Respectfully submitted,

3       Dated:  May 9, 2011                 CONNOLLY BOVE LODGE & HUTZ LLP

4

5                                         By:   /s/ Scott R. Miller
                                                Scott R. Miller
6                                               Attorneys for EMD Chemicals Inc.

7

8

9       Of Counsel:

10      Francis DiGiovanni
        Geoffrey A. Zelley
11      CONNOLLY BOVE LODGE & HUTZ LLP
        1007 North Orange Street
12      Wilmington, DE 19899
        Telephone:  (302) 658-9141
13      Facsimile:  (302) 658-5614

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28