**KARL RUPP**
California State Bar No. 168930
**KENDALL LAW GROUP, LLP**
3232 McKinney Avenue, Ste. 700
Dallas, Texas 75204
214.744.3000 (Telephone)
214.744.3015 (Telecopier)
Email:krupp@kendalllawgroup.com

**Bradley E. Beckworth**
Texas State Bar No. 24001710
**Derek Gilliland**
Texas State Bar No. 24007239
**Nix Patterson & Roach LLP**
205 Linda Drive
Daingerfield, Texas 75638
(903) 645-7333 (Telephone)
(903) 645-5389 (Telecopier)
Email:  bbeckworth@nixlawfirm.com
            dgilliland@nixlawfirm.com
*Admitted Pro Hac Vice*

**Ralph D. McBride**
Texas State Bar No. 13332400
**Stephen B. Crain**
Texas State Bar No. 04994580
**Alan D. Albright**
Texas State Bar No. 00973650
**Bradley J. Benoit**
Texas State Bar No. 24012275
**Heath A. Novosad**
Texas State Bar No. 24037199
**BRACEWELL & GIULIANI LLP**
711 Louisiana, Suite 2300
Houston, Texas   77002
Telephone:  713-223-2300
Facsimile:   713-221-1212
Email:  ralph.mcbride@bgllp.com
stephen.crain@bgllp.com
alan.albright@bgllp.com
brad.benoit@bgllp.com
heath.novosad@bgllp.com
*Admitted Pro Hac Vice*

**Attorneys for
Plaintiff TROLL BUSTERS®, LLC**

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION**

| | |
|---|---|
| TROLL BUSTERS® LLC,<br><br>   *Plaintiff*,<br><br> v.<br><br>ROCHE DIAGNOSTICS GMBH, ROCHE MOLECULAR SYSTEMS (RMS), ROCHE DIAGNOSTICS CORP. D/B/A ROCHE APPLIED SCIENCES, EUROGENTEC NORTH AMERICA INC., CLONTECH LABORATORIES, INC., INTEGRATED DNA TECHNOLOGIES (IDT), LIFE TECHNOLOGIES CORPORATION, QIAGEN NV., THERMO FISHER SCIENTIFIC, INC., QUANTA BIOSCIENCES, INC., GENE LINK INC., GENSCRIPT USA INC., EMD CHEMICALS INC., TRILINK BIOTECHNOLOGIES INC., and CEPHEID,<br><br>   *Defendants*. | C.A. No. 3:11-cv-0056-IEG-WVG<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT LIFE TECHNOLOGIES CORP.'S JOINDER IN DEFENDANT ROCHE MOLECULAR SYSTEMS AND ROCHE DIAGNOSTICS CORP.'S MOTION TO DISMISS**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Date: June 13, 2011<br>Time: 10:30 a.m.<br>Courtroom 1, Fourth Floor<br>Judge: Hon. Irma E. Gonzalez |

# **TABLE OF CONTENTS**

I. SUMMARY OF ARGUMENT .................................................................................... 1

II. BACKGROUND ......................................................................................................... 1

III. TROLL BUSTERS HAS STATED A CLAIM OF FALSE MARKING UNDER
RULE 9(B)'S HEIGHTENED PLEADING STANDARDS ............................................ 2

    A. Motions to dismiss are disfavored and should be granted only in the rare
occasion that the complaint fails to state a claim that is plausible on its face ....... 2

    B. Troll Busters has set forth sufficient factual matter accepted as true to state a
claim to relief that is plausible on its face, even under Rule 9(b)'s heightened
pleading standards ................................................................................................ 3

        1. The Who: ................................................................................................ 3

        2. The What & The How: ........................................................................... 4

        3. The When: .............................................................................................. 6

        4. The Where: ............................................................................................. 6

    C. Troll Busters has exceeded Rule 9(b)'s heightened pleading requirements and
has alleged sufficient factual allegations to create an inference that Life acted
with the specific intent to deceive the public ....................................................... 6

