1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   TROLL BUSTERS© LLC,                          CASE NO. 11cv56-IEG(WMc)

12                              Plaintiff,         Order Granting Defendants' Motions
                                                   to Dismiss for Failure to State a Claim[1]
13                                                 [Doc. Nos. 90, 91, 92, 94, 96, 102, 103,
           vs.                                     105, 107, 111, 114]; Denying
14                                                 Defendant Roche Diagnostics GmbH's
                                                   Motion to Dismiss for Insufficient
15                                                 Service of Process [Doc. 92]; Granting
                                                   Defendant Qiagen NV's Motion to
16   ROCHE DIAGNOSTICS GMBH; ROCHE                 Dismiss for Lack of Personal
     MOLECULAR SYSTEMS (RMS); ROCHE               Jurisdiction [Doc. 111]; Granting
17   DIAGNOSTICS CORP. d/b/a/ ROCHE               Defendant EMD Chemical Inc.'s
     APPLIED SCIENCES; EUROGENTEC NORTH           Motion to Dismiss [Doc. 114]
18   AMERICA, INC.; CLONTECH
     LABORATORIES, INC.; INTEGRATED DNA
19   TECHNOLOGIES  (IDT); LIFE
     TECHNOLOGIES CORPORATION;
20   QUIAGEN NV.; THERMO FISHER
     SCIENTIFIC, INC.; GENE LINK, INC.;
21   GENSCRIPT USA, INC.; EMD CHEMICALS
     INC.; TRILINK BIOTECHNOLOGIES INC.;
22   AND CEPHEID,,

23                              Defendants.

24

25         Defendants have moved to dismiss Plaintiff's First Amended Complaint ("FAC") for

26   failure to state a claim under Fed. R. Civ. P. 12(b)(6), arguing that the FAC fails to plead with

27   ───────────────

28         [1]Defendants Integrated DNA Technologies, Thermo Fisher Scientific, Inc., and Life
     Technologies Corp. did not separately move to dismiss, but instead filed notices of joinder with
     regard to the motion filed by Roche Diagnostics Corp.[Doc. Nos. 100, 101, 113.]

1    sufficient particularity either (i) the conduct constituting false marking in violation of 35 U.S.C.

2    § 292 or (ii) that defendant acted with intent to deceive.[2]  Several Defendants have also filed

3    motions for dismissal on other grounds.  Defendant Roche Diagnostics GmbH moves to dismiss

4    under Fed. R.  Civ. P. 12(b)(5) for insufficient service of process.  Defendant Qiagen NV moves to

5    quash service of process under Fed. R. Civ. P. 12(b)(5), and to dismiss under Fed. R. Civ. P.

6    12(b)(2) for lack of personal jurisdiction.  Defendant EMD Chemicals, Inc. moves to dismiss for

7    lack of standing, arguing a previous *qui tam* relator settled and released claims against it based

8    upon the same conduct alleged in the FAC.

9         The Court held oral argument on Defendants' motions on August 12, 2011.  Based upon all

10   the parties' arguments, for the reasons explained herein, the Court GRANTS IN PART AND

11   DENIES IN PART the Defendants' motions.

12                                    ***Background***

13        Troll Busters LLC provides a "freedom to operate service to invalidate patent claims that

14   are likely not valid, and is active in invalidating molecular diagnostic patents that artificially drive

15   up health care costs." [FAC, ¶ 9.]  Plaintiff alleges each of the Defendants "has and continues

16   (and/or have and continue to require others) to mark upon, affix to, and/or use expired patents in

17   advertising, sales and promotion through online sales channels and in providing their products

18   through Internet websites."  [FAC, ¶ 45.]  Plaintiff alleges such conduct violates the false marking

19   provisions of 35 U.S.C. § 292.

20        Plaintiff identifies 22 expired U.S. Patents allegedly used by Defendants to mark various

21   products.  [Id.; FAC, ¶¶ 46-70.]  Plaintiff alleges that

22        Defendants' respective Internet catalogs contain statements or other patent marking
          language that (a) certain products are marked with one or more of the Expired
23        Patents and/or (b) product categories are either allegedly protected by an Expired
          Patent or require the customer to obtain a license to practice the invention of an
24        Expired Patent from one or more of the defendants.

25

26        [2]Defendants also move to dismiss under Fed. R. Civ. P. 12(b)(1), arguing the *qui tam*
     provisions are unconstitutional.  The Court stayed that portion of the motions pending decision by
27   the Federal Circuit on United States *ex rel.* FLFMC, LLC v. Wham-O, Civ. No. 2011-1067 (Fed.
     Cir. 2011), which was argued in that court on July 7, 2011.  The stay remains in effect until the
28   earlier of the date on which the Federal Circuit files its decision in the FLFMC case, or
     November 14, 2011.

1  [FAC, ¶ 70.]  As to each Defendant, Plaintiff identifies particular products and particular expired

2  patents.  [See, e.g., FAC ¶ 71.]  Plaintiff alleges "[u]pon information and belief" that each

3  Defendant "has advertised on its online catalog" at least those products identified in the tables, and

4  "either marked these products with, or required that the customers obtain licenses for" such

5  expired patents.[3]  [See, e.g., FAC ¶ 71.]

6          In attempting to demonstrate intent as required by the statute, Plaintiff alleges Defendants

7  "did not have, and could not have had, a reasonable belief their products were properly marked,

8  particularly in light of Defendants Roche and Life requiring its licensees to mark its products or

9  requiring its licensees to advise its customers of the need for each customer to obtain a license to

10  an expired patent from either or both of Roche and Life."  [FAC, ¶ 96.]  Defendants "are large,

11  sophisticated companies" which "have, or regularly retain, legal counsel, who are experienced in

12  patent matters."  [FAC, ¶¶ 97-98.]  Further, "Defendants know that a patent expires and that an

13  expired patent cannot protect any product."  [FAC, ¶ 100.]  All Defendants "are licensors and/or

14  licensees of the Expired Patents" and based thereon "defendants were acutely aware of when the

15  patents expired as that would stop the payment of royalties."  [FAC, ¶ 101.]  Plaintiff alleges it

16  was common knowledge in the industry, based upon published articles, that several of the patents

17  expired in 2005 and 2006, and Defendants, as businesses in the industry, were aware of the

18  expiration of the patents.  [FAC, ¶ 105.]  Finally, Plaintiff alleges, "[u]pon information and belief,"

19  that most of the Defendants[4] have not changed their website since being served with the original

20  complaint, "indicating a continuing intent to deceive the public and chill competition from

21

22          [3]In addition to the form allegation that Defendant Life Technologies Corporation ("Life")
    marked products with or required customers to obtain licenses for expired patents, [FAC, ¶ 82.],
23  Plaintiff also alleges "[u]pon information and belief" that Life "acted as agent for Defendant
    Roche and required licensees to mark products with specific lists of patents according to required
24  language."  [FAC, ¶ 81.]  "The required language included Expired Patents, and there were no
    provisions to require licensees to ... remove patents that had expired ...."  Plaintiff goes on to list
25  the particular patents "upon information and belief" with which Life required its licensees to
    falsely mark licensed products, and the product categories upon which those patents were marked.
26  [Id.]