        1. Licensor/Licensee Relationship: ............................................................ 7

        2. Failure to Change Website: .................................................................... 8

    D. In the alternative, if the Court grants Life's Motion, the Court should do so
without prejudice and grant Troll Busters leave to amend ................................. 10

IV. THE FALSE MARKING STATUTE IS CONSTITUTIONAL.................................... 10

V. CONCLUSION ........................................................................................................ 11

PLAINTIFF'S OPPOSITION TO DEFENDANT LIFE TECHNOLOGIES CORP.'S JOINDER IN DEFENDANT
ROCHE MOLECULAR SYSTEMS AND ROCHE DIAGNOSTICS CORP.'S MOTION TO DISMISS
C.A. No. 3:11-cv-00056-IEG -WVG

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ashcroft v. Iqbal*,
　129 S. Ct. 1937 (2009) ................................................................................................................ 3

*Bell Atl. Corp. v. Twombly*,
　550 U.S. 544 (2007) .................................................................................................................... 3

*Clontech Labs., Inc. v. Invitrogen Corp.*,
　406 F.3d 1347 (Fed. Cir. 2005) ................................................................................................... 2

*Forest Grp., Inc. v. Bon Tool Co.*,
　590 F.3d 1295 (Fed. Cir. 2009) ............................................................................................... 2, 3

*In re BP Lubricants USA, Inc.*,
　--- F.3d ---, 2011 WL 873147 (Fed. Cir. Mar. 15, 2011) ................................... 3, 4, 6, 7, 8, 9

*Juniper Networks, Inc. v. Shipley*,
　--- F.3d ---, 2011 WL 1601995 (Fed. Cir. Apr. 29, 2011) ........................................................ 8

*Lear, Inc. v. Adkins*,
　395 U.S. 653 (1969) .................................................................................................................... 2

*Luka v. Procter & Gamble, Co.*,
　No. 10-cv-2511, 2011 WL 1118689 (N.D. Ill. Mar. 28, 2011) .................................................. 4

*Presidio Components, Inc. v. Am. Technical Ceramics Corp.*,
　723 F. Supp. 2d 1284 (S.D. Cal. 2010) ....................................................................................... 5

*Scheuer v. Rhodes*,
　416 U.S. 232 (1974) .................................................................................................................... 8

*Sterner v. U.S. Drug Enforcement Agency*,
　467 F. Supp. 2d 1017 (S.D. Cal. 2006) ................................................................................... 7, 9

*Vess v. Ciba-Geigy Corp. USA*,
　317 F.3d 1097 (Fed. Cir. 2003) ................................................................................................... 6

**STATUTES**

35 U.S.C. § 292 ............................................................................................................... passim

**RULES**

FED. R. CIV. P. 9 ............................................................................................................... passim

PLAINTIFF'S OPPOSITION TO DEFENDANT LIFE TECHNOLOGIES CORP.'S JOINDER IN DEFENDANT
ROCHE MOLECULAR SYSTEMS AND ROCHE DIAGNOSTICS CORP.'S MOTION TO DISMISS
C.A. No. 3:11-cv-00056-IEG -WVG

ii

1    *Qui tam* Plaintiff/Relator, Troll Busters® LLC ("Troll Busters") submits this opposition to
2    defendant Life Technologies Corp.'s ("Life") Joinder in Defendants Roche Molecular Systems and
3    Roche Diagnostics Corp.'s Motion to Dismiss (the "Motion") (Dkt. No. 113) as follows.[1]

4    **I.   SUMMARY OF ARGUMENT**

5    Troll Busters's First Amended Complaint (the "Complaint") (Dkt. No. 84) alleges in great
6    detail the who (Life), the what (fourteen specifically named products falsely marked by at least one of
7    six specifically named patents (collectively, the "Life Expired Patents"[2])), the when (currently and
8    after expiration of the of the Life Expired Patents), the where (on its Internet product catalogs), the
9    how (using patent markings indicating that certain products or product categories are protected by a
10   patent or require the customer to obtain a license to practice the invention even though Life knew the
11   Life Expired Patents had expired), and the why (to deceive the public and diminish competition) of
12   Life's prohibited conduct under 35 U.S.C. § 292 (the "False Marking Statute").  (Dkt. No. 84, ¶¶ 22-
13   23, 81-83, 96-115, 132-135).   Troll Busters's specific factual allegations, as detailed herein,
14   objectively indicate that Life was aware of the expiration of the falsely marked patents and call to
15   mind a portrait of deceit that not only meets, but surpasses, Rule 9(b)'s particularity requirements,
16   especially when such requirements are applied in the specific context of a false-marking case.