27          [4]Plaintiff does not allege that Defendants GenLink, TriLink Biotechnologies, or Cepheid
    failed to change their website.  In addition, Plaintiff alleges that Defendant Life "has not
28  successfully changed its website" noting that although it "apparently attempted to disable some
    links within its website ... the falsely marked expired patents still appear."  [FAC, ¶ 83.]

1   potential competitor companies."  [See, e.g., FAC, ¶ 72, 103, 104.]

2       Plaintiff sues on its own behalf and on behalf of the United States, seeking an award of

3   monetary damages of not more than $500 for each instance of Defendants' violations of § 292(a),

4   one half of which is to be paid to the United States.  [FAC, ¶ 95.]

5                                       ***Discussion***

6   ***1.       Defendants' Motion to Dismiss for Failure to State a Claim***

7       Defendants argue Plaintiff's FAC should be dismissed under Fed. R. Civ. P. 12(b)(6)

8   because it fails to plead with particularity the facts demonstrating Defendants violated § 292 as

9   required by Fed. R. Civ. P. 9(b).  "'To survive a motion to dismiss, a complaint must contain

10  sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

11  Ashcroft v. Iqbal, --- U.S. ----, ----, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v.

12  Twombly, 550 U.S. 544 (2007)).  "Determining whether a complaint states a plausible claim for

13  relief [is] a context-specific task that requires the reviewing court to draw on its judicial

14  experience and common sense."  Id. at 1950.  "[W]hile the court assumes that the facts in a

15  complaint are true, it is not required to indulge in unwarranted inferences in order to save a

16  complaint from dismissal."  Metzler Inv. GmbH v. Corinthian Colls., Inc., 540 F.3d 1049, 1064-65

17  (9th Cir.2008).

18      Although § 292 provides for a civil fine, it is a criminal statute. Pequignot v. Solo Cup Co.,

19  608 F.3d 1356, 1363 (Fed. Cir. 2010).   A false marking claim under 35 U.S.C. § 292 requires an

20  intent to deceive the public, and sounds in fraud.  Juniper Networks, Inc. v. Shipley, 643 F.3d

21  1346, 1350 (Fed. Cir. 2011).  Thus, "false marking claims must satisfy the heightened pleading

22  standard of Fed. R. Civ. P. 9(b), which provides that 'a party must state with particularity the

23  circumstances constituting fraud or mistake'."  Id.  "Rule 9(b) requires a plaintiff alleging

24  violation of § 292 to plead in detail 'the specific who, what, when, where, and how' of the alleged

25  fraud."  In re BP Lubricants USA, Inc., 637 F.3d 1307, 1309 (Fed. Cir. 2011).  In order to survive

26  dismissal, Plaintiff must "set forth *more* than the neutral facts necessary to identify the

27  transaction" and instead must set forth the particularized factual bases demonstrating Defendants

28  violated § 292.  Juniper Networks, Inc., 643 F.3d at 1350 (quoting Kearns v. Ford Motor Co., 567

F.3d 1120, 1124 (9th Cir. 2009)).  "The Rule acts as a safety valve to assure that only viable claims alleging fraud or mistake are allowed to proceed to discovery.  By eliminating insufficient pleadings at the initial stage of litigation, Rule 9(b) prevents relators from using discovery as a fishing expedition."  Id. at 1310.  Where a complaint is grounded in fraud, and its allegations fail to satisfy the heightened pleading standard of Rule 9(b), the court properly dismisses such complaint under Fed. R. Civ. P. 12(b)(6).  Vess v. Ciba-Geigy Corp., 317 F.3d 1097, 1107 (9th Cir. 2003).

In relevant part, the false marking statute provides:

> Whoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article, the word "patent" or any word or number importing that the same is patented for the purpose of deceiving the public; ... [s]hall be fined not more than $500 for every such offense.

35 U.S.C. § 292(a).  The "two elements of a § 292 false marking claim are (1) marking an unpatented article and (2) intent to deceive the public."  Forest Group, Inc. v. Bon Tool Co., 590 F.3d 1295, 1300 (Fed. Cir. 2009).  An article covered by an expired patent is "unpatented" within the meaning of § 292.  Pequignot, 608 F.3d at 1361.  Conduct violating the "marks upon, or affixes to" portions of the statute is relatively easy to identify – use of the word "patent" or any word or number directly marked on or affixed to a product, conveying that an article is patented, is prohibited. See Oakley, Inc. v. Bugaboos Eye Wear Corp., 757 F. Supp. 2d 1050, 1054 (S.D. Cal. 2010); Hollander v. Timex Group USA, Inc., 2011 WL 1399806, *5 (E.D. Pa., Apr. 13, 2011).  In order to fall under the "uses in advertising" portion of § 292, the offending conduct "must have occurred in a medium or through a channel designed to promote the unpatented product to consumers."  Presidio Components, Inc. v. Am. Tech. Ceramics Corp., 723 F. Supp. 2d 1284, 1334 n.41 (S.D. Cal. 2010); see also Timex Group, 2011 WL 1399806 at*5 ("the term 'advertising' implies an act soliciting the general public regarding the product.").

### A.  Does Plaintiff's FAC sufficiently allege conduct violating § 292?

Upon review, the Court concludes the FAC sufficiently alleges the "who" of Plaintiff's claim under § 292.  Although Defendants argue Plaintiff must identify the specific individual responsible for the conduct constituting false marking, the Federal Circuit has rejected such a requirement.  In re BP Lubricants, 637 F.3d at 1312 ("the naming of specific individuals is not the

only way to set forth facts upon which intent to deceive can be reasonably inferred"); see also Luka v. Procter & Gamble Co., __ F. Supp. 2d __, 2011 WL 1118689, *4 (N.D. Ill. Mar. 28, 2011) ("imposition of a requirement that a plaintiff identify in his complaint particular individuals responsible for false marking effectively would make it impossible to plead a violation of section 292, except perhaps in a case involving an internal whistleblower.")[5]

However, the FAC does not sufficiently alleges "when" the false marking occurred. Plaintiff alleges Defendants' false marking is ongoing [FAC, ¶ 45.]  Plaintiff identifies each of the patents and their expiration dates.  [FAC, ¶ 69 (identifying 22 patents and their dates of expiration).]  However, the FAC gives Defendants no notice of when, within that time period, Plaintiff alleges they engaged in false marking in violation of § 292.  Plaintiff pleads much of its complaint "on information and belief" and based upon its "knowledge through searching the Internet web sites of the foregoing Defendants." [FAC, ¶ 1.]  Plaintiff does not identify when this search occurred, and therefore states no factual basis for the conclusion the false marking is ongoing.  In addition, neither the Court nor the Defendants may assume the alleged false marking occurred from the date the patent expired, as Plaintiff has alleged no facts to support such a claim.[6]