17   Furthermore, Life's argument that the False Marking Statute violates the Constitution's "Take
18   Care" Clause is meritless and has been rejected by virtually every court that has addressed the issue.
19   Therefore, this Court should deny Life's Motion.

20   **II.   BACKGROUND**

21   Troll Busters filed this *qui tam* action under 35 U.S.C. § 292 (the "False Marking Statute") on
22   behalf of the public to stop Life from deterring innovation and stifling competition.  Life has falsely
23   marked, or forced its licensees to falsely mark, over a dozen products in violation of United States

---

[1] Unlike many of the other defendants, Life did not file a separate motion to dismiss in addition to its motion to join defendants Roche Molecular Systems and Roche Diagnostics Corp.'s Motion to Dismiss (Dkt. No. 91). Accordingly, for the purpose of this opposition, Troll Busters considers Life's Motion as if it were a motion to dismiss on the same grounds as asserted by Roche Molecular Systems and Roche Diagnostics Corp. in their motion to dismiss.

[2] The Life Expired Patents include U.S. Patent Nos. 5,201,015; 5,487,972; 5,079,352; 5,066,584; 4,889,818; and 5,035,996  (Dkt. No. 84, ¶ 46, 81-82).

PLAINTIFF'S OPPOSITION TO DEFENDANT LIFE TECHNOLOGIES CORP.'S JOINDER IN DEFENDANT
ROCHE MOLECULAR  SYSTEMS AND ROCHE DIAGNOSTICS CORP.'S MOTION TO DISMISS
C.A. No. 3:11-cv-00056-IEG -WVG

1

1  law.  (Dkt. No. 84, ¶ 81-82).  False marking dissuades potential competitors from entering the
2  marketplace, deters scientific research, and causes "unnecessary investment in design around or costs
3  incurred to analyze the validity or enforceability of a patent whose number has been marked upon a
4  product with which a competitor would like to compete." *Forest Grp., Inc. v. Bon Tool Co.*, 590 F.3d
5  1295, 1302-03 (Fed. Cir. 2009).  And as the Federal Circuit has recognized, "[t]hese injuries occur
6  each time an article is falsely marked." *Id*. at 1303.

7  Nevertheless, rather than removing the false markings from its online product catalog as some
8  other companies have done (Dkt. No. 84, ¶ 100), Life continues to falsely mark products and require
9  its licensees to falsely mark products with the Life Expired Patents in violation of federal law thereby
10 subverting the very purpose of patent markings—to inform the public as to the status of intellectual
11 property.  *Forest Grp.*, 590 F.3d at 1302.  Life's false markings forestall "'full and free competition in
12 the use of ideas which are in reality a part of the public domain.'"  *Clontech Labs., Inc. v. Invitrogen*
13 *Corp.*, 406 F.3d 1347, 1356 (Fed. Cir. 2005) (quoting *Lear, Inc. v. Adkins*, 395 U.S. 653, 670
14 (1969)).  Although important in every industry, "full and free competition" is paramount in the health
15 care industry, where market innovation feeds on the open use of ideas, the freedom to operate,
16 reduced technology costs, and expanded access to once patented but now public products such as the
17 PCR-based diagnostic testing tools that are the subject of this lawsuit.  (Dkt. No. 84, ¶ 4).