Similarly, the FAC does not sufficiently identify "where" the false marking occurred.  All of the allegations as to each Defendant are made "on information and belief" and in the alternative (i.e. Defendant "either marked these products with, or required that the customers obtain licenses for" such expired patents).  At the time of the hearing, Plaintiff conceded it is unaware of any place that the expired patents are actually marked upon or affixed to any product, and also that

---

[5]Defendant Roche cites U.S. ex rel. Heathcote Holdings Corp. v. Wm. K. Walthers, Inc., __ F. Supp. 2d __, 2011 WL 874148 (N.D. Ill. Mar. 11, 2011) for the proposition that Plaintiff must identify, at the pleading stage, a particular individual at the Defendant corporations, with authority to speak on behalf of the corporation, who possessed an intent to deceive.  The court in that case, however, was ruling upon cross-motions for summary judgment, and had received affirmative evidence that no one employed by the defendant corporation was aware of the offending patent marking.

[6]Additionally, the court notes four of the patents expired more than five years before Plaintiff filed the Complaint in this case.  [FAC, ¶ 69 (listing expiration dates of the patents).] Pursuant to 28 U.S.C. § 2462, any action for enforcement of a civil fine or penalty must be commenced within five years after the claim first accrued.  Thus, absent more particularity regarding when the false marking occurred, some of Plaintiff's claims may be time-barred. See Juniper Network, 643 F.3d at 1351 (noting the statute of limitations provision of 28 U.S.C. § 2462 applies to false marking claims).

requiring customers to obtain licenses for expired patents does not violate § 292.  Therefore, the conduct at issue is "patent number markings in online product catalogs denoting that the advertised products are protected by one of more expired patents."  [See, e.g., Plaintiff's Response in Opposition to Motion to Dismiss by Defendants Roche Molecular Systems and Roche Diagnostics Corp., Doc. No. 123, p. 6.]  Nonetheless, Plaintiff identifies not a single website it viewed.

Most troubling, however, is Plaintiff's failure to allege with particularity "what" statements by Defendants constitute false marking and "how."  Plaintiff argues the offending conduct is the use of the expired patents "in advertising in connection with any unpatented article." It is ordinarily insufficient to allege claims sounding in fraud "on information and belief." Shroyer v. New Cingular Wireless Services, Inc., 622 F.3d 1035, 1042 (9th Cir. 2010).  Pleading "on information and belief" suffices under Rule 9(b) only where such allegations are accompanied by a statement of the facts on which the belief is founded.  Id.  Here, however, the only factual basis supporting Plaintiff's allegation that Defendants "marked these products with" expired patents is that Plaintiff "search[ed] the Internet web sites of the foregoing Defendants."  [FAC, ¶ 1.] Plaintiff's FAC identifies no particular website (or location on a website) where the false marking may be found, and no particular statement from the Defendants' online catalog constituting false marking.

Plaintiff argues, in opposition to the motions to dismiss, that the use of an expired patent in connection with a product in a catalog on a website may constitute advertising in violation of § 292.  See Presidio Components, Inc., 723 F. Supp. 2d at 1334 (S.D. Cal. 2010) (liability may be imposed under § 292 for using an expired patent in advertising); Timex Group, 2011 WL 1399806 at*5 ("the term 'advertising' implies an act soliciting the general public regarding the product."). However, a defendant does not violate § 292 merely by using an expired patent somewhere on the internet or in a product manual or catalog.  Bugaboos Eye Wear Corp., 757 F. Supp. 2d at 1057 (advertising under § 292 requires that the patent be used in such a manner as to call attention to it before the product is purchased); Presidio Components, Inc., 723 F. Supp. 2d at 1334 n.41 ("[t]o be used 'in advertising' the false marking must have occurred in a medium or through a channel designed to promote the unpatented product to consumers.").  However, Plaintiff has failed to

identify any particular language from any of the Defendants' online catalogs or websites that constitute "advertising."  Plaintiff does not identify any particular publication or website where the allegedly offending statements may be found, and does not plead any facts showing Defendants used the expired patents in a manner "importing" or suggesting the products were covered by those patents.   Plaintiff's FAC merely identifies the neutral facts necessary to identify the allegedly offending marks and then alleges "on information and belief" that Defendants have "advertised" those products "on its online catalog."[7]  These allegations fall short of the specificity required to plead a violation of the false marking statute.  Therefore, Defendants are entitled to dismissal of the FAC based purely on Plaintiff's failure to allege with specificity the conduct which constitutes false marking.

### B.  Intent to deceive the public

Even assuming the FAC alleges sufficient facts regarding Defendants' conduct, Plaintiff has not pleaded facts with sufficient particularity to support the allegation that Defendants engaged in false marking with an intent to deceive.  The mismarking of an article does not trigger liability under § 292 in the absence of intent to deceive.  Clontech Laboratories, Inc. v. Invitrogen Corp., 406 F.3d 1347, 1353 (Fed. Cir. 2005).  "Intent to deceive is a state of mind arising when a party acts with sufficient knowledge that what it is saying is not so and consequently that the recipient of its saying will be misled into thinking that the statement is true."  Id.  At the pleading stage, a relator must do more than simply aver the existence of intent to deceive.  Exergen Corp. v. Wal-

_____

[7]In support of its motion to dismiss, Defendant TriLink attaches excerpts from its online catalog and web page.  TriLink directs the Court to references to patents contained in the catalog and web page, all of which appear to be disclaimers regarding the licensing of those products. In deciding a motion under Fed. R. Civ. P. 12(b)(6), the court may only consider evidence which was not attached to the complaint but upon which the complaint "necessarily relies" where "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document."  United States v. Corinthia Colleges, __ F.3d __, 2011 WL 3524208 (9th Cir. Aug. 12, 2011).  Here, Plaintiff's FAC broadly refers to TriLink's "online catalog" such that the Court cannot determine whether the specific statements referenced by TriLink in its motion are those which Plaintiff contends constitutes false marking. Therefore, the Court concludes it may not properly consider the materials submitted by TriLink in ruling on the motion under Rule 12(b)(6).  Nonetheless, the Court notes, upon cursory review, that the statements identified by TriLink do not appear to constitute statements "used in advertising" in violation of § 292.  This underscores the need for Plaintiff to identify, with particularity, the conduct and statements it asserts constitutes false marking, so that Defendants may properly defend against such allegations.

1   Mart Stores, Inc., 575 F.3d 1312, 1326-27 (Fed. Cir. 2009).  "[A] complaint must in the § 292

2   context provide some objective indication to reasonably infer that the defendant was aware that the

3   patent expired."  In re BP Lubricants, 637 F.3d at 1311.