18 **III.   TROLL BUSTERS HAS STATED A CLAIM OF FALSE MARKING UNDER RULE 9(B)'S HEIGHTENED PLEADING STANDARDS.**
19
20 **A.   Motions to dismiss are disfavored and should be granted only in the rare occasion that the complaint fails to state a claim that is plausible on its face.**

21 The legal standards set forth by Troll Busters in its opposition to Roche Molecular Systems
22 and Roche Diagnostics Corp.'s Notice of Motion and Motion to Dismiss (Dkt. No. 91) are identical to
23 the standards that this Court should apply with respect to Life's Motion.  Accordingly, in the interest
24 of judicial economy, Troll Busters hereby incorporates by reference Plaintiff's Response in
25 Opposition to Motion to Dismiss by Defendants Roche Molecular Systems and Roche Diagnostics
26 Corp. (the "Roche Opposition") (Dkt. No. 123), and all exhibits thereto, as if fully set forth herein.
27
28

1 Applying these standards (as detailed in Section III(A) of the Roche Opposition) "in a fashion that relates to false marking claims," as this Court must, it is clear that Troll Busters has alleged much more than the general allegations that the Federal Circuit found insufficient in *BP Lubricants*. *In re BP Lubricants USA, Inc.*, --- F.3d ---, 2011 WL 873147, at *4 (Fed. Cir. Mar. 15, 2011) (holding that Rule 9(b)'s pleading requirements "must be applied in a fashion that relates to false marking claims"). Here, the Complaint has alleged "sufficient factual matter accepted as true to state a claim to relief that is plausible on its face'" such that it survives the disfavored motion to dismiss. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks and citation omitted).

**B.  Troll Busters has set forth sufficient factual matter accepted as true to state a claim to relief that is plausible on its face, even under Rule 9(b)'s heightened pleading standards.**

Life asserts that "Troll Busters has failed to sufficiently plead that [Life] engaged in any conduct prohibited by the false marking statute." (Dkt. No. 113, p. 3). This argument is baseless. Troll Busters has sufficiently pleaded the "who, what, when, where, and how" of Life's false marking in satisfaction of Rule 9(b)'s heightened pleading requirements. "The two elements of a § 292 claim are (1) marking an unpatented article and (2) intent to deceive the public." *Forest Grp.*, 590 F.3d at 1300 (citation omitted). Here, Troll Busters has alleged both of these elements with Rule 9(b) precision. This case is no fishing expedition. Troll Busters has not provided merely "labels and conclusions," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "naked assertions," or "threadbare recitals" of the elements. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citation omitted). Rather, Troll Busters has alleged "sufficient factual matter accepted as true to state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (internal quotation marks and citation omitted). Therefore, this Court should deny Life's Motion.

1.  The Who:

In its Complaint, Troll Busters alleges that Life (the "who") has violated the False Marking Statute. Troll Busters specifically identifies Life's principal place of business, its address of service, and the locations where it regularly conducts and transacts business. (Dkt. No. 84, ¶ 22-23). Moreover, in further describing Life, Troll Busters alleges that Life is a "large, sophisticated

PLAINTIFF'S OPPOSITION TO DEFENDANT LIFE TECHNOLOGIES CORP.'S JOINDER IN DEFENDANT
ROCHE MOLECULAR SYSTEMS AND ROCHE DIAGNOSTICS CORP.'S MOTION TO DISMISS
C.A. No. 3:11-cv-00056-IEG -WVG

3

1  [company]" (Dkt. No. 84, ¶ 97) who has, or regularly retains, "legal counsel who are experienced in
2  patent matters" (Dkt. No. 84, ¶ 98) and who has "experience applying for patents, obtaining patents,
3  licensing patents, and/or litigating in patent-related lawsuits" (Dkt. No. 84, ¶ 99).  These facts satisfy
4  the "who" prong of false marking.

5      Importantly, as discussed in the Section III(B)(1) of the Roche Opposition, "the naming of
6  specific individuals is not the only way to set forth facts upon which intent to deceive can be
7  reasonably inferred."  2011 WL 873147, at *4.  Indeed, according to the Northern District of Illinois,
8  a requirement forcing plaintiffs to identify specific individuals would destroy the False Marking
9  Statute.  *Luka v. Procter & Gamble, Co.*, No. 10-cv-2511, 2011 WL 1118689, at *4 (N.D. Ill. Mar.
10 28, 2011).  Thus, in the context of the False Marking Statute, Troll Busters need not name specific
11 individuals in order to satisfy Rule 9(b).