4       In BP Lubricants the court held plaintiff/relator's allegations were insufficient to

5   demonstrate scienter under § 292.  In particular, the relator in BP Lubricants alleged, "upon

6   information and belief," that:

> (1) BP knew or should have known that the patent expired; (2) BP is a sophisticated
> company and has experience applying for, obtaining, and litigating patents; and (3)
> BP marked the CASTROL products with the patent numbers for the purpose of
> deceiving the public and its competitors into believing that something contained or
> embodied in the products is covered or protected by the expired patent.

10  637 F.3d at 1309.  The court concluded these averments were insufficient under Rule 9(b), because

11  they were "only generalized allegations rather than specific underlying facts from which we can

12  reasonably infer the requisite intent."  Id. at 1312.

13      Since BP Lubricants, a number of district courts have reviewed allegations of scienter

14  under § 292 and found those allegations lacking.  In Promote Innovation LLC v. Roche

15  Diagnostics Corp., 2011 WL 2181243 (S.D. Ind. June 3, 2011), the plaintiff/relator's second

16  amended complaint generally alleged defendant was a sophisticated company which knew or

17  should have known the patent expired.  Beyond this general allegation, plaintiff asserted, based

18  purely upon information and belief, the existence of a license agreement.  "Because patent licenses

19  terminate with the expiration of the patent, upon information and belief, the license agreement

20  between Quadrant ... and Roche included the date of expiration of the '319 Patent."  Id. at *7.  The

21  court found this allegation bereft of factual content – "this paragraph only invites the Court to

22  engage in speculation based on the existence of a licensing agreement; it in no way establishes

23  intent or knowledge."  Id.

24      Similarly, in Brown v. Kraft Foods, Inc., 2011 WL 1131516 (E.D. Mo. Mar. 28, 2011), the

25  plaintiff alleged "Defendant is a sophisticated business with experience with patents; that

26  Defendant owns, or has licenses under, a substantial number of patents, and patent applications;

27  and that Defendant has in-house or outside counsel responsible for managing its intellectual

28  property."  Id. at *2. The court concluded that "as in BP Lubricants, those allegations do no more

1    than allege Kraft should have known the patents expired. They do not suffice to present specific

2    facts from which this Court can infer Kraft knew the '695 and '696 Patents had expired." Id.

3          Here, Plaintiff's complaint contains many of the types of speculative allegations, on

4    information and belief, which were rejected by the Federal Circuit in BP Lubricants. [See FAC,

5    ¶¶ 97-98 (Defendants "are large, sophisticated companies" which "have, or regularly retain, legal

6    counsel, who are experienced in patent matters."); ¶ 100 ("Defendants know that a patent expires

7    and that an expired patent cannot protect any product."; ¶ 101 (All Defendants "are licensors

8    and/or licensees of the Expired Patents" and based thereon "defendants were acutely aware of

9    when the patents expired as that would stop the payment of royalties." ]  Based upon these

10   speculative allegations, Plaintiff asks the Court to infer intent to deceive as follows:

11            (1) Roche was licensor of the Roche Expired Patents; (2) Roche collected royalties
              related to the Roche Expired Patents; (3) Roche notified its licensees that the Roche
12            Expired Patents had expired; (4) Roche stopped receiving royalties for the Roche
              Expired Patents once they expired; (5) Roche was aware that it stopped receiving
13            royalties for the Roche Expired Patents; (6) despite such notice and adjustment to
              the royalty payments, Roche continued to falsely mark products with the Roche
14            Expired Patents; (7) Roche required licensees to continue to mark products with the
              Roche Expired Patents; (8) Roche was complicit in a strategy to prevent or
15            diminish market competition; (9) Life, another Defendant, acted as an agent of
              Roche and required licensees to mark products with specific lists of patents
16            according to required language; and (10) the patent licenses at issue did not require
              licensees to remove patent marking language once the patents had expired.

17   [Plaintiff's Response in Opposition to Motion to Dismiss by Defendants Roche Molecular Systems

18   and Roche Diagnostics Corp., Doc. No. 123, p.10[8].]  As Defendants point out in their motions,

19   however, the inferential steps Plaintiff asks this Court to make are gigantic.  The FAC lacks facts

20   demonstrating how Plaintiff would "know or believe" the terms of the licensing agreements

21   between Roche, Life, and the other Defendants contained the expiration dates of the relevant

22   patents.  There are no facts upon which Plaintiff bases its belief the alleged licenses called for

23   ongoing royalty payments (rather than a one-time payment or some other manner of

24   compensation) which in fact terminated.  Although Plaintiff alleges some Defendants have

25

26   _____

27         [8]Plaintiff incorporates by reference its argument regarding the reasonable inferences to be
     raised by its allegations of licensor/licensee relationships into the other opposition briefs,
28   modifying the argument to fit the particular Defendant.  Those differences are not significant for
     purposes of evaluating the existence of a factual basis for the allegation Defendants engaged in
     false marking with an intent to deceive.

modified the markings on their websites after expiration of the patents at issue [FAC, ¶ 103], the FAC contains no underlying *facts* regarding those purported amendments which would allow an inference that any particular Defendant knew the patents had expired.

Plaintiff alleges it was common knowledge in the industry, based upon published articles, that several of the patents expired in 2005 and 2006 [FAC, ¶ 105], but Plaintiff identifies no other company which purportedly learned of the expiration of the patents (and changed its practices) due to these publications. In addition, the existence of publications in 2005 and 2006 in no way establishes intent with regard to the vast majority of the patents which expired after that time.

Finally, Plaintiff alleges, "[u]pon information and belief," that most of the Defendants[9] have not changed their website since being served with the original complaint, "indicating a continuing intent to deceive the public and chill competition from potential competitor companies." [See, e.g., FAC, ¶ 72, 103, 104.]  However, as discussed above, even the FAC fails to allege with factual specificity the conduct which Plaintiff asserts constitutes false marking.  The original complaint alleged, with far less particularity, the factual basis of the false marking claim. Thus, it is questionable whether the original complaint put Defendants on notice of the alleged false marking.  Therefore, the Court GRANTS Defendants' motion to dismiss the FAC for failure to state a claim under Fed. R. Civ. P. 12(b)(6) and 9(b).

### *C.  Leave to Amend*

The Court will grant Plaintiff leave to further amend.  "As with Rule 12(b)(6) dismissals, dismissals for failure to comply with Rule 9(b) should ordinarily be without prejudice."  Vess, 317 F.3d at 1108.  Thus, leave to amend should be granted "if it appears at all possible that the plaintiff can cure the defect." Id (quoting Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 701 (9th Cir. 1988)).  Here, both the content of Plaintiff's opposition papers and representation made by counsel at the hearing, lead the Court to believe it is possible Plaintiff can cure the defects of the FAC.