12     2.    <u>The What & The How:</u>

13     Troll Busters describes the "what" and the "how" of the alleged false marking in prodigious
14 detail.  Specifically, Troll Busters alleges that Life (the "who") "has advertised on its online catalog"
15 nine different named products (the "what") "and either marked these products with or required that
16 customers obtain licenses for" U.S. Patent No. 5,035,996 (the '996 Patent) (the "how") in violation of
17 Section 292.  (Dkt. No. 84, ¶ 82).  In addition, Troll Busters alleges that Life's Internet catalog
18 "contains statements or other patent marking language that indicate[s] that (a) certain products are
19 marked with one or more of the Expired Patents and/or (b) product categories are either allegedly
20 protected by an Expired Patent or require the customer to obtain a license to practice the invention of
21 an Expired Patent from one or more of the defendants." (Dkt. No. 84, ¶ 70). Moreover, Troll Busters
22 alleges that

23     Life acted as agent for Defendant Roche and required licensees to mark products with
24     specific lists of patents according to required language.  The required language
       included [Life Expired Patents], and there were no provisions to require licensees to
25     either remove patents that had expired, or to remove language referring to
       corresponding foreign equivalents of expired U.S. patents when the corresponding
26     foreign patents had also expired.

27
28

1  (Dkt. No. 84, ¶ 81). Specifically, Life required licensees to mark at least five specifically named
2  products with at least one of five specifically listed patents (i.e., U.S. Patent Nos. 5,201,015;
3  5,487,972; 5,079,352; 5,066,584; and 4,889,818).

4  Although Troll Busters did not identify the exact language used with respect to each marking
5  of each product (as to do so would bury the court in a needless mountain of paper at this early stage
6  of the proceeding), Troll Busters did identify the type of statements at issue—patent number
7  markings in online product catalogs denoting that the advertised products are protected by one or
8  more expired patents. (Dkt. No. 84, ¶ 70). The False Marking Statute prohibits these types of
9  statements. 35 U.S.C. § 292 ("Whoever marks upon, or affixes to, or *uses in advertising in*
10 *connection with any unpatented article*, the word 'patent' or any word or number importing that the
11 same is patented, for the purpose of deceiving the public . . . [s]hall be fined not more than $500 for
12 each such offense." (emphasis added)).

13  Troll Busters has not merely used the word "advertised" in a fallacious attempt to invoke the
14 False Marking Statute. It has set forth precisely where the advertisements were placed (Life's online
15 product catalogs or Life's licensees' online product catalogs), the patent numbers used in the
16 advertisements (the six specifically named patents), and the products promoted by such
17 advertisements (the 14 specifically named products). In fact, Troll Busters specifically names each
18 and every product or product category (i.e., Polymerase enzymes used for PCR, Asymmetric PCR,
19 and AmpErase® Uracil N-glycosylase (UNG), etc.) and correlates them to the falsely marked patent
20 or patents (i.e., the '015, '584, and '996 Patents, respectively). Moreover, as Section III(B)(2) of the
21 Roche Opposition notes, this Court recently recognized that using a patent number in connection with
22 a product in a catalog on a website promotes the product to the public and thus amounts to
23 advertising. *Presidio Components, Inc. v. Am. Technical Ceramics Corp.*, 723 F. Supp. 2d 1284,
24 1334 n.41 (S.D. Cal. 2010).

25  Here, there is no doubt here that Life's false markings and the false markings of its licensees
26 "occurred in a medium or through a channel designed to promote the unpatented product to
27 consumers," and therefore were used in advertising in violation of the False Marking Statute. *Id*.
28

1  (citations omitted).  To conclude otherwise would require this Court to reject the truth of Troll
2  Busters's assertions and construe inferences against it, which it cannot do at this motion-to-dismiss
3  stage.  Inquiries that require a weighing of the evidence or an analysis of the effect of particular
4  publications on consumers are more appropriately reserved for trial.