_____

[9]Plaintiff does not allege that Defendants GenScript, TriLink, or Cepheid failed to change their website.  In addition, Plaintiff alleges that Defendant Life "has not successfully changed its website" noting that although it "apparently attempted to disable some links within its website ... the falsely marked expired patents still appear."  [FAC, ¶ 83.]  Plaintiff does not explain how the changes to Life's website gives rise to an inference those changes were made based upon knowledge that the patents had expired or with an intent to deceive.

The Court notes there are issues of both conduct and intent unique to several of the individual Defendants, which Plaintiff fails to address in its allegations in the FAC. For example, one of Plaintiff's primary allegations against Life Technologies is that in its capacity as agent for Roche, Life Technologies "required licensees to mark products with specific lists of patents according to required language ... and there were no provisions to require licensees to either remove patents that had expired ...."  [FAC, ¶ 81.]  However, it is not at all clear that an agent or licensor can be held liable for false marking under § 292 based upon marking done by its licensees.  Similarly, Plaintiff alleges all Defendants are "large, sophisticated companies" but goes on to specifically include only "Roche, Qiagen, Thermo, EMD, Ceipheid and Life."  [FAC, ¶ 97.] Thus, it may be inferred that Eurogentec, Clontech, Integrated DNA Technologies, Quanta Biosciences, Gene Link, and TriLink Biosciences are not necessarily "large, sophisticated companies" and subject to all of Plaintiff's inferences regarding intent to deceive. In amending its complaint, Plaintiff must tailor its allegations regarding Defendants' offending conduct and intent to deceive to more closely track the conduct and position of the individual companies.

Throughout its oppositions to the motions to dismiss, Plaintiff states it has not identified with more particularity the exact language used with regard to each of the alleged false markings "as to do so would bury the court in a needless mountain of paper at this early stage of the proceedings."  The Court does not believe meeting the heightened pleading standard would require Plaintiff to produce such a "mountain" of paper.[10]  In a single paragraph (or perhaps 2) as to each Defendant, Plaintiff could identify the website (or online publication) it reviewed, the date on which it was reviewed, and identify one or more of the statements it contends constitutes false marking.  Pleading with this level of specificity with regard to one or more of the alleged instances of false marking as to each Defendant would provide a factual basis for alleging "on information and belief" that such Defendant has engaged in similar acts of false marking.

**_2._**       **_Defendant Roche Diagnostics GmbH motion to dismiss under Fed. R.  Civ. P. 12(b)(5) for insufficient service of process_**

Defendant Roche Diagnostics GmbH ("RDG"), a German corporation, also moves to

---

[10]If Plaintiff wishes to shorten its second amended complaint, it can omit the copies of the 22 allegedly expired patents which were attached to the original and amended complaints.

1   dismiss the FAC under Rule 12(b)(5) for failure to effect proper service of process.[11] According to

2   the FAC, "Defendant Roche Diagnostics GmbH is a German corporation, with its principal place

3   of business at Freidrich-Ebert Strasse 100, D-68298 Mannheim, Germany and having United

4   States operations at 9115 Hague Road, Indianapolis, IN  50457 [sic]."  RDG disputes it has offices

5   in or conducts business from the Roche Diagnostics Corporation ("RDC") offices located at 9115

6   Hague Road,  in Indianapolis, IN.  [Declaration of Steve Oldham, Doc. No. 92-3, ¶ 3(c).]

7   On January 18, 2011, Plaintiff's process server delivered a copy of its original complaint to

8   Steve Oldham, General Counsel for RDC, at RDC's offices in Indianapolis, IN.[12]  [Proof of

9   Service, Doc. No. 54, p.3.]  At the time, Mr. Oldham told the process server he would accept

10  service only on behalf of RDC and Roche Applied Sciences, but not on behalf of RDG.  [Oldham

11  Decl., Doc. No. 92-3¶ 3(e).]  Mr. Oldham is not designated as RDG's agent for service of process,

12  and RDG has not authorized RDC to act as its agent for service of process within the United

13  States.  [Id., ¶ 3(d) and (f).]  Based thereon, RDG moves to dismiss for insufficient service of

14  process pursuant to Fed. R. Civ. P. 12(b)(5).

15  Where a defendant challenges the method of service of process under Fed. R. Civ. P.

16  12(b)(5), plaintiff bears the burden of establishing service was valid under Rule 4.  Brockmeyer v.

17  May, 383 F.3d 798, 801 (9th Cir. 2004).  Where factual issues are presented on a motion under

18  Rule 12(b)(5), the court may hear evidence and determine the facts. Old Republic Ins. Co. v.

19  Pacific Financial Svcs., 301 F.3d 54, 57 (2d Cir. 2002).  "Service of process is the means by which

20  a court asserts its jurisdiction over the person."  SEC v. Ross, 504 F.3d 1130, 1138 (9th Cir. 2007);

21  see also Fed. R. Civ. P. 4(k) ("[s]ervice.of a summons or filing a waiver of service is effective to

22  establish jurisdiction over the person of a defendant").  "[I]n the absence of proper service of

23  process, the district court has no power to render any judgment against the defendant's person or

24

25  [11]RDG does not challenge personal jurisdiction.  See American Ass'n of Naturopathic
    Physicians v. Hayhurst, 227 F.3d 1104, 1107 (9th Cir. 2000) (distinguishing between motion to
26  dismiss for insufficiency of service of process under Rule 12(b)(5) and one based on lack of
    personal jurisdiction under Rule 12(b)(2)).

27  [12]In addition, Plaintiff attempted to serve the original complaint upon RDG on January 17,
    2011 by delivering a copy to an individual by the name of Gene Chowardy-Shakim. [Proof of
28  Service, Doc. No. 54, p.2.]  Plaintiff apparently concedes service on Mr. Chowardy-Shakim was
    not proper, as they do not mention it in their opposition papers.

1    property ....” Id. at 1138-39.  Thus, service of process “must be ‘notice reasonably calculated ... to

2    apprise interested parties of the pendency of an action and afford them an opportunity to present

3    their objections’.” Id. at 1138 (quoting Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S.

4    306, 314 (1950)).

5            Pursuant to Fed. R. Civ. P. 4(h)(1)(B), a corporation may be served “by delivering a copy

6    of the summons and of the complaint to an officer, a managing or general agent, or any other agent

7    authorized by appointment or by law to receive service of process.”  Service may also be effected

8    by any method authorized under the law of the state in which the district court is located or in

9    which service was made.  Fed. R. Civ. P. 4(h)(1)(A) (authorizing service pursuant to Rule 4(e)(1),

10   which looks to state law).  California Code of Civil Procedure provides for service of process on

11   corporations through its officers, including any “general manager.”  “Service of process under

12   Rule 4 is not limited solely to officially designated officers, managing agents, or agents appointed

13   by law for the receipt of process.” Direct Mail Specialists v. Eclat Computerized Techs., Inc., 840

14   F.2d 685, 688 (9th Cir. 1988).

15           The rules are to be applied in a manner that will best effectuate their purpose of
             giving the defendant adequate notice. Thus, the service can be made “upon a
16           representative so integrated with the organization that he will know what to do with
             the papers.”