5        3. <u>The When:</u>

6      Troll Busters alleges that Life *has, and currently continues to* (the "when"), falsely mark its
7  products in violation of 35 U.S.C. § 292.  (Dkt. No. 84, ¶¶ 81-83, 103, 104, 114).  Because the
8  alleged misconduct in this case is ongoing and perpetual, it is unnecessary for Troll Busters to
9  identify the exact days, hours, minutes, and seconds when the alleged misdeeds occurred.  Indeed,
10 Troll Busters's allegation that Life's false marking persists is "specific enough to give [Life] notice of
11 the particular misconduct."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (Fed. Cir. 2003).

12       4. <u>The Where:</u>

13     In its Complaint, Troll Busters alleges that Life falsely marked products on its online, Internet
14 catalog and that it forced its licensees to do so as well.  (Dkt. No. 84, ¶ 81-82).  Accepting this
15 allegation as true and construing all inferences in Troll Busters's favor, the events giving rise to this
16 cause of action occurred everywhere Life's online catalog or its licensees' online catalogs are
17 accessible, which presumably includes at least the United States.  Moreover, Troll Busters
18 specifically alleges that "Defendants' products or services that are the subject matter of this cause of
19 action are advertised, marked, offered for sale, and/or sold in various retail stores and/or on the
20 Internet in" the Southern District of California.  (Dkt. No. 84, ¶ 41).  These allegations are more than
21 sufficient to satisfy the "where" prong under *BP Lubricants*.  2011 WL 873147, at *2.

22     **C.   Troll Busters has exceeded Rule 9(b)'s heightened pleading requirements and has alleged sufficient factual allegations to create an inference that Life acted with
23     the specific intent to deceive the public**.

24     In *BP Lubricants*, the Federal Circuit held that "a complaint alleging false marking is
25 insufficient when it *only* asserts conclusory allegations that a defendant is a 'sophisticated company'
26 and 'knew or should have known' that the patent expired."  *BP Lubricants*, 2011 WL 873147, at *1.

27
28

As explained in Section III(C) of the Roche Opposition, Troll Busters's Complaint is different and alleges far more than the general allegations that fail to satisfy Rule 9(b)'s requirements.

### 1. Licensor/Licensee Relationship:

Although Troll Busters alleges that Life is a large and sophisticated company (which it is) that regularly retains legal counsel and has experience with the patent system (which it does), and knows that patents expire (which it does), Troll Busters has alleged much more than the general "sophisticated company" allegations that the Federal Circuit found were insufficient in *BP Lubricants*. Principally, throughout its Complaint, Troll Busters provides specific factual allegations regarding a licensor/licensee relationship between Roche Diagnostics GmbH, Roche Molecular Systems, Roche Diagnostics Corp. (collectively, "Roche"), Life, and other named Defendants. These allegations are detailed in Section III(C) of the Roche Opposition. (Dkt, No. 84, ¶¶ 101, 102, 95, 81).

Taking these factual allegations as true and construing all inferences from them in the light most favorable to Troll Busters, *Sterner v. U.S. Drug Enforcement Agency*, 467 F. Supp. 2d 1017, 1022 (S.D. Cal. 2006) (citation omitted), this Court should reason as follows: (1) Life was a licensor of the Life Expired Patents; (2) Life acted as an agent of Roche and required licensees to mark products with specific lists of patents according to required language; (3) Life received royalties related to the Life Expired Patents from its licensees; (4) Life notified its licensees that the Life Expired Patents had expired; (5) Life's licensees stopped paying royalties for the Life Expired Patents once they expired; (6) Life stopped receiving royalties from its licensees for the Life Expired Patents once they expired; (7) Life was aware that it had stopped receiving royalties for the Life Expired Patents; (8) Life required licensees to continue to mark products with the Life Expired Patents even though it knew that the patents had expired and had adjusted royalty payments accordingly; (9) despite such notice and adjustment to the royalty payments, Life continued to falsely mark products with the Life Expired Patents; (10) Life's patent licenses did not require its licensees to remove patent marking language once the patents had expired; and (11) Life was complicit with Roche and its licensees in a strategy to prevent or diminish market competition. These allegations certainly provide "some objective indication to reasonably infer that [Life] was aware that the patent expired" such that

1  this Court should infer that Life acted with intent to deceive. *BP Lubricants*, 2011 WL 873147, at *3.
2  That is all that Rule 9(b) requires.