17   Id.  As a general matter, “[t]he determination of whether a given individual is a ‘managing or

18   general agent’ depends on a factual analysis of that person’s authority within the organization.”

19   Id. (citing 2 Moore’s Federal Practice ¶ 4.22[2], at 4-205).

20           Plaintiff argues it effectively served RDG by delivering the summons and complaint to Mr.

21   Oldham, as General Counsel of RDC.  Plaintiff points to the close relationship between the two

22   companies.  Both companies are subsidiaries of Roche Holding AG, both do business under the

23   name Roche Applied Science, and the companies share the same website (www.roche-applied-

24   science.com).[13] As General Counsel for RDC, Mr. Oldham would have known what to do with the

_____

27           [13]An individual visiting the website is asked to indicate the country where he or she is
     located.  If the customer selects the United States, the contact information directs customers to
     RDC (d/b/a/ Roche Applied Science), in Indianapolis, IN.  If the customer selects Germany, the
28   contact information directs customers to Roche Diagnostics Deutschland GmbH (d/b/a/ Roche
     Applied Science), in Mannheim, Germany.

1   summons and complaint directed to RDG.  Moreover, Mr. Oldham in fact notified RDG of the

2   complaint.

3          Based upon these facts, the Court concludes Mr. Oldham can be considered a "general

4   agent" for service of process upon RDG under federal law or Cal. Civ. Code.  There is ample

5   authority for the proposition that a domestic corporation may be considered the "general agent" of

6   a foreign corporation for purposes of service of process.  Wells Fargo & Co. v. Wells Fargo Exp.

7   Co., 556 F.2d 406, 423 (9th Cir. 1977) (based upon relationship between companies, district court

8   correctly concluded Nevada corporation was the "general agent" of German corporation, for

9   purposes of service of process, under the Nevada long-arm statute); Chan v. Society Expeditions,

10  Inc., 39 F.3d 1398 (9th Cir. 1994) (Washington corporation was the general agent of a foreign

11  corporation for purposes of service of process on the foreign corporation); Khachatryan v. Toyota

12  Motor Sales, Inc., 578 F. Supp. 2d 1224, 1226 (N.D. Cal. 2006) ("case law clearly allows for an

13  organization to function as a general manager for service of process purposes"); Yamaha Motor

14  Co. v. Superior Court, 174 Cal. App. 4th 264, 271 (2009) (service upon foreign subsidiary may be

15  effected through domestic subsidiary).  Given the close relationship between RDC and RDG, RDC

16  can be considered the domestic general agent for purposes of service of process.  As General

17  Counsel of RDC, RDG's domestic operating arm, Mr. Oldham would "stand[] in such a position as

18  to render it fair, reasonable and just to imply the authority on his part to receive service."

19         Defendant argues RDG has not designated Mr. Oldham to accept service of process, and

20  has not (for at least the past two years) authorized RDC or any of its personnel to receive service

21  of process on its behalf.  [Declaration of Martin Meisiek, Doc. 92-2, ¶ 4.]  In fact, RDG has not

22  authorized any agent in the United States to accept service of process.  [Id., ¶ 5.]  Thus, Defendant

23  argues Plaintiff may only correctly effect service by serving RDG in Germany through the Hague

24  Convention.  However, the Ninth Circuit has rejected rigid reference to "official" designations in

25  favor of a more practical approach focused on fairness and reason.  Direct Mail Specialists, 840

26  F.2d 685 at 688.  Given the relationship between RDC and RDG, and Mr. Oldham's position, it is

27  reasonable to conclude service of process upon Mr. Oldham was reasonably calculated to provide

28  notice to RDG.  RDG's motion to dismiss for insufficient service of process is DENIED.

11cv56

**3.** ***Defendant Qiagen NV's motion to dismiss for insufficient service of process and lack of personal jurisdiction***

Defendant Qiagen NV moves to dismiss the FAC for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) and for insufficient service of process under Fed. R. Civ. P. 12(b)(5). According to the FAC, Qiagen NV "is a Dutch corporation with its principal place of business at Spoorstraat 50, Venlo 59111KJ, the Netherlands." [FAC, ¶ 24.]  Although Plaintiff alleges Qiagen NV has a United States operation as Qiagen, Inc., a Delaware corporation, with its principal place of business in Valencia, California, Qiagen disputes such allegation. According to Defendant, Qiagen NV is a publicly traded Dutch holding company that does not manufacture or distribute any products.  [Declaration of Jürgen Schneider ("Schneider Decl.", Doc. 111-2, ¶ 2.]  Qiagen NV has three direct subsidiaries: (1) Qiagen U.S. Financial Holding Company ("Qiagen Luxembourg"), a Luxembourg corporation and wholly-owned subsidiary, (2) Qiagen Deutschland Holdings GmbH, a German corporation and wholly-owned subsidiary, and (3) Qiagen GmbH, a German corporation, which Qiagen NV co-owns with Qiagen Deutschland Holding GmbH.  [Schneider Decl., ¶ 3.]  Qiagen Luxembourg owns Qiagen North American Holdings, Inc., which owns Qiagen Gaithersburg, Inc.  [Id.]  Qiagen Gaithersburg, Inc. is the parent to two wholly-owned subsidiaries: Qiagen Inc. and Qiagen Sciences LLC.  Each U.S. entity has its primary place of business in Germantown, Maryland.  [Id.]

Qiagen GmbH, with offices located in Germany, is the primary manufacturer and distributor of products relating to sample and assay technologies, and also develops the printed materials for those products.  [Schneider Decl., ¶ 6.]  Qiagen NV is not a party to any licenses with the third party entities that manufacture and distribute the products.  [Id., ¶ 7.]  Plaintiff in this case effected service of process upon Qiagen NV by serving Qiagen Inc. (also referred to by Plaintiff as Qiagen-CA) through its designated agent for service of process.  [Doc. No. 50.]  Qiagen NV argues it has no contacts with the state of California such that the Court lacks personal jurisdiction.

In evaluating the existence of personal jurisdiction, the court determines whether the exercise of jurisdiction (1) satisfies the requirements of the state's long-arm statute, and (2) comports with due process.  Bauman v. DaimlerChrysler Corp., 644 F.3d 909, 919 (9th Cir. 2011).  Because California "permits the exercise of personal jurisdiction to the full extent

- 16 -

1    permitted by due process," this Court need only determine whether the exercise of jurisdiction

2    over Qiagen NV in this case comports with due process.  Id. (citing Bancroft & Masters, Inc. v.