3  Despite these detailed factual allegations, Life argues that Troll Busters "failed to plead facts
4  that permit an inference that [Life] acted with intent to deceive the public" and failed "to allege a
5  factual basis to support the conclusory allegation that [Life] actually knew that the patents at issue
6  had expired." (Dkt. No. 113, p. 2). These arguments are unpersuasive. First, Troll Busters's
7  allegations are anything but "conclusory" as the above eleven-point list of detailed factual assertions
8  and reasonable inferences makes clear. Second, "[t]he issue is not whether a plaintiff will ultimately
9  prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v.*
10 *Rhodes*, 416 U.S. 232, 236 (1974). That is, Troll Busters need not actually *prove* deceptive intent to
11 satisfy Rule 9(b). *BP Lubricants* states that "a complaint must in the § 292 context provide some
12 objective indication to reasonably infer that the defendant was aware that the patent expired." *BP*
13 *Lubricants*, 2011 WL 873147, at *3. That is the test. Had the Federal Circuit intended a more
14 rigorous test, it would have applied it in *Juniper Networks*, an opinion handed down one month after
15 *BP Lubricants*. *See Juniper Networks, Inc. v. Shipley,* --- F.3d ---, 2011 WL 1601995, at *3 (Fed.
16 Cir. Apr. 29, 2011). Although the Federal Circuit notes that a relator must "*show* a purpose of deceit,
17 rather than simply knowledge that a statement is false" in order to *prove* deceptive intent, it has never
18 required such a showing at the motion-to-dismiss stage. *BP Lubricants*, 2011 WL 873147, at *3.

19  2.   Failure to Change Website:

20  The Complaint offers additional specific allegations regarding Life's intent by noting that Life
21 has failed to alter its website after being served with Troll Busters's Original Complaint (Dkt. No. 1).
22 These allegations are set forth in detail in Section III(C)(2) of the Roche Opposition. In addition,
23 with specific respect to Life, Troll Busters alleges that "Life has not successfully changed its website
24 [to remove the expired patents] since being served with the Original Complaint, indicating a
25 continued intent to deceive the public and chill competition from potential competitor companies."
26 (Dkt. No. 84, ¶ 83, 134).

27
28

1      Taking these factual allegations as true and construing all inferences from them in the light
2 most favorable to Troll Busters, *Sterner*, 467 F. Supp. 2d at 1022 (citation omitted), this Court should
3 reason that (1) Life was informed that the Life Expired Patents had expired when Troll Busters
4 served it with the Original Complaint, (2) after the filing of this lawsuit, Life's online catalog website
5 displayed expired patent numbers in connection with the advertisements of various products, (3) Life
6 had the capability and opportunity to modify its online catalog website, which is an easily modifiable,
7 digital format, and (4) Life, nevertheless, failed to remove the expired patent numbers from its online
8 advertisements.  Nonetheless, Life argues that Troll Busters's allegations actually evidence Life's lack
9 of intent to deceive because the Complaint notes that "Life apparently attempted to disable some
10 links within its website, but the falsely marked expired patents still appear."  (Dkt. No. 84, ¶ 83).
11 Life's apparent attempt to disable some links on its website does not permit an inference that Life
12 lacked an intent to deceive.  It is unclear from the pleadings why Life attempted to modify the links.
13 What is clear, however, is that Life has yet to remove the false markings from easily modifiable
14 websites even though it is unquestionably aware that the Life Expired Patents have expired.  Life's
15 objective knowledge that the Life Expired Patents have expired taken together with its failure to
16 remove the false markings, shows an intent to deceive.  Factual issues as to Life's actually ability to
17 remove the offending markings are best reserved for trial.