3    Augusta Nat. Inc., 223 F.3d 1082, 1086 (9th Cir. 2000).

4          Personal jurisdiction may be general or specific.  General jurisdiction exists over a

5    nonresident defendant where the defendant "engage[s] in 'continuous and systematic general

6    business contacts,' ... that 'approximate physical presence' in the forum state."  Schwarzenegger v.

7    Fred Martin Motor Co., 374 F.3d 797, 801 (9th Cir. 2004).  By contrast, specific jurisdiction exists

8    where the non-resident defendant has sufficient "minimum contacts" arising from, or related to,

9    the conduct which gives rise to the suit.  Id. at 801-02; see also Boschetto v. Hansing, 539 F.3d

10   1011, 1016 (9th Cir. 2008) (setting forth a three-prong test for judging existence of specific

11   jurisdiction).

12         Plaintiff argues exercise of general jurisdiction over Qiagen NV is appropriate based upon

13   the following "substantial, continuous, and systematic contacts in California":

14         •    In its 2006 SEC Form 20-F, Qiagen NV admitted that it operates "U.S. facilities in
              ... Valencia, California (customer service and technical service) ... and San
15            Francisco, California (manufacturing and research and development)" [Plaintiff's
              Exhibit I, Doc. 126-9];
16         •    In the same document, Qiagen NV states that it operated a facility in Fremont,
              California; and
17         •    Qiagen's website directly solicits business in California and even invites California
              residents to apply for employment positions within the company.
18

19   Plaintiff also argues this Court may exercise of specific jurisdiction over Qiagen NV based upon

20   the allegation in its FAC that Qiagen has engaged in false marking based upon statements made on

21   its online catalog, which is accessible by Internet everywhere including California.  Finally,

22   Plaintiff argues the Court may exercise personal jurisdiction over Qiagen NV based solely upon

23   the California contacts of its related company, Qiagen Inc.

24         As indicated above, Qiagen NV has submitted a declaration demonstrating (contrary to

25   Plaintiff's unsupported allegations in the FAC based upon information and belief) that it is a Dutch

26   holding company with no business in California.  Qiagen NV also establishes, by declaration, that

27   the contacts upon which Plaintiff relies to establish personal jurisdiction over Qiagen NV (i.e. the

28   statements in its SEC filings and on its website), occurred through its U.S. sub-subsidiary

companies.  In its opposition to Qiagen's motion to dismiss, Plaintiff comes forth with no

1   additional evidence to support its bare allegation that Qiagen NV operates in the United States

2   through Qiagen Inc.

3        Given the lack of evidence of Qiagen NV's contacts with the State of California, the Court

4   must decide whether the contacts of its sub-subsidiary companies in the United States may be

5   attributed to Qiagen NV for purposes of establishing personal jurisdiction.  The Ninth Circuit in

6   Bauman recently re-addressed the standards to be applied in determining whether the exercise of

7   personal jurisdiction over a foreign parent company, by virtue of its relationship to a subsidiary

8   that has continual operations in the forum, comports with due process.  The contacts of a

9   subsidiary may form the basis of exercise of personal jurisdiction over a foreign parent corporation

10   under the "alter ego" test or the "agency" test.

11        The two prongs of the 'alter ego' test are as follows:

12            (1) that there is such unity of interest and ownership that the separate
             personalities of the two entities no longer exist and (2) that failure to
13            disregard their separate identities would result in fraud or injustice.
             The first prong of this test has alternatively been stated as requiring a
14            showing that the parent controls the subsidiary to such a degree as to
             render the latter the mere instrumentality of the former.

15
    Bauman, 644 F.3d at 920 (quoting Doe v. Unocal, 248 F.3d 915, 928 (9th Cir. 2001)).  Under the
16
    "agency" test, the important inquiry is the "special importance of the services performed by the
17
    subsidiary."  Id.  "The agency test is satisfied by a showing that the subsidiary functions as the
18
    parent corporation's representative in that it performs services that are sufficiently important to the
19
    foreign corporation that if it did not have a *representative* to perform them, the corporation's own
20
    officials would undertake to perform substantially similar services."  Unocal, 248 F.3d at 928.
21
         There is no evidence to suggest Qiagen NV is the alter ego of its U.S. sub-subsidiaries.
22
    Furthermore, the Court concludes Plaintiff has not demonstrated the contacts of Qiagen NV's U.S.
23
    sub-subsidiary companies with the state can be attributed to Qiagen NV under the "agency" test.
24
    The annual business reports of a foreign parent company often recites facts regarding the operation
25
    of its subsidiaries. "[C]onsolidating the activities of a subsidiary into the parent's reports is a
26
    common business practice" which does not justify the conclusion the U.S. subsidiaries are
27
    "representative" of the foreign holding company.  Unocal, 248 F.3d at 929.  Leaving aside the
28
    statements in the SEC forms, that Qiagen has business facilities in California, the only evidence

1   offered by Plaintiff in support of the exercise of personal jurisdiction over Qiagen NV is the

2   existence of allegedly false markings on its website, which may be accessed by individuals in

3   California.  However, the website is maintained by Qiagen GmbH, Qiagen's Netherlands affiliate,

4   not Qiagen NV or its sub-subsidiaries in the United States  [Schneider Decl., ¶ 3.]

5        Plaintiff asks the Court to make too great a leap to find that Qiagen NV, a foreign holding

6   company which does not manufacture, distribute, package, or sell any products, is subject to

7   personal jurisdiction in California.  Therefore, the Court GRANTS Qiagen NV's motion to dismiss

8   based on lack of personal jurisdiction.[14] Qiagen's motion to dismiss for insufficient service of

9   process under Rule 12(b)(5) is DENIED AS MOOT.

10  **_4._**        **_Defendant EMD Chemicals Inc.'s motion to dismiss under the first-filed rule for_** **qui**
    **tam** **_actions_**

11

12       Defendant EMD Chemicals seeks dismissal of Plaintiff's claims against it based upon the

13  first-filed suit rule for *qui tam* actions or, alternatively, under the doctrine of res judicata.

14  Defendant argues Plaintiff's claims are duplicative of claims already asserted against it earlier this

15  year by a company called Tex Pat in the Eastern District of Texas.  Tex Pat filed suit against

16  Merck KGaA and EMD Chemicals on January 9, 2011, alleging those defendants falsely marked

17  products with expired patent numbers. The parties in that case entered into a settlement agreement,

18  releasing all claims relating to EMD's alleged false marking of certain products specified therein.

19  Each of the products listed in Plaintiff's FAC in this case were included in the schedule of

20  products and expired patents for which Tex Pat released its claims in Texas.  The Texas case was

21  dismissed on March 15, 2011.