18      In addition, Troll Busters alleges that other licensees of the expired patents "did comply with
19 the marking requirements and removed expired patents from their websites, such as the large,
20 sophisticated company, Sigma."  (Dkt. No. 84, ¶ 105).  This is yet another "objective indication to
21 reasonably infer that [Life] was aware that the patent[s] expired."  *BP Lubricants*, 2011 WL 873147,
22 at *3.

23      When considered together, the allegations detailed above set forth objective indicia that Life
24 knew that the Life Expired Patents had expired and are more than sufficient to draw the inference that
25 Life acted with fraudulent intent.  Thus, Troll Busters has sufficiently pleaded that Life acted with
26 intent to deceive the public as required under Rule 9(b)'s heightened pleading standards, and
27 therefore, this Court should deny Life's Motion.

28

**D. In the alternative, if the Court grants Life's Motion, the Court should do so without prejudice and grant Troll Busters leave to amend.**

In the alternative, as detailed in Section III(D) of the Roche Opposition, if the Court grants Life's Motion, the Court should do so without prejudice and grant Troll Busters leave to amend. *See* Roche Opposition, § III(D). Where, as here, there is no evidence of bad faith, undue prejudice, or futility of amendment, and where Troll Busters has not repeatedly failed to cure deficiencies in its pleadings, "justice so requires" that Troll Busters be granted leave to amend if this Court grants Life's Motion.

## IV. THE FALSE MARKING STATUTE IS CONSTITUTIONAL

As explained in Section IV of the Roche Opposition, Life's argument that the False Marking Statute is unconstitutional is baseless and has been rejected by every district court, except one, to consider the issue. Roche Opposition, § IV. Contrary to Life's assertions, the False Marking Statute does not inhibit Executive functions, and nothing in the Constitution forbids the *qui tam* mechanism. Here, Congress determined that false marking was best deterred by private individuals. Whether such *qui tam* actions are prudent is a question for Congress, not this Court. Accordingly, Life's Motion should be denied.

**V.    CONCLUSION**

Troll Busters has stated a claim to relief that is plausible on its face, even under Rule 9(b)'s heightened standards.  The Complaint alleges, with considerable detail, the who, what, when, where, and how of Life's violations of the False Marking Statute.  Moreover, Troll Busters's specific factual allegations objectively indicate that Life was aware of the expiration of the Life Expired Patents and acted with an intent to deceive the public.  In addition, Life's argument that the False Marking Statute is unconstitutional is without merit.  Nothing in the Constitution prohibits the *qui tam* enforcement mechanism of the False Marking Statute.  Therefore, this Court should deny Life's Motion.

DATED: May 27, 2011

Respectfully submitted,

By: */s/ Karl Rupp*
**KARL RUPP**
California State Bar No. 168930
**KENDALL LAW GROUP, LLP**
3232 McKinney Avenue, Ste. 700
Dallas, Texas 75204
214.744.3000 (Telephone)
214.744.3015 (Telecopier)

**ATTORNEY FOR PLAINTIFF TROLL BUSTERS® LLC**

OF COUNSEL:

Bradley E. Beckworth
Texas State Bar No. 24001710
Derek Gilliland
Texas State Bar No. 24007239
**Nix Patterson & Roach LLP**
205 Linda Drive
Daingerfield, Texas 75638
(903) 645-7333 (Telephone)
(903) 645-5389 (Telecopier)

Ralph D. McBride
Texas State Bar No. 13332400
Stephen B. Crain
Texas State Bar No. 04994580
Alan D. Albright
Texas State Bar No. 00973650
Bradley J. Benoit
Texas State Bar No. 24012275
Heath A. Novosad
Texas State Bar No. 24037199
**BRACEWELL & GIULIANI LLP**
711 Louisiana, Suite 2300
Houston, Texas   77002
Telephone:  713-223-2300
Facsimile:   713-221-1212

ATTORNEYS FOR PLAINTIFF TROLL BUSTERS® LLC

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the above *First Amended Complaint* in the United States District Court for the Southern District of California, and that service will be automatically accomplished through the Notice of Electronic Filing.


                                             */s/ Karl Rupp*
                                                 Karl Rupp