22       Plaintiff concedes that all claims against EMD prior to the dismissal of the Texas case were

23  extinguished.  However, Plaintiff argues it may assert a "new cause of action ... for all false

24  ───────────────

25       [14]In a footnote, Plaintiff asks that if the Court finds it has not made its prima facie showing
    of facts establishing personal jurisdiction over Qiagen NV, it should be permitted to conduct
26  jurisdictional discovery to further develop the record.  "[W]here a plaintiff's claim of personal
    jurisdiction appears to be both attenuated and based on bare allegations in the face of specific
27  denials made by the defendants, the Court need not permit even limited discovery...." Pebble
    Beach Co. v. Caddy, 453 F.3d 1151, 1159 (9th Cir. 2006). Plaintiff has made no attempt to identify
28  pertinent facts (or even a theory) which are disputed and which could be further developed by
    discovery.  See Herman v. Yellowpages.com, LLC, __ F. Supp. 2d __, 2011 WL 1615078 (S.D.
    Cal., Mar. 29, 2011) (JAH) (denying jurisdictional discovery under similar circumstances).

marking violations that occurred subsequent to the Tex Pat settlement and EMD dismissal (to wit, all violations occurring after March 15, 2011)."  [Plaintiff's Response in Opposition to Defendant EMD Chemicals, Inc.'s Motion to Dismiss, Doc. 124, p. 11.]

The false marking statute provides that "[a]ny person may sue for the penalty, in which event one-half shall go to the person suing and the other to the use of the United States."  Based upon the plain language of the statute, viewed in light of years of caselaw under the False Claims Act, at least two courts in the past year have concluded that a second or subsequent plaintiff lacks standing to assert a *qui tam* claim under § 292.   In San Francisco Technology, Inc. v. The Glad Products Co., 2010 WL 2943537 (N.D. Cal. July 26, 2010), the court noted that a *qui tam* relator stands in the shoes of the United States for purposes of a false marking claim under § 292, such claims having been assigned to the relator by virtue of the statute.  In that case, the products and expired patents asserted in both actions were the same, but the plaintiff argued it was entitled to proceed with a second action because the packaging upon which the alleged false marking occurred was different.  Nonetheless, the court concluded the claims were previously assigned to the relator of the first-filed action, such that the plaintiff in the second-filed case lacked standing to assert them.  Id. at *4.

The court reached the same conclusion in Simonian v. Quigley Corp., 2010 WL 2837180 (N.D. Ill. July 19, 2010).  In that case, plaintiff filed an action against the same defendant, asserting identical claims as those filed by another plaintiff hours earlier in New York.  In dismissing the second-filed action, the court noted § 292 "contemplates only a single action brought by a private individual on behalf of the United States."  Id. at *2.  "Just as the United States could not bring multiple identical actions under the false marking statute, multiple private plaintiffs cannot do so on the government's behalf."  Id.  These cases are consistent with the general line of cases under the False Claims Act (prior to its amendment to add an explicit first-to-file bar), that the statute contemplates only a single action brought by a private individual on behalf of the United States.

In its opposition brief, Plaintiff argues the Simonian case is indistiguishable, but does not mention the San Francisco Tech. Inc. case or attempt, generally, to rebut the notion there is a first-

1   to-file rule applicable to cases under § 292.  Instead, Plaintiff rests on the contention this action

2   covers conduct different than what was litigated and settled by Tex Pat.  Plaintiff argues a new

3   cause of action arose when Tex Pat settled its action against EMD, and EMD thereafter failed to

4   correct its false marking behavior.  As Defendant points out in its reply, however, the FAC does

5   not plead a claim for false marking arising after March 15, 2011.  Instead, the broad factual

6   allegations contained in Plaintiff's FAC have no boundary in time, place, or manner, making it

7   impossible for the Court to find the claims alleged in this case are separate and distinct from those

8   previously brought, and dismissed, by Tex Pat (and the United States).

9         More importantly, it appears the release in the Tex Pat case covers the allegations in this

10   case, barring Plaintiff from proceeding against EMD:

11         Tex Pat, in its capacity as alleged *qui tam* relator under 35 U.S.C. § 292, hereby
          releases, acquits, and forever discharges Merck [defined in the agreement to include
12         EMD Chemicals US Holdings Inc and EMD Biosciences Inc.[15]] from any and all
          claims of liability for false marking under 35 U.S.C. § 292 related to the Accused
13         Products, including those identified in the Actin and on Schedule A.

14   [Settlement Agreement, filed under seal as Exhibit C to EMD's motion to dismiss, p. 2.]  Based

15   upon this broad release, the Court has serious doubts as to whether Plaintiff can state any claim for

16   false marking against EMD.  Nonetheless, because the allegations of the FAC are so lacking in

17   specificity, the Court cannot decide as a matter of law whether Plaintiff's claims against EMD are

18   barred.  Therefore, the Court GRANTS EMD's motion to dismiss based upon the first-filed rule

19   for *qui tam* actions, but grants Plaintiff leave to amend.  To the extent Plaintiff can state a claim

20   under § 292 with sufficient factual particularity to withstand dismissal under Rule 9, the Court will

21   be in a better position to evaluate whether such claim is barred by Tex Pat's prior  action.

22                                      ***Conclusion***

23         For the reasons set forth herein, the Court GRANTS Defendants' Motions to Dismiss for

24   Failure to State a Claim [Doc. Nos. 90, 91, 92, 94, 96, 102, 103, 105, 107, 111, 114]; DENIES

25   Defendant Roche Diagnostics GmbH's Motion to Dismiss for Insufficient Service of Process

26   _____

27         [15]EMD also moves to dismiss because although EMD Chemicals Inc. is named in the
     caption of the FAC, the body of the complaint contains allegations only against EMD BioScience.
     EMD argues EMD BioScience, the party named in the body of the FAC, has been dissolved and
28   merged into EMD Chemicals, Inc.  This is clearly an error in pleading which may be corrected
     upon any amendment.

1   [Doc. 92]; GRANTS Defendant Qiagen NV's Motion to Dismiss for Lack of Personal Jurisdiction

2   and DENIES AS MOOT Qiagen NV's Motion to Dismiss based on Insufficient Service of Process

3   [Doc. 111]; and GRANTS Defendant EMD Chemical Inc.'s Motion to Dismiss based on the first-

4   filed rule [Doc. 114].  The Court orders as follows:

5         1.      Plaintiff's first amended complaint is dismissed as to all Defendants;

6         2.      Plaintiff's claims against Qiagen NV are dismissed with prejudice based upon lack

7                 of personal jurisdiction;

8         3.      Plaintiff's claims against the remaining Defendants are dismissed without prejudice

9                 and with leave to amend.

10  Plaintiff may file a second amended complaint, addressing the deficiencies noted herein, within

11  thirty (30) days of the filing of this order.

12        **IT IS SO ORDERED**.

13  **DATED:  August 31, 2011**

14

15  **IRMA E. GONZALEZ, Chief Judge**
    **United States District Court**

16

17

18

19

20

21

22

23

24

25

26

27

28

- 22 -

11cv56